## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PAUL SALAZAR,

       Plaintiff,

vs.                                                              No. CIV 10-0645 JB/ACT

CITY OF ALBUQUERQUE,
MARTIN CHAVEZ, former Mayor,
RICHARD BERRY, Mayor, GREG
PAYNE, former Transit Dept. Director,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss Plaintiff's

Complaint for Violation of Statutory, Contractual, and Constitutional Rights, filed August 10, 2010

(Doc. 3)("Motion"). The Court held a hearing on October 27, 2010. The primary issues are:

(i) whether the Court should dismiss Plaintiff Paul Salazar's procedural due-process, substantive

due-process, and breach-of-employment-contract and duty-of-good-faith-and-fair-dealing claims,

because he has failed to set forth allegations that, taken as true, establish those claims; (ii) whether

the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 to -29 ("NMTCA") has waived liability

for defamation and malicious-abuse-of-process claims; and (iii) whether the Court should dismiss

Salazar's punitive damages Count. The Court grants in part and denies in part the Motion. The

Court dismisses Salazar's procedural due-process claim, because the Defendants' appeal of the

Personnel Board's decision did not violate his procedural due-process rights. The Court dismisses

Salazar's common-law tort claims, other than his claims that are based on Defendant Transit

Department Director Greg Payne's post-employment comments, because the NMTCA does not

waive the Defendants' immunity for defamation and malicious abuse of process.  The Court dismisses Salazar's breach-of-employment-contract and duty-of-good-faith-and-fair-dealing claim, because the Charter of the City of Albuquerque does not prohibit the mayor from commenting on any matter of public concern that involves an employment decision, because Salazar has not shown the City Charter was incorporated into his employment contract, and because the Defendants did not breach his contract or their duty when they exercised their statutory right to appeal.  The Court denies the Defendants City of Albuquerque's and Mayor Richard J. Berry's request to dismiss Salazar's liberty-interest claim, because Salazar has adequately set forth factual allegations showing that the alleged defamatory statements were made in the course of Salazar's termination and because reinstatement does not moot Salazar's claim.  Although punitive damages may be available under Salazar's surviving claims, the Court dismisses Salazar's punitive damages Count, because punitive damages are not a stand alone claim.

## FACTUAL BACKGROUND

Salazar was a tenured full-time City employee.  See Complaint for Violation of Statutory, Contractual, and Constitutional Rights, filed July 8, 2010 (Doc. 1)("Complaint").  Salazar began working as a City bus driver on March 25, 2000.  See id. ¶ 8, at 2.  He was continuously employed until February 28, 2007, when the Transit Department placed him on leave with pay pending investigation.  See id. ¶ 8, at 2.

The City of Albuquerque terminated Salazar's employment for reasons connected with the allegation that he was a sex offender and a child molester.  Salazar's ex-wife had accused him "of improperly touching their 4-year-old daughter during a court-approved Father's Day weekend visitation in 2001."  Complaint ¶ 9, at 3.  Salazar maintains that these allegations are false.

On October 11, 2006, Salazar pled "no contest" to the charge of attempted touching of his daughter, and the state court entered its Judgment and Order of Conditional Discharge, which stated that "without adjudication of guilt" the charges against him would be dismissed "pursuant to this Conditional Discharge."  Complaint ¶ 10, at 3.  Salazar maintains his innocence.  On February 27, 2007, a State Parole Officer delivered a letter to the Transit Department stating that "your employee, Paul Salazar, is a convicted sex offender and/or is under the supervision of the Probation-Parole Division for a sexual offense.  He has been adjudicated guilty of the following crime(s): Attempted Sexual Contact of a Minor."  Complaint ¶ 11, at 3.  On July 9, 2007, categorizing him as "a convicted sex offender," the City of Albuquerque terminated Salazar's employment with the City of Albuquerque.  Complaint  ¶ 13, at 3.

The City of Albuquerque unsuccessfully attempted to defend its actions in a Personnel Board hearing.  On June 11, 2008, after a three-day evidentiary hearing, the Personal Board found that Salazar was terminated without just cause.  <u>See</u> Complaint ¶ 14, at 3.  The Personnel Board ordered the City of Albuquerque to reinstate Salazar with back pay and benefits, and to expunge Salazar's disciplinary infraction from his record.  <u>See</u> Complaint ¶ 14, at 3.

Salazar alleges that Payne and Defendant Mayor Martin Chavez refused to reinstate Salazar; instead, they publicly and repeatedly called Salazar a "sex offender" and a "child molester," and announced that they would not reinstate him.  Complaint ¶ 15, at 4.  The <u>Albuquerque</u> <u>Journal</u> reported that, on June 17, 2008, Chavez stated:

> [H]e plans to appeal the personnel board's ruling.  If he loses, Chavez said, he will take the matter to court.  "This guy is not going to be around kids.  Not while I am mayor," Chavez said.  "This is outrageous.  What parent wants their kid on a bus with someone like that?"

Complaint ¶ 16, at 4 (quoting T. Wilham, <u>City Must Rehire Sex Offender Bus Driver</u>, <u>Albuquerque</u>

J., June 18, 2008 at A1).  The same article quotes Payne as stating:

> There is no question if he drives a bus he will have contact with children.  The public
> would recoil if we hired someone like this.  It's almost as if the crime didn't happen.
> I don't know how someone could reach this conclusion unless they are in a bubble
> and detached from reality.

Complaint ¶ 18, at 4 (quoting Wilham, supra).

The City of Albuquerque unsuccessfully appealed the Personnel Board's ruling to the Second

Judicial District Court of New Mexico.  On January 7, 2009, the Honorable Valerie M. Huling, New

Mexico District Court Judge, affirmed the Personnel Board's decision on due-process grounds, but

remanded the case back to the Personnel Board to determine whether the City of Albuquerque had

just cause to terminate Salazar's employment "irrespective of the . . . due process violations."

Complaint ¶ 20, at 5.  On August 12, 2009, the Personnel Board held unanimously that the City of

Albuquerque did not meet its burden of proof to demonstrate that Salazar was fired for just cause

and again ordered the City of Albuquerque to reinstate him in his position, to pay his back pay, to

restore his benefits, and to expunge his disciplinary record.  See Complaint ¶ 21, at 5.  The City of

Albuquerque again appealed to the state district court.   Salazar contends that the City of

Albuquerque continues to fail "to comply with their promises and obligations to return Mr. Salazar

to work, pay his back wages, reinstate his benefits, and expunge his record."  Complaint ¶ 30, at 7.

On January 4, 2010, the City of Albuquerque's attorney wrote to Salazar's attorney:

> The City has decided to reinstate Paul Salazar to a position with the City.  He will
> need to pass the pre-employment physical and other tests associated with his return.
> The City will pay him back wages and any overtime wages he would have earned.
> The City will dismiss its appeal of the disciplinary action.  I will let you know when
> he is to report to work.

Complaint ¶ 23, at 5-6 (quoting Electronic transmission from Paula Forney to Paul Livingston with

copies to Eugene Moser, Bruce Rizzieri, and Mary L. Scott).  City of Albuquerque Director of

Human Resources, Eugene Moser, confirmed that "Salazar will be returning as a Motor Coach Operator once he passes the requisite drug screening." Id. ¶ 24, at 6. Salazar took the City of Albuquerque's pre-employment physical examination and drug test, and passed both. See id. ¶ 27, at 7.

On February 4, 2010, Payne, who was no longer a City of Albuquerque employee, made a statement to KOB-TV-4:

> I think the personnel board is absolutely crazy to say we need to bring this individual back, put him behind the wheel of a bus and give him $100,000. That's nuts. . . . If Mayor Berry was forced to re-hire him, he should have given him a position where he's not around children.

Complaint ¶ 25, at 6. On February 11, 2010, Albuquerque news media reported that the City of Albuquerque planned to challenge Salazar's reinstatement. See Complaint ¶ 29, at 7. Berry then rescinded the promise to reinstate Salazar. See Complaint ¶ 29, at 7. In his Complaint, Salazar asserts that the "Defendants have done nothing to comply with their promises and obligations to return Mr. Salazar to work, pay his back wages, reinstate his benefits, and expunge his record." Complaint ¶ 30, at 7. The City of Albuquerque's Charter prohibits the mayor from "becoming involved in the hiring, promotion, demotion, or discharge of any city employee." Complaint ¶ 5, at 2.

## PROCEDURAL BACKGROUND

On July 8, 2010, Salazar filed his Complaint. Salazar brings six Counts against the Defendants: (i) violation of right to procedural due-process, Count I; (ii) violation of right to substantive due-process, Count II; (iii) defamation per se, Count III; (iv) malicious abuse of process, Count IV; (v) breach of employment contract and duty of good faith and fair dealing, Count V; and (vi) punitive damages, Count VI. See Complaint Counts I-VI, at 8-13.

The City of Albuquerque and Berry, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, move the Court to dismiss Salazar's Complaint against all Defendants.  The City of Albuquerque and Berry set out the grounds for their motion more fully in an accompanying memorandum in support of their motion to dismiss Salazar's Complaint.  See Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's Complaint for Violation of Statutory, Contractual, and Constitutional Rights, filed August 10, 2010 (Doc. 4)("Memorandum").  The City of Albuquerque and Berry contend that the Court should dismiss Salazar's Complaint as to all Defendants, although the City of Albuquerque can ascertain that only the City of Albuquerque and Berry have been served at the time they filed their Motion.  The City of Albuquerque and Berry contend that, taking all the allegations in the Complaint as true, the allegations do not, as a matter of law, establish Salazar's claims.  The City of Albuquerque and Berry further contend that the Defendants are immune from Salazar's tort claim.

1.     **Post-Motion Events.**

As of the date that the City of Albuquerque and Berry filed their motion, the City of Albuquerque's appeal of the latest Personnel Board ruling was still pending in the Second Judicial District Court in CV 2009-10465.  See Complaint ¶ 22, at 5.  The state court has yet to rule whether the City of Albuquerque properly terminated Salazar.  The City of Albuquerque represents that, contemporaneously with its Motion, it is withdrawing its appeal in state district court and acting to reinstate Salazar.  See Memorandum at 3.  It is also moving in state court to provide him a name-clearing hearing.  See Memorandum at 3.

2.     **Salazar's Response.**

On August 11, 2010, Salazar filed his Response to Defendants' Motion to Dismiss.  See Doc.

6 ("Response").  Salazar argues that the Court should deny the City of Albuquerque's and Berry's Motion.  Salazar argues that he adequately alleged facts in support of his claims in his Complaint. He contends that his allegations are not threadbare recitals of the elements of the claims.  Salazar does not address the City of Albuquerque's and Berry's contention that they are immune from Salazar's tort claims, other than to assert that the contentions "are not worthy of serious consideration."  Response at 9.

On September 30, 2010, the City of Albuquerque and Berry filed their Defendants' Reply to Plaintiff's Response to Motion to Dismiss Plaintiff's Complaint for Violation of Statutory, Contractual, and Constituional [sic] Rights.  See Doc. 10.  The City of Albuquerque and Berry clarified that, "[f]or purposes of the present Motion, Defendants are not controverting Plaintiff's allegations.  Rather, they contend that even when taken as true, they do not state a claim upon which relief may be granted."  Reply at 2.

The City of Albuquerque reinstated Salazar as a motorcoach operator for the Transit Department on August 28, 2010, and then administratively transferred him to a position in the City of Albuquerque's Solid Waste Management Department as a clean city operator, which constituted approximately a three-dollar-per-hour pay raise.  The City of Albuquerque and Berry contend that Salazar is qualified to perform this job.  Salazar failed to appear for work on September 13, 2010. Approximately that same day, "Salazar was sent notice [at] his home address that he must appear for work or risk being considered to have abandoned his job, pursuant to the City's Personnel Rules and Regulations, which state that three consecutive days of unauthorized absences constitute an automatic resignation and job abandonment."   Affidavit of Ismael Montanez, Assistant Superintendent for Human Resources ¶ 5, at 2 (executed September 30, 2010).  Salazar did not

appear for work.  On or about September 17 and 20, 2010, Salazar was sent a notice and a revised notice of predetermination hearing for his failure to appear for work.  The predetermination hearing was held September 23, 2010.  Salazar did not appear for that hearing, but his attorney, Mr. Livingston, responded in writing to the notice of predetermination hearing.  On September 27, 2010 the City of Albuquerque terminated Salazar for abandoning his job.

At the October 27, 2010 hearing, Salazar conceded that he did not have a procedural due-process claim at the time the Personnel Board first ordered that the City of Albuquerque reinstate him.  See Transcript of Hearing at 7:20-24 (Court, Livingston)("Tr.").[1]  The City of Albuquerque and Berry conceded that, as a tenured employee, Salazar had a property interest in his continued employment.  See Tr. at 19:20-23 (Court, Garcia).  The City of Albuquerque and Berry asserted that Salazar was transferred to the Solid Waste Management Department for his own protection, because this case has been extensively publicized, and they are concerned what a passenger might say or do if Salazar was reinstated as a bus driver.  See Tr. at 21:5-17 (Garcia).  Salazar agreed that the administrative process provided a name-clearing hearing, but argued that it was rendered ineffective because the city appealed the Personnel Board's ruling and refused to reinstate Salazar as a bus driver.  See Tr. at 39:6-14 (Livingston).  The City of Albuquerque represented that it would provide Salazar with a name-clearing hearing.  See Tr. at 33:16-19 ("And I can represent to the Court today that if Mr. Salazar wants a name clearing hearing with the City, the City will offer it -- will make it make it happen as soon as possible.").

_____

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (internal citation omitted).  "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).  "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

## LAW REGARDING CONSTITUTIONAL DOCTRINE OF MOOTNESS

Article III, Section 2 of the United States Constitution limits the federal courts' jurisdiction to actual cases and controversies.  "Federal courts are without authority to decide questions that cannot affect the rights of litigants in the case before them."  Ford v. Sully, 773 F. Supp. 1457, 1464 (D. Kan. 1991)(citing North Carolina v. Rice, 404 U.S. 244, 246 (1971).  See Johansen v. City of Bartlesville, Okla., 862 F.2d 1423, 1426 (10th Cir. 1988); Johnson v. Riveland, 855 F. 2d 1477, 1480 (10th Cir. 1988)).  "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  Arizonians for Official English v. Ariz., 520 U.S. 43, 67 (1997).  See Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1121 (10th Cir. 2010).  Accordingly, if a case is moot, or becomes moot during any stage of the case, the court does not have jurisdiction to hear the case.  A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable

interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)(citing Powell

v. McCormack, 395 U.S. 486, 496 (1969).

The court should not be quick to dismiss a claim for lack of jurisdiction.  "Before deciding

that there is no jurisdiction, the district court must look at the way the complaint is drawn to see if

it is drawn so as to claim a right to recover under the Constitution and the laws of the United States."

Bell v. Hood, 327 U.S. 678, 682 (1946).  Jurisdiction is not dependent on whether the plaintiff will

succeed in his cause of action; jurisdiction is determined before the details of the cause of action,

both in law and fact, are considered.  See Bell v. Hood, 327 U.S. at 682.

## LAW REGARDING DUE PROCESS

The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's

procedural-due-process rights were violated: (i) "Did the individual possess a protected property

interest to which due process protection was applicable?"; and (ii) "Was the individual afforded an

appropriate level of process?"  Camuglia v. The City of Albuquerque, 448 F.3d 1214, 1219 (10th

Cir. 2006)(quoting Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)).  As for the

second step, ordinarily one who has a protected property interest is entitled to some sort of hearing

before the government acts to impair that interest, although the hearing need not necessarily provide

all, or even most, of the protections a trial affords.  See Mathews v. Eldridge, 424 U.S. 319, 335

(1976).  The hearing required depends on: (i) the nature of the private interest at stake; (ii) the risk

of erroneous deprivation given the procedures already guaranteed, and whether additional procedural

safeguards would prove valuable; and (iii) the government's interest and the burdens that additional

procedures might impose.  See Mathews v. Eldridge, 424 U.S. at 335.  "[D]ue process is flexible and

calls [only] for such procedural protections as the particular situation demands."  Id. at 334 (internal

quotation marks and brackets omitted).  For example, "[w]here . . . the state must act quickly, a meaningful postdeprivation hearing is adequate."  Clark v. City of Draper, 168 F.3d at 1189.  See also Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir.1989)(removal of child from parents' custody requires predeprivation hearing "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." (internal quotation marks omitted)).

## LAW REGARDING LIBERTY-INTEREST VIOLATIONS

The Due Process Clause of the Fourteenth Amendment requires that no state "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 2.  The Supreme Court has stated that "there can be no doubt that the meaning of 'liberty' must be broad indeed."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 572 (1972).

> Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

408 U.S. at 572 (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)).  In Board of Regents v. Roth, the Supreme Court noted in dicta that a state might abridge a liberty interest if, in declining to renew an employment contract, the state made charges of dishonesty or immorality or imposed "a stigma or other disability that foreclosed [an employee's] freedom to take advantage of other employment opportunities."  408 U.S. at 573.

In Paul v. Davis, 424 U.S. 693 (1976), the Supreme Court "held that defamation, standing alone, was not sufficient to establish a claim for deprivation of a liberty interest."  Renaud v. Wyo. Dep't of Family Servs., 203 F.3d 723, 726 (10th Cir. 2000).  The Supreme Court addressed a case

-12-

in which local police chiefs included the plaintiff's photograph in a "flyer" of "active shoplifters," after the petitioner had been arrested for shoplifting.  424 U.S. at 697.  The authorities eventually dismissed the shoplifting charge, and the plaintiff filed suit under 42 U.S.C. § 1983 against the police chiefs, alleging that the officials' actions inflicted a "stigma" to his reputation, because "the 'active shoplifter' designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair his future employment opportunities."  424 U.S. at 697.

The Supreme Court rejected the plaintiff's claim, holding that injury to reputation by itself was not a liberty interest that the Fourteenth Amendment protects.  424 U.S. at 708-09.  The Supreme Court

> pointed out that [its] reference to a governmental employer stigmatizing an employee in Board of Regents of State Colleges v. Roth, 408 U.S. 564 . . . (1972), was made in the context of the employer discharging or failing to rehire a plaintiff who claimed a liberty interest under the Fourteenth Amendment.  Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.

Siegert v. Gilley, 500 U.S. 226, 234 (1991).

In Siegert v. Gilley, the Supreme Court revisited the question whether defamation can amount to a constitutional violation.  A former government employee brought an action against a former supervisor alleging that his former supervisor, in response to a request for information on job performance, wrote a defamatory letter that deprived him of his constitutionally protected liberty interest in his reputation without due process.  The former supervisor's letter stated:

> that he "consider[ed] Dr. Siegert to be both inept and unethical, perhaps the least trustworthy individual I have supervised in my thirteen years at [St. Elizabeths]."  After receiving this letter, the Army Credentials Committee told Siegert that since "reports about him were 'extremely unfavorable' . . . the committee was . . . recommending that [Siegert] not be credentialed."

500 U.S. at 228 (alteration in original)(citations omitted).  Siegert argued "that if the defendant acted

with malice in defaming him, what he describes as the 'stigma plus' test of Paul v. Davis is met."

500 U.S. at 234.  The Court rejected Siegert's argument and held that he had not stated a liberty-

interest claim, stating that its "decision in Paul v. Davis did not turn, however, on the state of mind

of the defendant, but on the lack of any constitutional protection for the interest in reputation."  500

U.S. at 234.  The Supreme Court stated:

> The facts alleged by Siegert cannot, in the light of our decision in Paul v. Davis, be
> held to state a claim for denial of a constitutional right.  This is not a suit against the
> United States under the Federal Tort Claims Act -- such a suit could not be brought,
> in the light of the exemption in that Act for claims based on defamation, see 28
> U.S.C. § 2680(h) -- but a suit against Siegert's superior at St. Elizabeths Hospital.
> The alleged defamation was not uttered incident to the termination of Siegert's
> employment by the hospital, since he voluntarily resigned from his position at the
> hospital, and the letter was written several weeks later.  The statements contained in
> the letter would undoubtedly damage the reputation of one in his position, and impair
> his future employment prospects.  But the plaintiff in Paul v. Davis similarly alleged
> serious impairment of his future employment opportunities as well as other harm.
> Most defamation plaintiffs attempt to show some sort of special damage and
> out-of-pocket loss which flows from the injury to their reputation.  But so long as
> such damage flows from injury caused by the defendant to a plaintiff's reputation, it
> may be recoverable under state tort law but it is not recoverable in a Bivens action.

500 U.S. at 233-34.

In Workman v. Jordan, 32 F.3d 475 (10th Cir. 1994), the Tenth Circuit applied Supreme

Court precedent to delineate a four-part test that a plaintiff must satisfy to demonstrate a deprivation

of his liberty interest:

> [A plaintiff] does have a liberty interest in his good name and reputation as it affects
> his protected property interest in continued employment.  Paul v. Davis, 424 U.S.
> 693, 701 . . . (1976); McGhee v. Draper, 639 F.2d 639, 643 (10th Cir. 1981).
> However, [a plaintiff] must show how the government infringed upon this liberty
> interest.  First, to be actionable, the statements must impugn the good name,
> reputation, honor, or integrity of the employee.  Second, the statements must be false.
> Third, the statements must occur in the course of terminating the employee or must
> foreclose other employment opportunities.  And fourth, the statements must be

published.

32 F.3d at 480-81.  <u>See</u> <u>Melton v. City of Okla.</u>, 928 F.2d 920, 926-27 (10th Cir. 1991)(en banc)(holding that elements are not disjunctive but must all be satisfied).

The first element requires that a plaintiff prove "the defendant made a statement impugning his or her good name, reputation, honor, or integrity."  <u>Tonkovich v. Kansas Bd. of Regents</u>, 159 F.3d 504, 526 (10th Cir. 1998).  The statement must make a "false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment."  <u>Palmer v. City of Monticello</u>, 31 F.3d 1499, 1503 (10th Cir. 1994)("[A]n accusation that a police officer falsified a speeding ticket qualifies as a stigmatizing charge which amply supports that element of a liberty interest violation.").  Such accusations involve charges of "dishonesty or immorality."  <u>Palmer v. City of Monticello</u>, 31 F.3d at 1503.  <u>See</u> <u>Melton v. City of Okla.</u>, 928 F.2d at 927 (noting that "stigma is sufficient if it involves dishonesty, serious felony, manifest racism, serious mental illness, or the like" (citing <u>Green v. St. Louis Housing Auth.</u>, 911 F.2d 65, 69 (8th Cir. 1990)).  <u>Cf.</u> <u>Hill v. Dep't of Air Force</u>, 844 F.2d 1407, 1412 (10th Cir. 1988)(noting that the denial of a security clearance does not violate a liberty interest, because "[a] clearance does not equate with passing judgment upon an individual's character"); <u>Sipes v. United States</u>, 744 F.2d 1418, 1422 (10th Cir. 1984)(rejecting a liberty-interest claim because the "plaintiff was discharged for being tardy, failing to schedule leave . . . , and for engaging in 'horseplay.'  These reasons, even assuming they were made public by the Government, do not call into question plaintiff's good name, reputation, honor and integrity").

The "third element should have been phrased conjunctively: the statement must occur in the course of terminating the employee and must foreclose other employment opportunities."  <u>Castillo</u>

v. Hobbs Mun. Sch. Bd., 315 F. App'x 693, 697 (10th Cir. 2009)(citing Renaud v. Wyo. Dep't of Family Servs., 203 F.3d at 728 n.1)).  The Tenth Circuit has stated that, although "[a]t first blush, it appears that this prong of the test can be met either by statements made in the course of terminating an employee or, in the alternative, by any other statements that might foreclose other employment opportunities," the requirement that "the statements must occur in the course of terminating the employee or must foreclose other employment opportunities" are not alternative bases for establishing a liberty-interest claim, because "Paul clearly requires that the defamation occur in the course of the termination of employment," and "Sullivan did not abrogate or minimize this requirement."  Renaud v. Wyo. Dep't of Family Servs., 203 F.3d at 728 n.1.

To determine if a statement was made "in the course of terminating the employee," a court must consider the nature and the timing of an allegedly defamatory statement, and the statement need not be made before or during the termination.  Renaud v. Wyo. Dep't of Family Servs., 203 F.3d at 727.  In Renaud v. Wyoming Department of Family Services, the Tenth Circuit stated:

> Timing is certainly one consideration in determining whether stigmatizing statements are made in the course of the termination of employment.  We agree with Plaintiff that publication of defamatory statements need not be strictly contemporaneous with a termination to occur in the course of the termination of employment.  That the allegedly defamatory statements occurred several days following the announcement of Plaintiff's termination does not, of itself, defeat his claim.  Rather, we agree with the Ninth Circuit's common-sense approach examining the nature of the alleged defamation, as well as its timing, to determine whether it occurred in the course of the termination.  See Campanelli [v. Bockrath, 100 F.3d 1476, 1483 (9th Cir. 1996)].  Roughly contemporaneous statements about the reasons for termination are not the same as roughly contemporaneous statements on other matters.  What is relevant to our analysis is the "manner in which a public employee is terminated," Miller [v. City of Mission, Kansas, 705 F.2d 368, 373 (10th Cir. 1983)], and the statements made "incident to the termination."  Siegert, 500 U.S. 226 at 234.  We therefore hold that a court must examine both the nature and the timing of an allegedly defamatory statement to determine whether it has been made in the course of an employee's termination.

-16-

203 F.3d at 727.

In some circumstances, reinstatement can defeat a liberty-interest claim.  In <u>McCarty v. City of Bartlesville</u>, 8 F. App'x 867 (10th Cir. 2001), the Tenth Circuit held that the plaintiffs could not prevail on their liberty-interest claim, because they were reinstated in the same position with back pay and benefits:

> [T]he McCartys are unable to establish that an actual deprivation occurred.  The McCartys were discharged but subsequently rehired with full backpay and benefits.  We acknowledge that their rehire does not mean that they will be welcomed without reservation by their colleagues and superiors, but the loss of prospective job opportunities is too speculative to support a deprivation of a liberty interest claim under § 1983.  <u>See</u> <u>Phelps v. Wichita-Eagle Beacon</u>, 886 F.2d 1262, 1269 (10th Cir. 1989) ("[D]amage to 'prospective employment opportunities' is too intangible to constitute a deprivation of a liberty or property interest."); <u>see also</u> <u>Jensen v. Redevelopment Agency of Sandy City</u>, 998 F.2d 1550, 1559 (10th Cir. 1993) (noting the same).  The McCartys' liberty interest claim necessarily fails.

8 F. App'x at 872.  <u>See</u> <u>Castillo v. Hobbs Mun. Sch. Bd.</u>, 315 F. App'x at 697 ("Mr. Castillo[, who was terminated from a school administrator position,] has failed to establish the third element . . . .  Not only was Mr. Castillo offered a position as a first-grade teacher in Hobbs, but he secured a position as an administrator with a school in Raton.").  Reinstatement to a different position, however, does not necessarily defeat a liberty-interest claim and does not moot a plaintiff's claim.  The Tenth Circuit held in <u>Watson v. University of Utah Medical Center</u>, 75 F.3d 569 (10th Cir. 1996), that an employers' statement that forecloses employment in a plaintiff's chosen field may satisfy <u>Workman v. Jordan's</u> third element:

> Finally, plaintiff made a showing that defendants' actions foreclosed her future employment opportunities in her chosen field as a labor and delivery nurse.  Although she was able to secure employment as a nurse, it was not as a labor and delivery nurse as a result of dissemination of information concerning her troubles in the relatively close-knit hospital community in Salt Lake City.

> We believe plaintiff has set out a claim of a liberty deprivation -- she has

-17-

raised an issue of material fact whether "her dismissal resulted in the publication of information which was false and stigmatizing -- information which had the general effect of curtailing her future freedom of choice or action." Asbill v. Housing Auth. of Choctaw Nation, 726 F.2d 1499, 1503 (10th Cir. 1984). Thus, she has made a showing that she was entitled to notice and a due process hearing to clear her name. See Roth, 408 U.S. at 573 n. 12 . . . ("The purpose of such notice and hearing is to provide the person an opportunity to clear [her] name.").

Watson v. Univ. of Utah Med. Ctr., 75 F.3d at 579-80.

The Tenth Circuit employs a demanding standard for showing that other employment opportunities are foreclosed when a plaintiff "was not terminated incident to an alleged defamation." Stidham v. Peace Officer Standards And Training, 265 F.3d 1144, 1155 (10th Cir. 2001). In Sandoval v. City of Boulder, Colorado, 388 F.3d 1312 (10th Cir. 2004), the Tenth Circuit asserted that a plaintiff who voluntarily resigns must be "categorically ineligible for other employment in either the public or the private sector":

Further, the derogatory statements of which she complains were not made in the course of terminating her employment, since she resigned on her own accord. In Stidham v. Peace Officer Standards and Training, this court recognized the narrow interpretation of "foreclosing other employment opportunities" adopted by the Supreme Court in Siegert v. Gilley, 500 U.S. 226 . . . (1991), and held that the plaintiff had not alleged the deprivation of a protected liberty interest even where the defamatory statements had injured his reputation and thereby harmed his ability to obtain new employment. 265 F.3d 1144, 1154 (10th Cir.2001). Sandoval states that she has applied for, and been rejected from, approximately 100 positions for which she is qualified. Workman and Siegert require, however, that other employment opportunities must be "foreclosed" -- not merely made difficult to obtain because of damage done to the plaintiff's reputation -- if the derogatory statements were not made in the context of the defendant terminating her employment, and she does not claim that the negative information that emerged from the BRCC investigation has made her categorically ineligible for other employment in either the public or the private sector.

Sandoval v. City of Boulder, Colo., 388 F.3d at 1329.

On the last element, "the plaintiff must prove that . . . the statement was published."

Tonkovich v. Kansas Bd. of Regents, 159 F.3d at 526. If a plaintiff does not establish that a

statement is published, he or she cannot state a valid liberty-interest claim.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n.13 (1985)("As the Court of Appeals found, the failure to allege that the reasons for the dismissal were published dooms this claim."); Lancaster v. Independent Sch. Dist. No. 5, 149 F.3d 1228, 1235 (10th Cir. 1998)("Also fatal to plaintiff's liberty-interest claim is the fact that the defendants made no public statements disparaging Lancaster or harming his standing or associations in the community." (citation and internal quotation marks omitted)); Sipes v. United States, 744 F.2d at 1421 ("We conclude that plaintiff's termination did not implicate a liberty interest for two reasons.  First, there is no evidence that the allegedly stigmatizing evidence was made public by the Government.").  "A person who establishes a liberty-interest deprivation is entitled to a name-clearing hearing."  Evers v. Regents of Univ. of Colo., 509 F.3d 1304, 1308 (10th Cir. 2007).

## ANALYSIS

The City of Albuquerque and Berry contend that all of Salazar's claims fail as a matter of law.  They assert that, because the City of Albuquerque reinstated Salazar, his procedural due-process and liberty-interest claims are moot.  They further assert that the Defendants are immune from his defamation and malicious-abuse-of-process claims, and that Payne's post-employment statement was not defamatory.  They also contend that the Chavez' statements and the City of Albuquerque's appeal did not amount to a breach of Salazar's employment contract, or the Defendants' duty of good faith and fair dealing.  Salazar opposes the City of Albuquerque's and Berry's Motion.  The Court concludes that Salazar has not stated a procedural due-process claim.  The Court also concludes that the NMTCA bars Salazar's malicious-abuse-of-process claim and his defamation claim against the Defendants based on their statements made while they were City of

Albuquerque employees.  Because punitive damages are not an independent claim, the Court dismisses Salazar's punitive damages Count without prejudice to him seeking punitive damages under any claim for which the law permits them.  The Court further concludes that Salazar states a defamation claim against Payne based on his post-employment statement.  Salazar has also stated a liberty-interest claim that reinstatement as a clean city operator does not moot.  The Court therefore grants in part and denies in part the City of Albuquerque's and Berry's Motion.

## I.    SALAZAR FAILS TO STATE A PROCEDURAL DUE-PROCESS CLAIM.

The Court dismisses Salazar's procedural due-process claim.  Salazar contends that the City of Albuquerque's decision to appeal the adverse rulings violated his procedural due-process protections of his property interest in continued employment.  Salazar contends that "the City through its mayors and its administrative officers has done everything that could be done both within and outside of their lawful authority to obstruct, delay, and deny Paul Salazar's return to his work as a bus driver."  Response at 6.

The City of Albuquerque and Berry assert that Salazar has failed to state a procedural due-process claim and that his reinstatement mooted his claim.  The City of Albuquerque and Berry contend that Salazar was afforded adequate process.  They first argue that Salazar has no claim against the Personnel Board, "because he prevailed at every step there . . . .  The City's Personnel Hearing Officer and Personnel Board sided with him on every occasion."  Memorandum at 2 (citations to the record omitted).  Salazar's Complaint and Mr. Livingston's comments at the hearing make clear that Salazar does not complain about the Personnel Board's process.  At the hearing, Mr. Livingston asserted the Salazar's procedural due-process claim accrued on June 17, 2008, when Chavez announced that he planned to appeal the Personnel Board's ruling.  See Tr. at 7:17-8:2

(Court, Livingston).  Salazar's argument is that the City of Albuquerque violated his procedural due-process rights when it appealed the Personnel Board's decision.  The City of Albuquerque asserts, however, that, like any other aggrieved party to an administrative proceeding, it has a statutory right to appeal to a state district court under NMSA 1978, § 39-3-1.1, and pursuant to the procedures set forth in rule 1-074 NMRA.  Said another way, the City of Albuquerque contends it had a legal right to appeal the Personnel Board's decisions.  The City of Albuquerque and Berry maintain that Salazar's theory, distilled to its essence, yields the proposition that a governmental entity commits a due-process violation by exercising its right to appeal rulings that are adverse to it.  The City of Albuquerque and Berry contend that a consequence of Salazar's contention would be that the only way to avoid a procedural due-process claim would be for the government entity to acquiesce at every turn.  The City of Albuquerque represents that it is aware of no rule to support Salazar's position and that ordinary logic refutes it.  The City of Albuquerque and Berry maintain that the City of Albuquerque's appeals of the Personnel Board's decisions to state court did not, and could not, violate Salazar's procedural due-process rights.  The City of Albuquerque and Berry further argue that the Court should dismiss this claim as moot because they reinstated Salazar, who then abandoned his job.

The Court agrees that Salazar has not stated a procedural due-process claim, but it does not agree that Salazar's procedural due-process claim is moot.  There are two bases on which the Defendants contend that Salazar's claims are moot.  First, they argue that Salazar's reinstatement moots his claim.  Second, they contend that Salazar abandoned his claim when he failed to appear for work.  A procedural due-process claim may be mooted if the plaintiff receives "precise remedy he has requested."  Veal v. Jones, 349 F. App'x 270, 272 (10th Cir. 2009)("Veal has already

-21-

received the precise remedy he has requested . . . .  Thus, even assuming that Veal's procedural due process rights were violated by the change in charge, his claim is now moot.").  See Taylor v. Franklin, 264 F. App'x 764, 766 (10th Cir. 2008)(holding that a prisoner's due-process claim was rendered moot when a state appellate court granted him the relief he sought); Brown v. Wyo. Dep't of Corrs. State Penitentiary, 234 F. App'x 874, 877 n.1 (10th Cir. 2007)("[A]lleged violations of due process in the first disciplinary hearing were mooted by Brown's success in having his initial charges vacated.").  Where a plaintiff receives less than the complete relief he seeks, his claims are not moot.  In Utah Animal Rights Coalition v. Salt Lake City Corp, 371 F.3d 1248 (10th Cir. 2004), the Tenth Circuit held that, although statutory revision mooted a plaintiff's declaratory and injunctive claims, its claim for nominal damages was not moot, despite that the "Plaintiff concede[d] that it suffered no compensable injury."  371 F.3d at 1258.  In his concurrence, the Honorable Robert H. Henry, United States Court of Appeals Judge, stated:

> Judge McConnell concludes that Carey [v. Piphus, 435 U.S. 247 (1978),] and Memphis [Community School Dist. v. Stachura, 477 U.S. 299 (1986),] give rise to the argument that there can be no mootness in constitutional cases, and that it is difficult to imagine a case in which a plaintiff could not insulate the case from mootness by appending a claim for nominal damages.  But this is what these cases (each authored by the distinguished and highly regarded Justice Powell) hold -- with no dissent in either case.  The Tenth Circuit does not stand alone in its reading of these cases and the policies behind them.

Utah Animal Rights Coal. v. Salt Lake City Corp, 371 F.3d at 1272 (citing Bernhardt v. County of L.A., 279 F.3d 862, 871 (9th Cir. 2002)("[W]e must conclude that [plaintiff's] claims for prospective relief are moot, although we hold that her possible entitlement to nominal damages creates a continuing live controversy."); Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2001)(holding that where claims for injunctive and declaratory relief were moot, and claim for compensatory damages was prohibited, "[t]he availability of damages or other monetary relief almost always avoids mootness");

Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001)(noting that to avoid potential for mootness, "for suits alleging constitutional violations under 42 U.S.C. § 1983, it is enough that the parties merely request nominal damages")(emphasis added); Yniguez v. Arizona, 975 F.2d 646, 647 (9th Cir. 1992)(per curiam)("The possibility that [plaintiff] may seek nominal damages on appeal is sufficient to prevent mootness."), vacated on other grounds, 520 U.S. 43 (1997); Beyah v. Coughlin, 789 F.2d 986, 988-89 (2d Cir. 1986)(although claims for declaratory and injunctive relief were moot, plaintiff's "claim for damages would not be moot since it is now well established that if he can prove that he was deprived of a constitutionally protected right, and if defendants are not able to establish a defense to that claim, [he] will be entitled to recover at least nominal damages."); Wiggins v. Rushen, 760 F.2d 1009, 1011-12 (9th Cir. 1985)("Even if [plaintiff's] transfer to [a different facility] prevented him from receiving injunctive relief, his claim for [nominal] damages survived."); Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 72 n.5 (4th Cir. 1983)(indicating trial court's suggestion that procedural due-process claims were moot was in error, noting "[t]he Supreme Court has made it plain that the deprivation of procedural due process creates an independent right to seek, at a minimum, nominal damages"); Murray v. Bd. of Trs., Univ. of Louisville, 659 F.2d 77, 79 (6th Cir. 1981)(although claims for declaratory and injunctive relief were moot, and dismissal of plaintiff's claim for actual damages was not clearly erroneous, under Carey v. Piphus, district court must "consider in this § 1983 action plaintiff's claims for nominal damages and attorney fees"))(other citations omitted).  Salazar seeks punitive damages.  Additionally, at the hearing, the parties indicated that there was a dispute regarding how to calculate the back pay Salazar is due.  Because it does not appear that Salazar received the "precise remedy he has

requested," <u>Veal v. Jones</u>, 349 F. App'x at 272, the Court concludes that his claims are not moot.[2]

---

[2] Because the Court finds that Salazar failed to state a procedural due-process claim, it does not convert the Defendants' Motion into a motion for summary judgment. Consequently, the Court will not consider the subsequent events in deciding the Motion. The Court notes, however, that the subsequent events would appear to defeat Salazar's claims. After Salazar filed his Complaint, the City of Albuquerque reinstated Salazar as a motorcoach operator for the Transit Department on August 28, 2010, and then administratively transferred him to a position in the City of Albuquerque's Solid Waste Management Department as a clean city operator, which constituted approximately a three-dollar-per-hour pay raise. <u>See</u> Montanez Aff. ¶ 2, at 1. Salazar failed to appear for work on September 13, 2010. <u>See</u> Montanez Aff. ¶ 4, at 1. Approximately that same day, "Salazar was sent notice [at] his home address that he must appear for work or risk being considered to have abandoned his job, pursuant to the City's Personnel Rules and Regulations, which state that three consecutive days of unauthorized absences constitute an automatic resignation and job abandonment." Montanez Aff. ¶ 5, at 2. Salazar did not appear for work. <u>See</u> Montanez Aff. ¶ 6, at 2. On or about September 17 and 20, 2010, Salazar was sent a notice and a revised notice of predetermination hearing for his failure to appear for work. <u>See</u> Montanez Aff. ¶ 7, at 2. The predetermination hearing was held September 23,2010. Salazar did not appear for that hearing, but his attorney, Mr. Livingston, responded in writing to the notice of predetermination hearing. <u>See</u> Montanez Aff. ¶ 7, at 2. On September 27, 2010 the City of Albuquerque terminated Salazar for abandoning his job. <u>See</u> <u>id.</u> ¶ 8, at 2.

In his Complaint, Salazar bases his procedural due-process claim on the Defendants' "refusing to comply with the orders of the City's own Personnel Board to reinstate Mr. Salazar." Complaint ¶ 34, at 8. The City of Albuquerque contends that, because it has now reinstated Salazar, his claim is defeated. <u>See</u> <u>Whalen v. Massachusetts Trial Court</u>, 397 F.3d 19, 28-29 (1st Cir. 2005)(affirming "the district court's ruling that [the plaintiff's] case became moot once he was reinstated to his position"). At the hearing, Mr. Livingston conceded that reinstating Salazar with back pay would defeat his procedural due-process claim. <u>See</u> Tr. at 7:10-15 (Court: "If we just stopped right there after the personnel board reinstated Mr. Salazar and ordered him to be paid back pay and benefits, would you agree with me at that point he doesn't have a procedural due-process claim?" Mr. Livingston: "If the City actually reinstates him.").

Salazar contends, however, that reinstating him as a garbage truck driver does not satisfy his interest in continued employment in being a bus driver. Salazar has a property interest in continued employment; he may not, however, have a property interest in continued employment as a bus driver. <u>See</u> <u>Potts v. Davis County</u>, 551 F.3d 1188, 1193 (10th Cir. 2009)(holding a transfer to a position at the same class and grade in compliance with a statute does not did not implicate the plaintiff's property interest). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. at 577. It may be that, "[h]ere, as a tenured employee of the City, [Salazar] clearly" has a property interest in continued employment. <u>Garcia v. City of Albuquerque</u>, 232 F.3d at 769 (citing <u>Gilbert v. Homar</u>, 520 U.S. 924, 928-29 (1997)("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired

-24-

_____

without due process.")).   In Potts v. Davis County, the Tenth Circuit rejected a plaintiff's "conten[tion] that his reassignment from his position as a Patrol Sergeant to his subsequent position at the courts was, in fact, a demotion and not a transfer because he lost the 'differential pay' he had earned as a Patrol Sergeant."  551 F.3d at 1192.

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."  Schulz v. City of Longmont, Co., 465 F.3d 433, 443 (10th Cir. 2006) (holding police officers and firefighters did not have property interest in expected step increase denied when city imposed wage freeze)[;] . . . Rolon v. Henneman, 517 F.3d 140, 148 (2d Cir. 2008) (loss of overtime pay did not deprive police officer of due-process property interest); Brown v. Brienen, 722 F.2d 360, 365 (7th Cir. 1983) (noting that, in general, "disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment").  If employees had protected property interests in every nuance and detail of their particular positions, employers would lose their ability to transfer employees between positions -- otherwise equal in pay and grade -- without risking a lawsuit.

> Our conclusion is supported by the text of the Utah statute, which permits the Sheriff's Department to transfer officers from "one position to a similar position in the same class and grade in the same governmental unit." Utah Code Ann. § 17-30-13 (emphasis added).  The statute does not require that officers be transferred to identical positions or even positions that are substantially the same. It merely requires that they be transferred within the same class and grade.  That is precisely what occurred here: when Mr. Potts was reinstated, his rank and salary remained the same as they had been prior to his discharge.

Potts v. Davis County, 551 F.3d at 1193 (emphasis added).  Similarly, there is a string argument that Salazar's reassignment to driving a garbage truck does not violate Salazar's procedural due-process rights.  The new position provided Salazar with a raise of approximately three dollars per hour.  See Montanez Aff. ¶ 2, at 1.  Under the City of Albuquerque's Merit System Ordinance and Personnel Rules and Regulations, the Chief Administrative Officer has authority to transfer qualified employees to other positions within the City.  See City Code of Ordinances, § 3-1-2C(2); Personnel Rules and Regulations, § 307.4.  It may be that Salazar did not have a property interest in not being transferred.  See Potts v. Davis County, 551 F.3d at 1193 ("If employees had protected property interests in every nuance and detail of their particular positions, employers would lose their ability to transfer employees between positions -- otherwise equal in pay and grade -- without risking a lawsuit.")(emphasis added).

Moreover, it may be Salazar voluntarily relinquished his property interest in his continued employment when he failed to report after he was reassigned to the position of clean city operator.  In Garcia v. City of Albuquerque, the Tenth Circuit held that the City of Albuquerque did not violate

a bus driver's procedural due-process rights, because the bus driver, Silas Garcia, voluntarily resigned rather than accept reinstatement to different position.  The bus driver was terminated after failing a random drug test.  The Personnel Board recommended reinstatement with treatment.  The City of Albuquerque appealed the Personnel Board's ruling to New Mexico state court.  While the appeal was pending, the City of Albuquerque reinstated Garcia.  "The City then informed Garcia that he was reassigned to a security guard position, but would still have the same rate of pay and hours as he had enjoyed as a bus driver."  232 F.3d at 764.  Garcia did not report for work, despite two letters "warning him that his absence was 'unauthorized' and stating that he was jeopardizing his position with the City."  232 F.3d at 764.

Garcia brought a suit in the United States District Court of New Mexico, alleging, among other things, that the City of Albuquerque violated his procedural due-process and substantive due-process rights.  Like Salazar, "Garcia d[id] not challenge the adequacy of the process" that the Personnel Board afforded.  232 F.3d at 769.  See Response at 4 ("Plaintiff's Complaint makes clear, however, that he does not complain about the *Personnel Board's* process."  (emphasis original)).  Instead,

> Garcia first contend[ed] that the City did not afford him adequate procedural due process in that after he was reinstated by the Personnel Board, the City "without any hearing and without justification . . . refused to return him to work."  Garcia base[d] this argument on the fact that the City's offer of reinstatement contemplated transferring him from his prior position as a bus driver to serving as a security guard.

232 F.3d at 769 (citations omitted).  The Tenth Circuit rejected Garcia's argument.  The Tenth Circuit held:

> Contrary to Garcia's assertions, we hold that his procedural due process rights have not been violated.  The City argues that although it complied with the Personnel Board's order to reinstate Garcia, he resigned from his employment by refusing to report for work.  We agree.  As we ruled in Yearous v. Niobrara County Memorial Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997), where plaintiffs "resign[ ] of their own free will, even as a result of Defendant's actions, then they voluntarily relinquish[ ] their property interests and, thus, Defendant did not deprive them of property without due process of law."  See also Parker v. Board of Regents of Tulsa Junior College, 981 F.2d 1159, 1162 (10th Cir. 1992).  That is the case here.  The City, in compliance with the Personnel Board's order, reinstated Garcia's employment, albeit to a different position with the same hours and rate of pay.  Not satisfied with being transferred to a different position, however, Garcia repeatedly refused to report to work, ultimately leading the City to designate him as being "AWOL."  Since Garcia clearly had the option of returning to work, we hold that his actions constitute a voluntary resignation.  Parker, 981 F.2d at 1162 ("A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice.").

-26-

Turning to the merits of Salazar's procedural due-process Count, the Court concludes that Salazar has not stated a claim as a matter of law.  The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's procedural-due-process rights were violated: (i) "Did the individual possess a protected property interest to which due process protection was applicable?"; and (ii) "Was the individual afforded an appropriate level of process?"  Camuglia v. The City of

---

Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due. Cf. Mathews v. Eldridge, 424 U.S. 319, 333 . . . (1976) (holding that the fundamental requirement of due process "is the opportunity to be heard at a meaningful time and in a meaningful manner") (citation and internal quotation marks omitted); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 518 (10th Cir.1998) ("A fundamental principle of procedural due process is a hearing before an impartial tribunal."); Loudermill, 470 U.S. at 542 . . . (holding that it is an "essential principle of due process that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case") (citation, alterations, and internal quotation marks omitted).

232 F.3d at 770.

There is a strong argument that, under the Tenth Circuit's holding in Garcia v. City of Albuquerque, Salazar has voluntarily relinquished his property interest in continued employment. Salazar has been similarly afforded "three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing." 232 F.3d at 770. "The City, in compliance with the Personnel Board's order, reinstated [Salazar's] employment, albeit to a different position," 232 F.3d at 770,  with a higher rate of pay. "Not satisfied with being transferred to a different position, however, [Salazar] repeatedly refused to report to work, ultimately leading the City to designate him as" having abandoned his job. 232 F.3d at 770.  It may follow that "[s]ince [Salazar] clearly had the option of returning to work, we [may need to] hold that his actions constitute a voluntary resignation." 232 F.3d at 770.  If the Court, on summary judgment, considers Montanez' affidavit, it may be that Salazar, therefore, "voluntarily relinquish[ed] [his] property interests and, thus, Defendant did not deprive [hi]m of property without due process of law." 232 F.3d at 770 (quoting Parker v. Board of Regents of Tulsa Junior College, 981 F.2d at 1162).

-27-

Albuquerque, 448 F.3d at 1219 (quoting Clark v. City of Draper, 168 F.3d at 1189).  The parties do not dispute that Salazar satisfies the first prong -- whether he possesses a protected interest.  As the Tenth Circuit has noted, the "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."  Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir.1998).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577.  "Here, as a tenured employee of the City, [Salazar] clearly meets this requirement."  Garcia v. City of Albuquerque, 232 F.3d at 769 (citing Gilbert v. Homar, 520 U.S. 924, 928-29 (1997)("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process.")).

Salazar fails on the second prong.  Taking the allegations in the Complaint as true, Salazar has failed to allege inadequate process.  The essence of Salazar's contention is that the City of Albuquerque violated his due-process rights when it appealed the Personnel Board's decision.  At the hearing, Mr. Livingston asserted the Salazar's procedural due-process claim accrued on June 17, 2008, when Chavez announced that he planned to appeal the Personnel Board's ruling.  See Tr.at 7:17-8:2 (Court, Livingston).  See also Tr. at 7:10-15 (Court: "If we just stopped right there after the personnel board reinstated Mr. Salazar and ordered him to be paid back pay and benefits, would you agree with me at that point he doesn't have a procedural due-process claim?"  Mr. Livingston: "If the City actually reinstates him.").  Salazar does not, thus, allege that he was not "afforded an appropriate level of process."  Camuglia v. The City of Albuquerque, 448 F.3d at 1219.  Rather, he

contends that the Defendants violated his constitutional rights when they appealed the Personnel Board's decision.  Salazar's argument is without a sound basis in the law.  The process due a person whose protected property interest is impaired depends on: (i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (iii) the government's interest and the burdens that additional procedures might impose.  See Mathews v. Eldridge, 424 U.S. at 335. Salazar's contention thus furthers none of the goals due-process protections seek to further.  A citizen is entitled to process and is not necessarily guaranteed a win.  The City of Albuquerque has a statutory right to appeal the Personnel Board's decision.  See NMSA 1978, § 39-3-1.1 ("Unless standing is further limited by a specific statute, a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision.").  The right to appeal the Personnel Board's decision is part of the process; the statutory provision that parties may appeal the Personnel Board's increases the protections afforded to the parties.  There is no sound basis for Salazar to argue that the Constitution guarantees him a right to appeal but prohibits the City of Albuquerque from appealing.  The Court, therefore, concludes that Salazar has not stated a procedural due-process claim.

## II.    SALAZAR HAS STATED A LIBERTY-INTEREST CLAIM IN COUNT II.

The City of Albuquerque and Berry also contend that Salazar's reinstatement moots his liberty-interest claim.  They argue that, when the City reinstated Salazar, "he was no longer either 'terminated' or 'foreclosed from other employment opportunities.'  Reinstatement to a job with the same employer and at a $3.50 per hour pay raise demonstrates Plaintiff was not foreclosed from other employment opportunities."  Reply at 3.  Salazar responds that the City of Albuquerque's

refusal to reinstate him as a bus driver, and its transferring him to a position where he would not be around children, does not clear his name or moot his claim.

>  To establish a constitutional violation of his liberty interest in his reputation, Salazar
>
>  must show how the government infringed upon this liberty interest.  First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee.  Second, the statements must be false.  Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities.  And fourth, the statements must be published.

Workman v. Jordan, 32 F.3d at 480-81.  See Melton v. City of Okla., 928 F.2d at 926-27 (holding that elements are not disjunctive but must all be satisfied).  "A person who establishes a liberty-interest deprivation is entitled to a name-clearing hearing."  Evers v. Regents of Univ. of Colo., 509 F.3d at 1308.

The parties do not dispute that the Defendants' alleged statements publicly and repeatedly calling Salazar a "sex offender" and a "child molester," Complaint ¶ 15, at 4, "impugn [his] good name, reputation, honor, or integrity."  Workman v. Jordan, 32 F.3d at 480-81.  They also do not dispute that the allegations were published and are false.  The City of Albuquerque and Berry contend, however, that the statements were not made in the course of Salazar's termination and that his reinstatement defeats his ability to show that the statements foreclose other employment.  The Court concludes that Salazar has stated a substantive due-process liberty-interest claim, and that his reinstatement in a position where he is not around children or the public does not moot his claim.

Because the City of Albuquerque refuses to reinstate Salazar as a bus driver, it has not mooted his liberty-interest claim.  In some circumstances, reinstatement can defeat a liberty-interest claim.  In McCarty v. City of Bartlesville, the Tenth Circuit held that a plaintiffs could not prevail on their liberty-interest claim because they were reinstated in the same position with back pay and

benefits:

> [T]he McCartys are unable to establish that an actual deprivation occurred.  The McCartys were discharged but subsequently rehired with full backpay and benefits.  We acknowledge that their rehire does not mean that they will be welcomed without reservation by their colleagues and superiors, but the loss of prospective job opportunities is too speculative to support a deprivation of a liberty interest claim under § 1983.  See Phelps v. Wichita-Eagle Beacon, 886 F.2d 1262, 1269 (10th Cir. 1989) ("[D]amage to 'prospective employment opportunities' is too intangible to constitute a deprivation of a liberty or property interest."); see also Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1559 (10th Cir. 1993) (noting the same).  The McCartys' liberty interest claim necessarily fails.

8 F. App'x at 872.  See Castillo v. Hobbs Mun. Sch. Bd., 315 F. App'x at 697 ("Mr. Castillo[, who was terminated from a school administrator position,] has failed to establish the third element . . . .  Not only was Mr. Castillo offered a position as a first-grade teacher in Hobbs, but he secured a position as an administrator with a school in Raton.").

Reinstatement to a different position, however, does not necessarily defeat a liberty-interest claim and does not moot a plaintiff's claim.  The Tenth Circuit held in Watson v. University of Utah Medical Center that an employers' statement that forecloses employment in a plaintiff's chosen field may satisfy Workman v. Jordan's third element:

> Finally, plaintiff made a showing that defendants' actions foreclosed her future employment opportunities in her chosen field as a labor and delivery nurse.  Although she was able to secure employment as a nurse, it was not as a labor and delivery nurse as a result of dissemination of information concerning her troubles in the relatively close-knit hospital community in Salt Lake City.
>
> We believe plaintiff has set out a claim of a liberty deprivation -- she has raised an issue of material fact whether "her dismissal resulted in the publication of information which was false and stigmatizing -- information which had the general effect of curtailing her future freedom of choice or action."  Asbill v. Housing Auth. of Choctaw Nation, 726 F.2d 1499, 1503 (10th Cir. 1984).  Thus, she has made a showing that she was entitled to notice and a due process hearing to clear her name.  See Roth, 408 U.S. at 573 n. 12 . . . ("The purpose of such notice and hearing is to provide the person an opportunity to clear [her] name.").

-31-

Watson v. Univ. of Utah Med. Ctr., 75 F.3d at 579-80 (emphasis added).  Like the plaintiff in Watson v. University of Utah Medical Center, Salazar's reinstatement shows he may be able to obtain employment, but it is not employment in his chosen field of bus driving.  While the City of Albuquerque reinstated Salazar as a motorcoach operator for the Transit Department, it immediately administratively transferred him to a position in the City of Albuquerque's Solid Waste Management Department as a clean city operator.  Because the City of Albuquerque did not reinstate Salazar as a bus driver, his reinstatement does not defeat his contention "that defendants' actions foreclosed h[is] future employment opportunities in h[is] chosen field."  Watson v. Univ. of Utah Med. Ctr., 75 F.3d at 579-80.

Moreover, the City of Albuquerque and Berry contend that he was assigned to work as a garbage truck driver not to prevent him from being around children, but to keep him safe, because allowing him to drive a bus risks exposing him to individuals who may seek to harm him because of publicity surrounding his case.  The Defendants' assertion that publicity from this case, which includes the Defendants' statements that are the basis of Salazar's claim, make it dangerous for Salazar to drive a bus because of the public's potential hostile reaction to him, supports allowing Salazar's claims to go forward.  The public's lasting hostility towards Salazar indicates that the Defendants' statements impugned Salazar's "good name, reputation, honor, or integrity," and supports Salazar's contention that other the statements "foreclose other employment opportunities."  Workman v. Jordan, 32 F.3d at 480-81.

The City of Albuquerque's and Berry's contention that the alleged statements were not made in the course of Salazar's termination is also unavailing.  To determine if a statement was made "in the course of terminating the employee," a court must consider the nature and the timing of an

allegedly defamatory statement, and the statement need not be made before or during the termination.  Renaud v. Wyo. Dep't of Family Servs., 203 F.3d at 727.  In Renaud v. Wyoming Department of Family Services, the Tenth Circuit stated:

> Timing is certainly one consideration in determining whether stigmatizing statements are made in the course of the termination of employment.  We agree with Plaintiff that publication of defamatory statements need not be strictly contemporaneous with a termination to occur in the course of the termination of employment.  That the allegedly defamatory statements occurred several days following the announcement of Plaintiff's termination does not, of itself, defeat his claim.  Rather, we agree with the Ninth Circuit's common-sense approach examining the nature of the alleged defamation, as well as its timing, to determine whether it occurred in the course of the termination.  See Campanelli, 100 F.3d at 1483.  Roughly contemporaneous statements about the reasons for termination are not the same as roughly contemporaneous statements on other matters.  What is relevant to our analysis is the "manner in which a public employee is terminated," Miller, 705 F.2d at 373, and the statements made "incident to the termination."  Siegert, 500 U.S. 226 at 234.  We therefore hold that a court must examine both the nature and the timing of an allegedly defamatory statement to determine whether it has been made in the course of an employee's termination.

203 F.3d at 727.  See Miller v. City of Mission, Kansas, 705 F.2d at 373 (affirming jury finding of deprivation of liberty interest based partly on evidence that reasons for termination were announced several days after dismissal).  See also Campanelli v. Bockrath, 100 F.3d at 1482-83 (rejecting bright-line rule that post-termination statements cannot form basis of liberty deprivation and holding that statements made one week after termination were made in course of termination); Mertik v. Blalock, 983 F.2d at 1363 (finding that plaintiff sufficiently alleged deprivation of liberty interest, in part by showing "roughly contemporaneous" publication of reasons for ban of plaintiff from city facilities).

The Court concludes that the alleged statements were made in the course of Salazar's termination.  Salazar alleges that, "on July 9, 2007, categorizing him as 'a convicted sex offender,' the City, Mayor Chavez, and Mr. Payne terminated Plaintiff's employment with the City of

Albuquerque." Complaint ¶ 13, at 3. Additionally, Salazar alleges that, less than a week after the Personnel Board first ordered Salazar reinstated on June 11, 2008, Chavez and Payne made statements in a newspaper article calling Salazar a "sex offender" and a "child molester," and announced that they would not reinstate him. Complaint ¶ 15, at 4. The Albuquerque Journal reported that, on June 17, 2008, Chavez stated:

> [H]e plans to appeal the personnel board's ruling. If he loses, Chavez said, he will take the matter to court. "This guy is not going to be around kids. Not while I am mayor," Chavez said. "This is outrageous. What parent wants their kid on a bus with someone like that?"

Complaint ¶ 16, at 4 (quoting Wilham, supra). The same article quotes Payne as stating:

> There is no question if he drives a bus he will have contact with children. The public would recoil if we hired someone like this. It's almost as if the crime didn't happen. I don't know how someone could reach this conclusion unless they are in a bubble and detached from reality.

Complaint ¶ 18, at 4 (quoting Wilham, supra). The Court believes that the Defendants' statements about Salazar days after the Personnel Board's ruling were in the course of his termination. Because Salazar's reinstatement in a position that keeps him away from the public does not defeat his liberty-interest claim, and because the statements were in the course of Salazar termination, the Court denies the City of Albuquerque's and Berry's request that it dismiss his substantive due-process claim.

**III.   THE NMTCA HAS NOT WAIVED IMMUNITY FOR SALAZAR'S DEFAMATION CLAIM IN COUNT III OR MALICIOUS-ABUSE-OF-PROCESS CLAIM IN COUNT IV AND THESE CLAIMS THEREFORE FAIL AS TO THE DEFENDANTS' ACTIONS IN THE COURSE OF THEIR EMPLOYMENT.**

The City of Albuquerque and Berry assert that the NMTCA has not waived immunity for defamation or for malicious-abuse-of-process claims. Salazar contends that "[t]he City's assertion of immunity for both defamation and abuse of process claims is inapplicable to the claims against the defendants in their individual capacities." Response at 10-11. In regard to the City of

Albuquerque's and Berry's assertion that the Defendants are immune from defamation claims, Salazar states:

> The City's contention that its mayor is both immune from defamation claims and free to comment "on the history and employment status of the City's employees" apparently even to the extent of making false accusations of criminal misconduct against a City employee whom the Personnel Board has ordered to be reinstated, are not worthy of serious consideration.

Response at 9.

The Court agrees that the NMTCA has not waived immunity for claims of defamation or malicious abuse of process against the Mayor and the Transit Department Director.  See NMSA 1978, § 41-4-4(A)(noting waivers of immunity in §§41-1-5 through -12); Garcia-Montoya v. State Treasurer's Office, 130 N.M. 25, 43, 16 P.3d 1084, 1102 (2001)(affirming the summary judgment on defamation claims against the State Treasurer and the Deputy State Treasurer "on the basis that [the plaintiff's] claims were barred by the Tort Claims Act"); Vigil v. State Auditor's Office, 138 N.M. 63, 66, 116 P.2d 854, 857 (Ct. App. 2005).

> The TCA "delimits the scope of liability for government entities and their employees by: (1) retaining immunity for torts not waived by the TCA; and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty."  Celaya v. Hall, 2004-NMSC-005, ¶ 8, 135 N.M. 115, 85 P.3d 239 (citations omitted).  Section 41-4-17(A) of the TCA provides

>> the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

> The actions for which immunity is waived are set out in Sections 41-4-5 to -12 of the TCA and the Religious Freedom Restoration Act, NMSA 1978, § 28-22-4 (2000).

> In this case, [Salazar] does not argue that immunity is waived for his

-35-

defamation claims under the express waiver provisions in Sections 41-4-5 to -12 or under Section 28-22-4.  See Candelaria v. Robinson, 93 N.M. 786, 790, 606 P.2d 196, 200 (Court. App. 1980) (stating that unless a plaintiff alleges defamation by a law enforcement officer, immunity is not waived under the TCA).

Vigil v. State Auditor's Office, 138 N.M. at 66, 116 P.2d at 857.

The NMTCA waives immunity for defamation and malicious-abuse-of-process claims against law enforcement officers.

The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978, § 41-4-12.  That the New Mexico Legislature expressly allows defamation and abuse-of-process claims against law enforcement officers suggests that they are not otherwise allowed under § 41-4-4.  "Thus, in order to state a tort claim under the waiver of immunity set out in Section 41-4-12, a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties . . . ."  Weinstein v. City of Santa Fe, 121 N.M. 646, 649, 916 P.2d 1313, 1316 (1996).  A law enforcement officer is a "full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor."  NMSA 1978, § 41-4-3.  "New Mexico courts have construed this definition strictly."  Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-633, 2008 WL 5992269, at *4 (D.N.M. Apr. 20, 2009)(Browning, J.)(citing cases).  See, e.g., Montes v. Gallegos, 812 F. Supp. 1165, 1172 (D.N.M. 1992)(holding that mayor is not a law-enforcement officer under the NMTCA, notwithstanding his statutory authority and obligation to exercise law

enforcement functions); Dunn v. McFeeley, 127 N.M. 513, 984 P.2d 760, 767 (Ct. App. 1999)(holding that the Office of the Medical Inspector Investigator and a crime laboratory technician are not law-enforcement officers under the NMTCA), cert. denied, 127 N.M. 389, 981 P.2d 1207 (1999); Coyazo v. State, 120 N.M. 47, 51, 897 P.2d 234, 238 (Ct. App. 1995)(holding that the District Attorney and his staff are not law-enforcement officers under § 41-4-3D); Callaway v. N.M. Dep't of Corr., 117 N.M. at 641, 875 P.2d at 397 (holding that correctional officers at penitentiary are not law-enforcement officers under the NMTCA, notwithstanding their statutory power to make arrests); Dunn v. State ex rel. Tax. and Rev. Dep't, 116 N.M. 1, 4, 859 P.2d 469, 472 (Ct. App. 1993)(holding that Director of Motor Vehicle Division is not a law-enforcement officer under the NMTCA, notwithstanding his statutory power to make arrests); Vigil v. Martinez, 113 N.M. 714, 721, 832 P.2d 405, 412 (Ct. App. 1992)(holding that probation and parole officers are not law-enforcement officers under the NMTCA); Anchondo v. Corr. Dep't, 100 N.M. 108, 111, 666 P.2d 1255, 1258 (1983)(holding that the Secretary of Corrections and the Warden of a state penitentiary are not law-enforcement officer under the NMTCA).  See also Johnson v. Holmes, 377 F. Supp. 2d 1069, 1083 (D.N.M. 2004)(Browning, J.)("'Akin' to a law enforcement officer is, as a matter of law, insufficient to waive sovereign immunity under § 41-4-12 NMSA 1978."), aff'd, 455 F.3d 1133 (10th Cir. 2006).

Salazar does not contend that the waiver for law enforcement officers applies, and the Court does not believe that it does.  None of the Defendants -- Mayors and a Transit Department Director -- have as their "principal duties under law . . . to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes."  NMSA 1978, § 41-4-3.  Therefore, the waiver of immunity for law enforcement officers does not apply in this case.  Moreover, because

the NMTCA includes defamation and malicious abuse of process in its waiver of immunity for law enforcement officers, but not in the other waivers provided in Sections 41-4-5 through 41-4-12, the canon of statutory interpretation *expressio unius est exclusio alterius* supports the Court's conclusion that the New Mexico Legislature has not waived immunity for the Mayor and the Transit Department Director.

Salazar appears to argue that the alleged statements were outside the scope of the Defendants' duties because they were tortious. "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived" by the NMTCA's provisions. NMSA 1978, § 41-4-4A. The New Mexico Legislature defined "scope of duty" to "mean[ ] performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." NMSA 1978, § 41-4-3. "Whether an employee is acting within the scope of duties is a question of fact, and summary judgment is not appropriate unless 'only one reasonable conclusion can be drawn' from the facts presented." Celaya v. Hall, 135 N.M. 115, 122, 85 P.3d 239, 246 (2004). "In the present case, [the Court] ask[s] whether, under any set of facts alleged in the complaint, Defendants' actions can be considered outside the scope of their duties and thus outside the coverage of the TCA." Henning v. Rounds, 142 N.M. 803, 807, 171 P.3d 317, 321 (Ct. App. 2007).

Salazar argues that

[t]he City's contention that its mayor is both immune from defamation claims and free to comment "on the history and employment status of the City's employees" apparently even to the extent of making false accusations of criminal misconduct against a City employee whom the Personnel Board has ordered to be reinstated, are not worthy of serious consideration.

-38-

Response at 9.  Salazar's contention appears to be that the Mayor is not immune from tortious conduct.  In Garcia-Montoya v. State Treasurer's Office, the Supreme Court of New Mexico rejected a plaintiff's argument that unlawful acts fall outside of an employee's duties, because this interpretation would swallow the rule:

> With respect to Garcia-Montoya's claims of intentional infliction of emotional distress and defamation, the district court granted Defendants' motion for summary judgment on the basis that Garcia-Montoya's claims were barred by the Tort Claims Act. . . .  Garcia-Montoya claims that summary judgment was improper because Montoya and Andermann were not acting within the scope of duty.  Garcia-Montoya contends simply that intentional torts are outside the scope of duties for the positions of State Treasurer and Deputy State Treasurer. Certainly, Garcia-Montoya's position oversimplifies the issue.  Public employees are not directed to commit torts as a part of their official duties; thus, Garcia-Montoya's formulation of the scope of duty test would completely nullify the Legislature's intent to provide governmental immunity against tort claims.  See NMSA 1978, § 41-4-2(A) (1976) ("[T]he area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.").
>
> The Legislature has specifically defined "scope of duties" to "mean [ ] performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  NMSA 1978, § 41-4-3(G) (1995).  Garcia-Montoya fails to specify any actions by Montoya and Andermann which they were not requested, required, or authorized to perform.  As a result, we do not believe that Garcia-Montoya has raised a genuine issue of material fact that Montoya's and Andermann's actions were outside the scope of their duties, and we affirm the summary judgment in Defendants' favor.

130 N.M. at 43, 16 P.3d at 1102.  By the same measure, Salazar's contention that the NMCTA's immunity does not cover the Mayor's or the Transit Department Director's tortious conduct is unavailing.  See Seeds v. Lucero, 137 N.M. 589, 592, 113 P.3d 859, 862 (Ct. App. 2005)("Our case law establishes that a public employee may be within the scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even criminal." (citations omitted)); Vigil v. State Auditor's Office, 138 N.M. 63, 68, 116 P.3d 854, 859 (Ct. App. 2005)("[A]ssuming that [the

defendant] violated state and federal law in conducting the audit, even to the extent of some tortious or criminal activity, if he was performing an act that he was requested, required or authorized to perform, he was acting within his scope of duty . . . ." (citation internal quotation marks omitted)). As the Court of Appeals of New Mexico stated in <u>Risk Mgmt. Div. v. McBrayer</u>, 129 N.M. 778, 14 P.3d 43 (Ct. App. 2000):

> [T]he legislature likely foresaw the possibility that a public employee could . . . commit malicious, even criminal acts that were unauthorized, yet incidental to the performance of [his or her] duties.  And it is equally likely that the legislature intended that those unauthorized acts would fall within the scope of duties as defined in the TCA.

129 N.M. at 784, 14 P.3d at 49.  Consequently, the Court concludes that the NMTCA bars Salazar's defamation and malicious-abuse-of-process claims against the Defendants based on statements made while they were City of Albuquerque employees, and the Court dismisses these claims.

## IV.  SALAZAR HAS STATED A DEFAMATION CLAIM AGAINST PAYNE FOR PAYNE'S POST-EMPLOYMENT STATEMENTS.

In his Complaint, Salazar alleges that, on February 4, 2010, Payne, whom the City of Albuquerque no longer employed, made a defamatory statement to KOB-TV-4:

> I think the personnel board is absolutely crazy to say we need to bring this individual back, put him behind the wheel of a bus and give him $100,000.  That's nuts. . . .  If Mayor Berry was forced to re-hire him, he should have given him a position where he's not around children.

Complaint ¶ 25, at 6.  The City of Albuquerque and Berry contend that Payne's post-employment statement was not defamatory.  They argue that "[t]his statement asserts no facts of and concerning Plaintiff that can injure him, and the statement is directed at the Personnel Board and the Mayor, criticizing their decisions."  Memorandum at 4.  Salazar responds that the statement is defamatory, asserting that "[t]he contention that it was dangerous for children to be 'around' Paul Salazar, is both

offensive and defamatory.  Since the allegation is one of criminal misconduct, it is defamation per se." Response at 9.  The Court agrees that the statement is defamatory, and the Court denies the City of Albuquerque's and Berry's Motion with respect to Salazar's defamation claim against Payne.

Salazar has stated a defamation claim against Payne for the statements he made after he left the his employment with the City of Albuquerque.  In <u>Newberry v. Allied Stores, Inc.</u>, 108 N.M. 424, 773 P.2d 1231 (1989), the Supreme Court of New Mexico addressed the requirements for stating a defamation claim:

> Generally, the elements of a defamation action include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff. <u>See</u> SCRA 1986, 13-1002.  A statement is deemed to be defamatory per se, if, without reference to extrinsic evidence and viewed in its plain and obvious meaning, the statement imputes to plaintiff: the commission of some criminal offense involving moral turpitude; affliction with some loathsome disease, which would tend to exclude the person from society; unfitness to perform duties of office or employment for profit, or the want of integrity in discharge of the duties of such office or employment; some falsity which prejudices plaintiff in his or her profession or trade; or unchastity of a woman. <u>Marchiondo v. New Mexico State Tribune Co.</u>, 98 N.M. 282, 287-88, 648 P.2d 321, 326-27 (Ct. App. 1981), <u>cert. quashed</u>, 98 N.M. 336, 648 P.2d 794 (1982)(<u>Marchiondo I</u>).  Any other communication, though not defamatory on its face, but which becomes defamatory when its meaning is illuminated by proof of extrinsic facts is actionable per quod. <u>See id.</u> at 288-89, 648 P.2d at 326-27.  Traditionally, if a statement was found to be defamatory per se, damages to the reputation of the plaintiff were presumed. <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 262 . . . (1964).  This per se-per quod rule, however, has probably been overtaken by rulings of the United States Supreme Court, in <u>New York Times</u>, and its progeny through <u>Dun & Bradstreet Inc., v. Greenmoss Builders, Inc.</u>, 472 U.S. 749 . . . (1985), which have held that, generally, damages cannot be presumed in a defamation action.

> Under the now-existing law of defamation in New Mexico, the standard of strict liability no longer applies. [<u>Marchiondo v. Brown</u>, 98 N.M. 394, 402, 649 P.2d 462, 470 (1982)(<u>Marchiondo II</u>)].  Damages must be proved and cannot be presumed. <u>Poorbaugh v. Mullen</u>, 99 N.M. 11, 20, 653 P.2d 511, 520 (Ct. App.), <u>cert. denied</u>, 99 N.M. 47, 653 P.2d 878 (1982).  In determining the correct standard of proof for damages, the relevant question is not whether the defamation is per se or per quod, but whether the plaintiff is a private or public figure. See <u>Marchiondo II</u>,

98 N.M. at 399, 649 P.2d at 467.  The ordinary common-law negligence standard of proof applies to private defamation plaintiffs to establish liability, and proof of actual malice (knowledge of the falsity of the statement or reckless disregard of the truth) applies to the public official and public figure plaintiff.  Id. at 402, 649 P.2d at 470. This establishes liability for compensation of actual injury.

> Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.  Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

Id. (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)).  Further in New Mexico, a private defamation plaintiff must plead and prove special damages in order to recover them.  Marchiondo II, 98 N.M. at 402, 649 P.2d at 470.  Special damages encompass only pecuniary loss.  Marchiondo I, 98 N.M. at 289, 648 P.2d at 328.

108 N.M. at 429-30 , 773 P.2d at 1236-37.  Payne's statement that Salazar should not be placed in a position around children may rise to the level of defamation per se, because "viewed in its plain and obvious meaning, . . .  the statement imputes to plaintiff . . . unfitness to perform . . . employment for profit, or the want of integrity in discharge of the duties of such . . . employment."  108 N.M. at 429, 773 P.2d at 1236.  Payne's statement, without reference to extrinsic evidence, indicates that Salazar is unfit to perform the duties of a bus driver.  Moreover, Payne's statements considered in light of the extrinsic evidence of the Defendants' allegations that Salazar is a sex offender and a child molester is defamation per quod.  See 108 N.M. at 429, 773 P.2d at 1236 ("Any other communication, though not defamatory on its face, but which becomes defamatory when its meaning is illuminated by proof of extrinsic facts is actionable per quod.").

Because Salazar has set forth allegations in his Complaint that Payne made defamatory, post-employment statements, the Court will not dismiss his defamation claim against Payne based on

Payne's post-employment statement.[3]

## V.   SALAZAR HAS NOT STATED A CLAIM BREACH OF EMPLOYMENT CONTRACT AND DUTY OF GOOD FAITH AND FAIR DEALING IN COUNT V.

Salazar's claim for breach of employment contract, and of the duty of good faith and fair dealing, appear to be based on two arguments.  First, he implies the Defendants should not have appealed the Personnel Board's order.  See Complaint ¶ 56, at 12 ("Pursuant to his employment contract, Mr. Salazar was entitled to a fair hearing before a Personnel Hearing Officer, and once that hearing had been held and a decision rendered the City was required to comply with the final orders of its Personnel Board.").  Second, he alleges that "[b]oth Mayor Berry and Mayor Chavez were prohibited by the City Charter from involvement in personnel matters, yet both mayors made invidious statements and comments defaming Paul Salazar."   Complaint ¶ 57, at 12.  Both of Salazar's arguments fail as a matter of law.  The Court will therefore dismiss Count V of Salazar's Complaint.

### A.   THE DEFENDANTS' APPEAL OF THE PERSONNEL BOARD DID NOT BREACH SALAZAR'S EMPLOYMENT CONTRACT, OR THEIR DUTY OF GOOD FAITH AND FAIR DEALING.

On the first contention, the Defendants rely on their arguments against the merits of Salazar's procedural due-process claim.  They contend that the City of Albuquerque has a statutory right to appeal the Personnel Board's decisions, and that Salazar's argument would require them to abandon their right and immediately acquiesce to the Personnel Board.  They note that the upshot of Salazar's argument is that employees, too, could not appeal the Personnel Board's decisions without violating

---

[3] There may be other defenses to the defamation cause of action, the Court will not dismiss the claim for lack of defamatory statement, which is the argument that the City of Albuquerque and Berry advanced in their Motion.

their employment contracts.

The Court agrees that the City of Albuquerque's appeal of the Personnel Board decision did not violate Salazar employment contract. The City of Albuquerque has a statutory right to appeal the Personnel Board's decisions. See NMSA 1978, § 39-3-1.1 ("Unless standing is further limited by a specific statute, a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision."). The essence of Salazar's argument is that a governmental entity breaches an employment contract whenever it exercises its right to appeal rulings that are adverse to it. The consequence of Salazar's contention would be that the only way to avoid a contract claim would be for the government entity to acquiesce at every turn. Again, a citizen is entitled to process and is not necessarily guaranteed a win. A process consistent with due process is a notice of a hearing and a hearing, and that process can include appeals; that is part of the process. If an employer has a right under NMSA 1978, § 39-3-1.1 to appeal a Personnel Board decision, there is no sound basis in the law to say that Constitution precludes the City of Albuquerque from taking an appeal. The Court concludes that the City of Albuquerque's appeals of the Personnel Board's decisions to the state court did not breach Salazar's employment contract or their duty of good faith and fair dealing.

## B.   THE MAYORS' STATEMENTS DID NOT BREACH SALAZAR'S EMPLOYMENT CONTRACT.

Salazar alleges that "both Mayor Berry and Mayor Chavez were prohibited by the City Charter from involvement in personnel matters," Complaint ¶ 57, at 12, "but that they ignored and overrode the City Charter, Merit System Ordinance, and City Rules and Regulations concerning employee rights and disciplinary actions, and arrogated 'to themselves the ability to do or say whatever they wanted,'" Response at 11 (quoting Complaint ¶ 58, at 12). The City of Albuquerque

and Berry contend that nothing in the City's Charter or Merit System Ordinance prevents the Mayor, or any other elected official, from commenting publicly on matters of public interest. They assert that nothing precludes the Mayor from commenting on the history and employment status of the City of Albuquerque's employees, or taking a position on litigation of cases. They further assert that public statements made on cases of public interest are not necessarily involvement in the hiring or discharge process. Salazar responds that whether or not Chavez' and Berry's alleged statements are "'involvement in the hiring or discharge process' and whether they do or do not 'demonstrate actual involvement in the process' are again mixed questions of fact and law," which the Court should allow to proceed. Response at 11 (quoting Memorandum at 6).

The Court concludes that Salazar has not stated a claim for breach of contract or duty of good faith and fair dealing. The City Charter states: "Except to the extent necessary for the administration of the merit system, the Mayor is prohibited from becoming involved in the hiring, promotion, demotion, or discharge of any city employee except those personnel hired for unclassified positions directly responsible to the Mayor." Albuquerque City Charter, art. X, § 2(b). There is scant case law interpreting the meaning of this provision. The Court finds only its prior opinion addressing the structure of the City Attorney's office and the authority to make personnel decisions as to unclassified employees has touched on the issue. See Kelley v. City of Albuquerque, 375 F. Supp. 2d 1183, 1191 (D.N.M. 2004)(Browning, J.). The City Charter's provision appears to address concerns about the Mayor awarding patronage positions, or otherwise using promotions and hiring to reward favor, or demotions or terminations to punish his adversaries. The Court does not believe the Supreme Court of New Mexico would interpret the provision to restrict the mayor from commenting on any matter involving an employment decision. For example, it would defy reason

to interpret the Charter as gagging the mayor from commenting on a matters of public corruption or police brutality that resulted in employees being fired, because the matter involved employees that had been discharged, and the Court does not believe the Supreme Court of New Mexico would adopt an unreasonable interpretation.  The language of the City Charter does not require such a hampering decision.  Moreover, there is nothing inconsistent with allowing the Mayor to comment on all city matters, but not give him power to effect some.  The Mayor may comment on judicial decisions or council actions, but may not, because of the separation of powers, make their decisions. It would be ironic to take away from the Mayor the ability to publicly comment on employees when everyone else in Albuquerque has that ability.  A Mayor might use his bully pulpit to change the system, even if he or she cannot make individual personnel decisions.

Moreover, Salazar cannot enforce the City Charter as a condition of his employment contract.  A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct.  See Newberry v. Allied Stores, Inc., 108 N.M. at 426, 773 P.2d at 1233.  "An implied contract is created only where an employer creates a reasonable expectation.  The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." Hartbarger v. Frank Paxton Co., 115 N.M. 665, 672, 857 P.2d 776, 783 (1993)(citation omitted).  If the alleged employer's promise is not sufficiently explicit, the courts will not find an implied contract.  Hartbarger v. Frank Paxton Co., 115 N.M. at 669, 857 P.2d at 780.  Courts have held that an alleged implied contract that merely restates the law does not create an implied contract.  In Peralta v. Cendant Corp., 123 F. Supp. 2d 65 (D. Conn. 2000), the United States District Court for the District of Connecticut stated:

The language of the anti-harassment policy that plaintiff urges as the basis of his implied contract claim does not indicate that defendant is undertaking any contractual obligations towards the plaintiff; rather, it obliges Cendant to comply with federal and state anti-discrimination laws, and to undertake an investigation upon receiving complaints of discrimination and/or harassment. Cendant is required to publicize its equal opportunity and anti-harassment policy, as well as the complaint procedure, in order to guard against liability under the discrimination laws. See Faragher v. City of Boca Raton, 524 U.S. 775, 807 . . . (1998). As any promises in the policy are general statements of adherence to the anti-discrimination laws, standing alone they do not create a separate and independent contractual obligation. See Gally v. Columbia Univ., 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (anti-discrimination policy does not give rise to contractual liability); Belgrave v. City of New York, 1999 WL 692034 (E.D.N.Y.) (no breach of contract claim where employee claimed that employer failed to follow its procedures for providing equal opportunity to employees).

123 F. Supp. 2d at 83-84 (citation to the record omitted). See Mutua v. Tex. Roadhouse Mgmt. Corp., Civ. No. 09-4080, 2010 WL 4683859, at *14-15 (D.S.D. Nov. 10, 2010)(granting summary judgment on a breach-of-contract claim seeking to enforce the anti-discrimination provisions in the employer's employee handbook, because the employer already must abide by Title VII and a promise to perform a legal duty is not consideration for a return promise); Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233, 254 (D. Conn. 2008)(recognizing that an "anti-discrimination policy" does not indicate that an employer is undertaking any contractual obligations towards the employee; rather, it requires the employer "to comply with federal and state anti-discrimination laws"); Gally v. Columbia Univ., 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998)(stating that a provision in the code of conduct requiring that all students receive fair and equal treatment is "merely a general statement of adherence by [the defendant] to existing anti-discrimination laws[;] [i]t does not create a separate and independent contractual obligation")(citation omitted). Similarly, the Supreme Court of New Mexico has recognized that "an agreement to do what one is already legally bound to do is not sufficient consideration for the promise to another." W. Bank of Santa

Fe v. Biava, 109 N.M. 550, 551, 787 P.2d 830, 831 (1990).  Because the Mayor is already bound to obey whatever strictures the City Charter imposes upon him or her, it cannot also be a part of Salazar's employment contract.  The Court thus concludes that Salazar's contention that the City Charter implies he is entitled, as a condition of his employment, to prohibit the Mayor from speaking about matters of public concern when the matters involve "hiring, promotion, demotion, or discharge of any city employee," Albuquerque City Charter, art. X, § 2(b), fails as a matter of law.

## VI.   THE COURT WILL DISMISS COUNT VI OF SALAZAR'S COMPLAINT -- SALAZAR'S PUNITIVE DAMAGES COUNT -- BECAUSE PUNITIVE DAMAGES ARE NOT A DISTINCT CLAIM.

The City of Albuquerque and Berry contend that the Court should dismiss Salazar's claim for punitive damages in Count VI, because the underlying claims should be dismissed.  Salazar contends he has sufficiently pled his claim for punitive damages by charging the individual defendants acted "intentionally, willfully, maliciously, and with utter disregard for the truth and the damage caused by their conduct."  Complaint ¶ 62, at 13.  The Court does not dismiss all of Salazar's claims, and punitive damages may be available for his claims.  See, e.g., Aken v. Plains Elec. Generation & Transmission Co-op., Inc., 132 N.M. 401, 410; 49 P.3d 662, 671 (2002)(upholding, after remittitur, an award of punitive damages for a defamation claim).  Punitive damages, however, are not a stand-alone claim.  "[R]equesting punitive damages is not a separate cause of action that should be set out separately in the Complaint."  Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 708 F. Supp. 2d 1209, 1271 (D.N.M. 2010)(Browning, J.).  Consequently, the Court dismisses Salazar's Count VI, but it does not preclude him from seeking punitive damages for his surviving claims to the extent the law permits.

IT IS ORDERED that: (i) the Court grants in part and denies in part Defendant City of

Albuquerque's and Defendant Richard Berry's Motion to Dismiss Plaintiff's Complaint for Violation of Statutory, Contractual, and Constitutional Rights, filed August 10, 2010 (Doc. 3); (ii) the Court dismisses Counts I, IV, V, and VI of Salazar's Complaint for his procedural due-process, malicious-abuse-of-process, breach-of-employment-contract and duty-of-good-faith-and-fair-dealing, and punitive damages claims; (iii) the Court dismisses Count III of Salazar Complaint to the extent his defamation claim is based on statements the Defendants' made during their employment with the City of Albuquerque; (iv) the Court denies Defendants City of Albuquerque's and Richard Berry's request that it dismiss Count III to the extent it is based on Defendant Greg Payne's post-employment comments; and (v) the Court denies the City of Albuquerque's and Berry's request that it dismiss Salazar's liberty-interest claim in Count II.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul Livingston
Placitas, New Mexico

 *Attorney for the Plaintiff*

Robert J. Perry
 City Attorney
Peter H. Pierotti
Michael I. Garcia
 Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

 *Attorneys for the Richard J. Berry and the City of Albuquerque*

-49-