## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PAUL SALAZAR,

    Plaintiff,

vs.             No. CIV 10-0645 JB/ACT

CITY OF ALBUQUERQUE,
RICHARD BERRY, Mayor,
ROBERT J. PERRY, Chief Administrative Officer,
VINCENT YERMAL, Director of Human Resources,
MARTIN CHAVEZ, former Mayor,
GREG PAYNE, former Transit Dept. Director, and
BRUCE RIZZIERI, Transit Dept. Director,

    Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants City of Albuquerque, Richard

Berry, and Greg Payne's Motion to Dismiss Portions of First Amended Complaint (Doc. 48),

filed July 9, 2012 (Doc. 52)("2nd MTD").[1]  The Court held a hearing on September 20, 2012.

The primary issues are: (i) whether the Court should dismiss Plaintiff Paul Salazar's procedural

due-process claim because he has failed to set forth allegations that, taken as true, demonstrate

that he was deprived of a constitutionally adequate level of process; (ii) whether the New Mexico

Tort Claims Act, N.M.S.A. 1978, §§ 41-4-1-27 ("NMTCA") has waived immunity for Salazar's

claims of defamation per se, intentional infliction of intentional distress, and civil conspiracy;

(iii) whether Salazar has stated a claim for relief in tort against Defendants Richard Berry, Robert

---

[1] Although the City of Albuquerque, Berry, and Payne are the named parties in the 2nd MTD, they state that their arguments are made on behalf of all of the Defendants in this case: City of Albuquerque Chief Administrative Officer Robert J. Perry, City of Albuquerque Director of Human Resources Vincent Yermal, and City of Albuquerque Transit Department Director Bruce Rizzieri.  <u>See</u> Defendants City of Albuquerque, Richard Berry, and Greg Payne's Memorandum in Support of Motion to Dismiss Portions of First Amended Complaint (Doc. 48) ¶ 1, at 2, filed July 9, 2012 (Doc. 53) .

J. Perry, Vincent Yermal, Martin Chavez, Greg Payne, and Bruce Rizzieri for any conduct outside the scope of their employment; (iv) whether Salazar has stated a plausible claim for breach of contract, and breach of the duty of good faith and fair dealing, against the Defendants. The Court will construe the 2nd MTD as a motion for judgment on the pleadings under rule 12(c) of the Federal Rules of Civil Procedure, because the Defendants filed the 2nd MTD after filing an answer to the First Amended Complaint, filed June 29, 2012 (Doc. 48), and will grant in part and deny in part the 2nd MTD.[2]  The Court grants the Defendants judgment on the pleadings on Salazar's procedural due-process claim, because Salazar waived his right to bring a claim of procedural due process by not taking advantage of the administrative and state-court appeal process available to him, and because he has voluntarily relinquished his property interest in continued employment by failing to report for work as a bus driver.  The Court grants judgment on the pleadings on Salazar's claim of defamation in favor of Chavez, Berry, and Payne for statements made when they were employees of the City of Albuquerque, because the NMTCA has not waived their immunity for the tort of defamation.  The Court will not dismiss or grant judgment on Salazar's allegation of defamation in favor Payne for statements made while he was no longer an employee as the Director of the City of Albuquerque's Transit Department.  The Court will grant judgment on the pleadings on Salazar's allegations of intentional infliction of emotional distress and civil conspiracy in favor of Berry, Perry, Yermal, Chavez, Payne, and Rizzieri arising from their conduct while employed with the City of Albuquerque, because the

---

[2] Salazar filed a First Amended Complaint for Violation of Statutory, Contractual, and Constitutional Rights, on September 23, 2010 (Doc. 7), without the Court's or Defendant's consent.  Salazar withdrew Doc. 7 on October 8, 2010.  See Notice of Stipulated Withdrawal of First Amended Complaint, filed October 8, 2010 (Doc. 13).  Throughout this memorandum opinion and order, the Court's reference to the First Amended Complaint is referring to Doc. 48, and not Doc. 7.  Salazar filed the First Amended Complaint (Doc. 48) with leave from the Court. See Order Granting Leave to Amend, filed June 22, 2012 (Doc. 47).

NMTCA has not waived immunity for these torts. The Court will grant judgment on the pleadings to Payne on Salazar's allegations of intentional infliction of emotional distress and civil conspiracy based on his post-employment statements, because Salazar has failed to state a claim which plausibly establishes that Payne's statements were outrageous conduct causing Salazar extreme mental distress, or that the statements were in furtherance of an unlawful purpose. The Court reconsiders the portion of its Memorandum Opinion and Order, filed March 28, 2011 (Doc. 23)("March 28 MOO"), which held that the Charter of the City of Albuquerque is, in no part, incorporated into Salazar's employment contract. The Court will grant judgment on the pleadings to Berry, Perry, Yermal, Chavez, Payne, and Rizzieri for Salazar's breach of contract and breach of the duty of good faith and fair dealing, because Salazar has failed to establish that these Defendants breached any provision of Salazar's employment contract, whether implied in law or express, and because Chavez and Berry's statements did not breach Salazar's employment contract. On the other hand, the Court will not grant judgment on the pleadings to the City of Albuquerque on Salazar's breach-of-contract and breach-of-the-duty-of-good-faith-and-fair-dealing claim, because Salazar has stated sufficient facts to plausibly establish that the City of Albuquerque violated the Personnel Board's orders to pay Salazar back pay and benefits, and that this violation has been ongoing for over three years.

## FACTUAL BACKGROUND

Salazar worked continuously as a classified employee of the City of Albuquerque from March 25, 2000, through February 28, 2007, in the position of a bus driver. See First Amended Complaint ¶ 10, at 3. On February 28, 2007, City of Albuquerque's Transit Department placed Salazar on leave pay pending an investigation into Salazar's former wife's allegations that

Salazar "improperly touch[ed] their 4-year-old daughter during a court-approved Father's Day weekend visitation in 2001." First Amended Complaint ¶ 11, at 3. Salazar pled no contest to those charges on October 11, 2006, a judgment was entered against him without an adjudication of guilt, and the charges against Salazar were dismissed pursuant to the judgment and a conditional discharge. See First Amended Complaint ¶¶ 12, 14 at 3-4. Salazar maintains that he is innocent of these allegations. See First Amended Complaint ¶ 11, at 3.

On February 27, 2007, a parole officer with the State of New Mexico informed the Transit Department that "'Paul Salazar, is a convicted sex offender and/or is under the supervision of the Probation-Parole Division for sexual offense. He has been adjudicated guilty of . . .: Attempted Sexual Contact of a Minor." First Amended Complaint ¶ 13, at 3. On July 9, 2007, the City of Albuquerque, Chavez, former Mayor of the City of Albuquerque, and Payne, former Director of the City of Albuquerque's Transit Department, categorized Salazar as a "'convicted sex offender'" and terminated his employment.[3] First Amended Complaint ¶¶ 6, 15, at 2, 4.

Salazar appealed his termination. See First Amended Complaint ¶ 16, at 4. On June 11, 2008, upon the completion of a three-day evidentiary hearing, a personnel hearing officer recommended reinstating Salazar. See First Amended Complaint ¶ 16, at 4. The City of Albuquerque Personnel Board approved the officer's recommendations and ordered the City of Albuquerque to reinstate Salazar as a bus driver, with back pay and benefits. See First Amended Complaint ¶ 16, at 4.

---

[3] Chavez was Mayor of the City of Albuquerque from 1993-1993, and 2001-2009. See Martin Chavez, Wikipedia, Wikipedia.com (July 24, 2013, 7:16 p.m.), http://en.wikipedia.org/wiki/Martin_Ch%C3%A1vez. Berry succeeded Chavez on December 1, 2009. See Mayor Richard J. Berry, City of Albuquerque, http://www.cabq.gov/mayor (last visited August 19, 2013).

Chavez and Payne refused to follow the Personnel Board's recommendation.  <u>See</u> First Amended Complaint ¶ 17, at 4.  Chavez and Payne publicly referred to Salazar as a "'sex offender'" and a "'child molester.'"  Chavez stated to the <u>Albuquerque Journal</u>: "'This guy is not going to be around kids.  Not while I am a mayor . . . .  This is outrageous.  What parent wants their kid on a bus with someone like that?'"  First Amended Complaint ¶ 18, at 4 (quoting <u>City Must Rehire Sex Offender Bus Driver</u>, Albuquerque Journal, June 18, 2008).  Chavez appeared on "one or more 'talk radio' programs,'" and referred to Salazar as a "'child molester'" and a "'sex offender.'"  First Amended Complaint ¶ 19, at 5.  Chavez "berated the Personnel Hearing Officer and the Personnel Board members who had ordered reinstatement."  First Amended Complaint ¶ 19, at 5.  Payne stated, in reference to Salazar:

> There is no question if he drives a bus he will have contact with children.  The public would recoil if we hired someone like this.  It's almost as if the crime didn't happen.  I don't know how someone could reach this conclusion unless they are in a bubble and detached from reality.

First Amended Complaint ¶ 20, at 5.

Chavez appealed the Personnel Board's ruling to Second Judicial District Court of the State of New Mexico.  <u>See</u> First Amended Complaint ¶ 21, at 5.  On January 7, 2009, the Honorable Valerie A. Huling, State District Judge for the Second Judicial District of the State of New Mexico, affirmed the Personnel Board's ruling on due-process grounds, but sent the matter back to the Personnel Board to determine whether the City of Albuquerque "had just cause to terminate Salazar's employment irrespective of the . . . due process violations."  First Amended Complaint ¶ 22, at 5.

On August 12, 2009, the Personnel Board unanimously held that the City of Albuquerque had failed to demonstrate that it had just cause to terminate Salazar's employment, and ordered

the City of Albuquerque to reinstate Salazar with back pay and benefits, and to expunge his disciplinary record.  See First Amended Complaint ¶ 23, at 5.

Chavez appealed the Personnel Board's ruling a second time to the Second Judicial District Court.  See First Amended Complaint ¶ 24, at 6.  The City's Statement of Appellate Issues stated:

> Had the Transit Department been given the opportunity, it would have presented evidence to show the number of children riding City buses; it would have presented evidence to establish Salazar's interaction with these children.  Whether Salazar committed the acts with which he was charged, the City has the obligation to prevent its bus riders from the perception that the City had retained employees with records of having plead no contest to an "attempt to commit criminal sexual (sic) of a minor."

First Amended Complaint ¶ 24, at 6 (quoting City's Statement of Appellate Issues, Case No. D-202-CV-2009-10465, at 9).

On January 4, 2010, the City of Albuquerque informed Salazar that it would reinstate him as a bus driver.  See First Amended Complaint ¶ 25, at 6.  The City of Albuquerque informed Salazar that he would "'need to pass the pre-employment physical and other tests associated with his return,'" and that the City of Albuquerque would "'pay him back wages and any overtime wages he would have earned'" and "'dismiss its appeal of the disciplinary action.'"  First Amended Complaint ¶ 26, at 6.  On January 18, 2010, the former City of Albuquerque Director of Human Resources, Eugene Moser, confirmed that Salazar would be returning to his position as a bus driver "'once he passes the requisite drug screening.'"  First Amended Complaint ¶ 26, at 6.  The City of Albuquerque calculated that, as of February 12, 2010, it owed Salazar $114,713.16 in back pay.  See First Amended Complaint ¶ 26, at 6.  Salazar was "ready, able, and happy to return to his job" at that time.  First Amended Complaint ¶ 29, at 7.

On February 4, 2010, Payne made the following statement to KOB-TV-4:

> I think the personnel board is absolutely crazy to say we need to bring this individual back, put him behind the wheel of a bus and give him $100,000. That's nuts . . . .  If Mayor Berry was forced to re-hired him, he should have given him a position where he's not around children.

First Amended Complaint ¶ 27, at 7.  On July 26, 2010, the <u>Albuquerque Journal</u> quoted Perry, the current Chief Administrative Officer and then-City Attorney for the City of Albuquerque, stating:

> City Attorney Robert Perry said the city is trying to "remediate" the situation, which carried over from May Martin Chávez's administration.  "We're trying to do that with a sound policy decision, Perry said.  "We're looking for different positions of similar duties and similar pay to reinstate Mr. Salazar."  But not as a bus driver, he said.
>
> "We thought basically that the best policy was not to return Mr. Salazar to his job as a bus driver.  And the reasons for that is that we didn't want him subject to false accusation because of this situation and circumstances that involve it not being good for him as it relates to his safety and false accusation," Perry said.
>
> He also called it an untenable situation for the city: "for our ridership, for our confidence in the integrity of our transit system and the employees."
>
> Even though Salazar wasn't "adjudicated guilty," Perry said, the mere accusation causes potential problems and liability exposure, as well.
>
> Mayor Berry said earlier this year, "The city believes it is not in the public's best interest that this individual be allowed to drive a city bus," and that the city was pursuing all legal options in the matter.[4]

First Amended Complaint ¶ 33, at 8-9.  <u>See</u> First Amended Complaint ¶ 3, at 2.

On August 30, 2010, Salazar passed a drug test at the City of Albuquerque's Health Clinic.  <u>See</u> First Amended Complaint ¶ 34, at 9.  On September 3, 2010, Salazar received a

---

[4] Perry was a City Attorney before he was "appointed Chief Administrative Officer by Mayor Richard J. Berry in February 2011."  <u>Chief Administrative Officer Robert J. Perry</u>, City of Albuquerque, https://www.cabq.gov/mayor/contact-us/chief-administrative-officer (last visited August 19, 2013).

Notice of Reinstatement, which informed Salazar that he was "'reinstated effective August 28, 2010 to the following position: Motorcoach Operator.'"  First Amended Complaint ¶ 35, at 9.

On September 9, 2010, Moser recommended to the former City of Albuquerque Chief Administrative Officer, David Campbell, that Salazar be placed in the Solid Waste Department, a recommendation which Campbell approved.  See First Amended Complaint ¶¶ 26, 28, 36 at 6, 7, 9.  Campbell stated that this transfer was pursuant to "'Personnel Rules and Regulations Section 307.4,'" which allows the Chief Administrative Officer to "'transfer an employee administratively to any position within the City provided the employee is qualified.'"  First Amended Complaint ¶ 38, at 9-10.  Campbell ordered Salazar to report to the Solid Waste Management Department on September 13, 2010.  See First Amended Complaint ¶ 38, at 10.

On September 13, 2010, Salazar's attorney informed Campbell that Salazar would not accept an "'assignment'" as a garbage truck driver.  First Amended Complaint ¶ 39, at 10.  Campbell informed Salazar on September 13, 2010, that he was required to report to the Solid Waste Management Department by Wednesday, September 15, 2010, at 7:00 a.m., and that if he failed to report, he would be disciplined and possibly terminated.  See First Amended Complaint ¶ 40, at 10.

On September 17, 2010, Salazar received an Interoffice Memorandum, which asserted that he had violated various City Personnel Rules and Regulations.  See First Amended Complaint ¶ 42, at 11.  A hearing was scheduled on Salazar's violations on September 23, 2010.  See First Amended Complaint ¶ 43, at 11.  On September 27, 2010, Bruce Rizzieri, the City of Albuquerque Transit Department Director, "found that Mr. Salazar had violated all the

provisions cited in the Notice of Pre-Determination Hearing by 'failing to appear for work.'" First Amended Complaint ¶ 43, at 11.  See First Amended Complaint ¶ 7, at 2.

Salazar's attorney requested a review of Rizzieri's findings on October 7, 2010, and a hearing was scheduled on December 13, 2010.  See First Amended Complaint ¶ 45, at 11.  On December 16, 2010, during the hearing, the City of Albuquerque "conceded that there was no just cause for termination and agreed to drop the disciplinary charges and reinstate Plaintiff." First Amended Complaint ¶ 46, at 11.  On April 12, 2011, the Transit Department reinstated Salazar to his former position as a "'Motorcoach Operator with the City of Albuquerque's Transit Department effective April 23, 2011.'"  First Amended Complaint ¶ 47, at 12.

Salazar did not appear for work on April 23, 2011.  See First Amended Complaint ¶ 48, at 12.  The City of Albuquerque did not terminate Salazar at that time, because his appeal of his previous termination for failing to report to the Solid Waste Management Department was pending before the Personnel Board.  See First Amended Complaint ¶ 48, at 12.  The hearing officer assigned to Salazar's case ultimately recommended that the City of Albuquerque reinstate Salazar, with back pay and an award of attorneys' fees.  See First Amended Complaint ¶ 51, at 13.  When the matter went before the Personnel Board on November 9, 2011, the Board was confused regarding the posture of the case, given that the City of Albuquerque had agreed to reinstate Salazar as a bus driver on April 12, 2011.  See First Amended Complaint ¶ 52, at 13. The City of Albuquerque represented to the Personnel Board that Salazar would not appear for work.  See First Amended Complaint ¶ 52, at 13.  The Personnel Board determined that the City of Albuquerque was the "'prevailing party'" in the matter, and requested the City of

Albuquerque's attorney to prepare findings of fact and conclusions of law in the matter.  First Amended Complaint ¶ 54, at 13.

The City of Albuquerque's attorney added language into the proposed findings of fact and conclusions of law that stated: "'The Board further orders that grievant will not be entitled to back pay after April 23, 2011 when he refused to return to work at Transit, until he appears for work.'"  First Amended Complaint ¶ 56, at 14.  Personnel Board Chairman Ryan Randall approved, with modifications, the findings of fact and conclusions of law, that the City of Albuquerque prepared.  See First Amended Complaint ¶ 57, at 14.  Other members of the Personnel Board did not on December 16, 2011, review, approve, or sign the order adopting the modified findings of fact and conclusions of law.  See First Amended Complaint ¶ 57, at 14.

On January 17, 2012, Salazar appealed the Personnel Board's order.  See First Amended Complaint ¶ 58, at 14.  On February 6, 2010, the City of Albuquerque delivered to Salazar at his home in Belen, New Mexico, a "'Notice to Report for CDL Physical and Drug Screen to Return-to-Work.'"  First Amended Complaint ¶ 58, at 14.  Shortly thereafter, the Transit Department charged Salazar with violations of various City Personnel Rules and Regulations.  See First Amended Complaint ¶ 59, at 14.  On March 28, 2012, Rizzieri approved Salazar's termination of employment with the Transit Department, finding that Salazar had "'no intention of reporting to work,'" and did "'not acknowledge that he is a City employee.'"  First Amended Complaint ¶ 60, at 15.  Salazar did not appeal this termination.  See Defendants City of Albuquerque, Richard Berry, and Greg Payne's Memorandum in Support of Motion to Dismiss Portions of First Amended Complaint (Doc. 48) ¶ 14, at 4, filed July 29, 2012 (Doc. 53)("MTD Memo.").  The Honorable Alan Malott, State District Judge for the Second Judicial District of the State of New

-10-

Mexico, dismissed Salazar's appeal from the Personnel Board's order on May 1, 2012, for lack of prosecution.  See MTD Memo. ¶ 13, at 4; Order Granting Motion to Dismiss for Lack of Prosecution, filed in state court in Case No. D-202-cv-2012-00617 May 1, 2012, filed in federal court July 9, 2012 (Doc. 53-1)("State Court Dismissal").  #

## PROCEDURAL BACKGROUND

On June 8, 2010, Salazar filed his Complaint for Violations of Statutory Contractual, and Constitutional Rights, filed June 8, 2010 (Doc. 1)("Complaint").   In his Complaint, Salazar alleged six Counts against the City of Albuquerque, Chavez, Berry, and Payne.  Salazar alleged in Count I that the Defendants' wrongful termination of his employment violated his right to procedural due process.  See Complaint ¶¶ 32-36, at 7-8.  Salazar alleged in Count II that the Defendants' "insistence that if he was driving a bus it would be dangerous for Plaintiff to be near children" violated his right to substantive due process.  Complaint ¶¶ 37-42, at 9.  In Count III, Salazar alleged that Chavez, Berry, and Payne's reference to Salazar as a "'child molester,'" a "'sex offender'" and a "person who cannot be trusted to be around children" was defamation per se.  Complaint ¶¶ 43-49, at 10-11.  In Count IV, Salazar alleged that the Defendants maliciously abused process against him, with an intent of delaying and denying his substantive and procedural due process rights, because they appealed the Personnel Board's decisions but lacked a "statutory authority" for that appeal.  Complaint ¶¶ 50-53, at 11.  In Count V, Salazar alleged that the Defendants violated his express and implied employment contract, which provided that he would receive a "fair hearing before a Personnel Hearing officer" and that the City of Albuquerque would comply with the Personnel Board's order.  Complaint ¶¶ 54-56, at 11-12. Salazar also contended that Berry and Chavez violated the Charter of the City of Albuquerque

through involving themselves in Salazar's personnel matters. <u>See</u> Complaint ¶¶ 57-58, at 12. Salazar contended that these actions constitute a breach of the duty of good faith and fair dealing. <u>See</u> Complaint ¶¶ 59-60, at 12. Last, in Count VI, Salazar contended that the Defendants' actions were intentional, willful, and malicious, and done with an utter disregard for the truth and for Salazar's damages, entitling Salazar to punitive damages. <u>See</u> Complaint ¶¶ 61-63, at 13.

On August 10, 2010, the City of Albuquerque and Berry, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, filed the Defendants' Motion to Dismiss Plaintiff's Complaint for Violation of Statutory, Contractual, and Constitutional Rights, filed August 10, 2010 (Doc. 3)("1st MTD"). The Court granted in part and denied in part the 1st MTD. <u>See</u> March 28 MOO at 1. The Court dismissed Salazar's procedural due-process claim, finding that the Defendants' appeal of the Personnel Board's decision did not violate his procedural due process rights. The Court dismissed Salazar's tort claims, except for his allegations based on Payne's post-employment comments, because the NMTCA does not waive the Defendants' immunity for defamation and malicious abuse of process. The Court dismissed Salazar's breach-of-employment-contract and breach-of-the-duty-of-good-faith-and-fair-dealing claims, finding that the Charter of the City of Albuquerque does not prohibit the mayor from commenting on any matter of public concern involving an employment decision, finding that Salazar failed to demonstrate that the Charter of the City of Albuquerque was incorporated into his employment contract, and further finding that the Defendants' appeal did not breach their duty of good faith and fair dealing. The Court also dismissed Salazar's punitive damages claim, because punitive damages are not a stand-alone claim. The Court allowed Salazar's claim in Count II to proceed, because the Court found that Salazar stated the Defendants plausibly violated his rights to

substantive due process through attacking his liberty interest in his employment as a bus driver. See March 28 MOO at 1-2.[5]

Salazar filed his First Amended Complaint on June 29, 2012. Salazar added Perry, Yermal, the current director of the City of Albuquerque's Human Resources Department, and Rizzieri, as Defendants. See First Amended Complaint at 1; id. ¶ 5, at 2. In the First Amended Complaint, Salazar asserts that the Defendants' acts and omissions have caused him "severe emotional damage with physical manifestations." First Amended Complaint ¶ 61, at 15. Salazar asserts that the City of Albuquerque wrongfully accused him of criminal conduct with his daughter, that the City of Albuquerque terminated him because of those false allegations, and that the City of Albuquerque's actions have damaged his reputation and his ability to work and earn a living wage. See First Amended Complaint ¶ 61, at 15. Salazar contends that the Defendants have "continued their invidious misconduct, defamation, and use of the Personnel Board's hearing process to attack Paul Salazar and delay or deny the relief he has sought." First Amended Complaint ¶ 32, at 8. Salazar contends that Moser and Campbell were "fully aware that by transferring Paul Salazar to the Solid Waste Department they were violating the Personnel Board's orders" that Salazar be returned to work as a bus driver. First Amended Complaint ¶ 37, at 9. Salazar also contends that the City of Albuquerque improperly added language to the findings of fact and conclusions of law in his case before the Personnel Board in December, 2011, to the effect of him not receiving back pay from April 23, 2011 until he returns to work. See First Amended Complaint ¶ 56, at 14.

---

[5] Because the Court has not dismissed Salazar's substantive-due-process claim, it still has supplemental jurisdiction over Salazar's state-law claims. See 28 U.S.C. 1367(a).

The First Amended Complaint re-alleges some of the same counts that the Court dismissed in the March 28 MOO.  In Count I, Salazar alleges that the Defendants violated his right to procedural due process.  Salazar asserts that he had a "protected property interest in his employment and his employment could not be terminated without notice and just cause."  First Amended Complaint ¶ 63, at 16.  He asserts that the "Defendants have denied Mr. Salazar's right to procedural due-process by wrongfully terminating his employment and twice refusing to comply with the Personnel Board's reinstatement orders."  First Amended Complaint ¶ 64, at 16. In Count II, Salazar alleges that, "[b]y asserting and reasserting stigmatizing claims of misconduct, immorality, and illegality of a kind that effectively limits or precludes other employment, the Defendants have violated and continue to violate Mr. Salazar's right to substantive due process."  First Amended Complaint ¶ 70, at 17.  In Count III, Salazar asserts a claim of defamation per se, and alleges that the "Defendants' statements on the radio, on television, and in the newspapers were untrue, unprivileged, offensive, and highly damaging . . . [which] were made outside the normal scope of Defendants' work."  First Amended Complaint ¶¶ 79, 81, at 19.  He also asserts that Chavez and Berry violated the Charter of the City of Albuquerque through their involvement in his personnel matters, and by "taking extreme positions and actions and making public statements about the termination or placement of Paul Salazar."  First Amended Complaint ¶ 82, at 19.  In Count IV, Salazar asserts that the "Defendants have repeatedly violated the employment contract, the Merit System Ordinance, [and] the Personnel Board's order . . . and [Salazar] is entitled to damages proximately resulting from Defendants' breach of contract, agreements, and promises."  First Amended Complaint ¶ 89, at 21.  Salazar contends that the Defendants denied his right to a hearing before a personnel

officer and to have the City of Albuquerque comply with the Personnel Board's orders, and that Berry and Chavez violated the Charter of the City of Albuquerque through involving themselves in his personnel matters.  See First Amended Complaint ¶¶ 86-88, at 20.  In Count V, he alleges that the Defendants' "false statements branding Paul Salazar as a sex offender and a child molester who is incapable of driving a City bus without threatening the safety of children" intentionally inflicted emotional distress on him.  First Amended Complaint ¶¶ 92-93, at 21.  In Count VI, Salazar alleges that Berry, Perry, Chavez, Payne, Rizzieri, and City Attorney Paula Forney engaged in a civil conspiracy to "remove Paul Salazar from his position as a bus driver, force him into a truck driving position, or terminate his employment" through their reinstatement and termination of his employment while his case was pending before the Personnel Board.  First Amended Complaint ¶¶ 97-98, at 22.[6]  Salazar asserts that the "Defendants have engaged in conduct so outrageous in conduct, and so extreme in degree, as to be beyond all possible bounds of decency," amounting to the intentional infliction of emotional distress.  First Amended Complaint ¶ 92, at 21.  Salazar also argues that the "Defendants and other City employees, officials, and agents have met, planned, communicated, and conspired with one another to preclude Paul Salazar's return to work."  First Amended Complaint ¶ 96, at 22.

Salazar asks the Court for

[c]ompensatory relief . . . [d]eclaratory, injunctive and equitable relief, including but not limited to reinstatement as a bus driver, expungement of the employment record, full back pay, sufficient front pay, benefits, and interest . . . [p]unitive and

---

[6] Salazar alleges that Paula Forney, an attorney for the City of Albuquerque and the individual who drafted the findings of fact and conclusions of law following Salazar's December, 2011, hearing before the Personnel Board, is "[a]mong the conspirators against Paul Salazar and his lawful reinstatement in accordance with the orders of the Personnel Board."  First Amended Complaint ¶ 97, at 22.  See First Amended Complaint ¶¶ 55-56, at 14.  Salazar has not named Forney as a Defendant in this case.

exemplary damages . . . [a]ttorney's fees and costs . . . [and] [s]uch other and further relief as the Court deems just.

First Amended Complaint ¶¶ A-E, at 23.

On June 9, 2012, the Defendants, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, filed the MTD Memo.   In their MTD Memo., Defendants assert that the Court "previously dismissed some of the same counts realleged in the First Amended Complaint." MTD Memo. at 1 (citing March 28 MOO at 1).  The Defendants assert that the new facts which Salazar adds to the First Amended Complaint "do not clarify plaintiff's claims and do not make the claims any more legally cognizable."  MTD Memo. at 1-2.  The Defendants assert that the Court should dismiss Counts I, III, IV, V and VI, and the new Defendants, because Salazar has failed to state a claim for relief in those counts and against those parties.  See MTD Memo. at 2.

The Defendants argue that the Court should dismiss Count I, because the Defendants have not violated Salazar's right to procedural due process.  The Defendants note that the Court previously held that the City of Albuquerque's appeal of the Personnel Board's order did not violate Salazar's due-process rights.  See MTD Memo. at 6 (citing March 28 MOO at 21).  The Defendants assert that, because the City of Albuquerque reinstated Salazar as a bus driver, Salazar has not suffered any deprivation of a property interest and his claim for a violation of due-process rights is moot.   See MTD Memo. at 6 (citing First Amended Complaint ¶ 58, 60, at 14, 15).  The Defendants also assert that Salazar abandoned his position as a bus driver, and failed to perfect his appeal of his termination and of the Personnel Board's order, and, therefore, Salazar cannot establish that the Defendants violated his due-process rights.  See MTD Memo. at 7-9 (citing Tapia v. Beffort, No. CIV-02-0513 JB/ACT, 2003 WL 24130246, at *4 (D.N.M. Nov. 26, 2003)(Browning, J.)).

-16-

The Defendants assert that the Court should dismiss Counts III, V, and VI, because the NMTCA has not waived the Defendants' immunity as public employees for claims of defamation, intentional infliction of emotional distress, and civil conspiracy.  See MTD Memo. at 9.  The Defendants note that the Court previously held that "'the NMTCA has not waived immunity for claims of defamation and malicious abuse of process against the Mayor and the Transit Department Director.'"   MTD Memo. at 10 (quoting March 28 MOO at 35).   The Defendants assert that the NMTC has only waived immunity for law enforcements officers from tort claims, which none of the Defendants are.  The Defendants further contend that the same analysis which the Court applied in the March 28 MOO requires the Court to dismiss Counts V and VI.  See MTD Memo. at 10-11 (citing Lovelace v. Cnty. of Lincoln, No. CIV 10-0763 JB/WPL, 2011 WL 2731179, at *15 (D.N.M. June 30, 2011)(Browning, J.)).  The Defendants assert that there is no waiver for sovereign immunity in the NMTCA for claims of either intentional infliction of emotional distress or of civil conspiracy, and the Court, therefore, should dismiss Count V and VI.  See MTD Memo. at 11 (citing Advanced Optics Elec., Inc. v. Robins, 769 F. Supp. 2d 1285, 1305 (D.N.M. 2011)(Browning, J.)).

The Defendants also contend that the Court should dismiss Count VI, because Salazar has failed to allege sufficient facts to state a claim of civil conspiracy against any alleged coconspirator.  See MTD Memo. at 11 (citing Montgomery v. City of Ardmore, 365 F.3d 926, 939-40 (10th Cir. 2004)).  The Defendants assert that Salazar has not alleged that any Defendant committed any wrongful act, because "[n]ot only was plaintiff reinstated to his position as a bus driver, but there is nothing improper about terminating him from his employment when he fails to appear for that employment."  MTD Memo. at 12.

The Defendants contend that Salazar's employment contract was not breached, and, therefore, the Court should dismiss Count IV.  The Defendants note that, in the March 28 MOO, the Court addressed Salazar's allegations that the City of Albuquerque should not have appealed the Personnel Board's order, and that Berry and Chavez should not have been involved in Salazar's personnel matter, and the Court ruled that Salazar failed to state claim for breach of an employment contract under those facts.  The Defendants assert that Salazar has brought the identical allegations in the First Amended Complaint, and, therefore, the Court should again dismiss Salazar's claim for breach of an employment contract.  See MTD Memo. at 13.

The Defendants also contend that the Court should dismiss the newly added Defendants, because Salazar has failed to establish that they committed any wrongful act.  Regarding Perry, the Defendants assert that Salazar identifies Perry in the First Amended Complaint only in connection with Perry's statements to the Albuquerque Journal and as a co-conspirator.  See MTD Memo. at 14.  The Defendants assert that Perry did not identify Salazar as a sex offender or a child molester, and that Perry expressly stated to the Albuquerque Journal that Salazar had not been adjudicated guilty of any crime.  See MTD Memo. at 14 (citing First Amended Complaint ¶ 33, at 8-9).  The Defendants assert that Salazar has not alleged that Perry was involved in the decision to terminate Salazar, and emphasize that Perry made statements regarding Salazar in the course of reinstating Salazar to a position with the City of Albuquerque. The Defendants contend, therefore, that Salazar has failed to establish that Perry did anything to infringe on Salazar's liberty interests in continued employment with the City of Albuquerque. See MTD Memo. at 15.

-18-

Regarding Yermal, The Defendants note that Salazar mentions Yermal in the First Amended Complaint only to identify him as the City of Albuquerque Director of Human Resources.  See MTD Memo. at 15 (citing First Amended Complaint ¶ 5, at 2).  The Defendants note that Salazar does not allege that Yermal participated in a civil conspiracy against him.  See MTD Memo. at 15 (citing First Amended Complaint ¶ 97, at 22).  The Defendants assert, therefore, that Salazar has failed to state a claim for relief against Yermal.

Regarding Rizzieri, whom Salazar alleges approved his termination in March, 2012, and participated in the alleged civil conspiracy, the Defendants contend that Salazar had a full opportunity to appeal his termination.   See MTD Memo. at 15-16 (citing First Amended Complaint ¶¶ 60, 97, at 15, 22).  The Defendants contend that, because Salazar did not appeal his termination or file a statement of appellate issues in his appeal from the Personnel Board's January, 2012 order, "there are not actionable allegations against Mr. Rizzieri and he, too, should be dismissed."  MTD Memo. at 16.

Salazar responded on July 31, 2012.  See Plaintiff's Response to Defendants' Motion to Dismiss, filed July 31, 2012 (Doc. 55)("Response").  Salazar first asserts that the Defendants improperly filed their MTD Memo. after answering the First Amended Complaint and stating affirmative defenses.  See Response at 2.  Salazar contends that he is not alleging that the City of Albuquerque's appeal from the Personnel Board's order was a violation of his right to procedural due process, as the Defendants contend.  Salazar, rather, quotes paragraph 53 of his First Amended Complaint for Violation of Statutory, Contractual, and Constitutional Rights, filed September 23, 2010 (Doc. 7), and contends that the paragraphs sets forth his procedural due process claim: "'The Defendants' disregard and derogation of the City's merit system, including

its Personnel Hearing Officer and its Personnel Board and its members, and its appeals to the district court, denied Plaintiff's due process right to a meaningful hearing and the benefit of prevailing on the disciplinary charges against him.'"  Response at 4 (quoting Doc. 7 ¶ 53, at 12). Salazar filed this amended complaint, without leave of the Court or the Defendants' consent, more than twenty-one days after the 1st MTD was filed.  The paragraph that Salazar quotes in his Response is not included in the First Amended Complaint.  Salazar contends that his claims "should not be decided against him on the merits prior to the start of discovery, or dismissed outright before there is any opportunity to discovery the facts or address the issues."  Response at 4.

Salazar also contends that he may bring a claim of defamation against Chavez and Payne in their individual capacity, notwithstanding that they are immune from suit in their official capacity.  See Response at 4-5 (citing March 28 MOO at 34).  Salazar asserts that his defamation claim may go forward because Chavez and Payne were not acting in the scope of their official duties when they made allegedly defaming statements about him.  Salazar contends that he is not arguing that "'the alleged statements were outside the scope of the Defendants' duties because they were tortious.'"  Response at 5 (quoting March 28 MOO at 38).  Salazar asserts that his defamation argument is that the statements were outside of Chavez and Berry's scope of duty, "because defaming public employees on talk radio is not something that the Mayor is 'requested, required or authorized to perform' by the City of Albuquerque."  Response at 5 (quoting N.M.S.A. 1978, § 41-4-3(G)).  Salazar contends that Chavez and Berry may have defamed him in other contexts besides those alleged in the First Amended Complaint.  Salazar asserts, therefore, that the Court should not dismiss his defamation claim until he has had the benefit of

discovery to establish facts necessary to prove his claim.  See Response at 6.  Salazar also asserts

that "the Mayor" violated his role mandated in the Charter of the City of Albuquerque when he

"went on the attack against Paul Salazar and the City's Personnel Board and Hearing Officers."

Response at 6-7.

Salazar also contends that his claims for breach of an employment contract "are not

precluded," because the City of Albuquerque violated the Merit System Ordinance, Article X of

the           Charter         of         the         City         of         Albuquerque,         available          at

http://www.amlegal.com/nxt/gateway.dll/New%20Mexico/albuqwin/cityofalbuquerquenewmexi

cocodeofordinanc?f=templates$fn=default.htm$3.0$vid=amlegal:albuquerque_nm_mc,   in   his

termination.    Response at 8-9.    Salazar contends that the Merit System Ordinance was

incorporated into his contract of employment.  See Response at 8-9 (quoting N.M.S.A. 1978, §

3-13-4).

Salazar contends that all of his claims in the First Amended Complaint "survive

dismissal" and that the City of Albuquerque has initiated an "appellate-style inquiry into the

issues surrounding each claim prior to the start of discovery."  Response at 9.   Salazar served

summons to Perry, Rizzieri, and Yermal on August 2, 2012.

The Defendants filed the Defendants City of Albuquerque, Richard Berry and Greg

Payne's Memorandum in Support of Motion to Dismiss Portions of First Amended Complaint,

on August 6, 2012.   See Doc. 56 ("Reply").   In response to Salazar's argument that the

Defendants improperly filed an answer before the MTD Memo., the Defendants offer to

withdraw their Answer and Affirmative Defenses to First Amended Complaint for Violation of

Statutory, Contractual and Constitutional Rights, filed June 29, 2012 (Doc 48), filed July 9, 2012

(Doc. 51)("Answer"), but note that Salazar opposes withdrawal of the Answer.  Reply at 2 n.1.
The Defendants assert, however, that withdrawing their Answer will be a waste of time, because
they must inevitably answer the First Amended Complaint.  See Reply at 2.

The Defendants contend that Salazar's appeal from the Personnel Board's order provided
him constitutional due process.  The Defendants contend that Salazar had available to him an
"adequate state remedy to prosecute whatever claims he had about the alleged inadequacy of the
administrative process."  Reply at 4.  The Defendants contend that the Court should dismiss
Count I, because Salazar had procedures, which they assert he did not use, sufficient to satisfy
due-process requirements.  See Reply at 5.

The Defendants also assert that Salazar has ignored the Court's holding in the March 28
MOO that no waiver of sovereign immunity existed in the NMTCA for Salazar's tort claims.
The Defendants note that, except for Chavez and Payne, all of the individual defendants are
current, official employees of the City of Albuquerque.  The Defendants contend that Salazar has
not alleged that any individual, except for Chavez and Payne, took actions outside the scope of
their employment duties.  The Defendants also contend that whether they were acting within the
course of their duties is not a question of fact, because the Court has already held that Chavez,
Berry, and Payne were acting within the scope of their duties as then-employees of the City of
Albuquerque during the actions set forth in the First Amended Complaint.  See Reply at 7 (citing
March 28 MOO at 40).  The Defendants contend that, except for Payne's and Chavez' actions
after leaving their positions with the City of Albuquerque, the Court should dismiss all tort
claims against all Defendants.  The Defendants contend that Salazar's assertion that he should be
allowed to discover evidence that other Defendants defamed him is unavailing, because he has

not alleged in the First Amended Complaint that any current City of Albuquerque employee, except for Perry, made defaming statements regarding Salazar.  The Defendants also assert that Perry's statements do not constitute defamation per se, even if the NMTC waived his immunity. See Reply at 8.

The Defendants contend that Salazar's allegations that "the Mayor" took the law "'into his own hands'" fail to state a claim for relief.  Reply at 8 (quoting Response at 7).  The Defendants contend that, because Salazar had a right to appeal the Personnel Board's decisions, which he failed to exercise by failing to prosecute his case in state district court, neither the Mayor nor the Personnel Board's actions violated Salazar's rights.  Reply at 8.

The Defendants also assert that the Court previously decided that the Charter of the City of Albuquerque does not "'restrict the mayor from commenting on any matter involving an employment decision.'"  Reply at 9 (quoting March 28 MOO at 45).  The Defendants assert that the same analysis should hold true for Perry.  See Reply at 9.

The Defendants contend that, in light of the Court's dismissal of his claims in the March 28 MOO, Salazar has not alleged new factual allegations in the First Amended Complaint which would allow the breach-of-contract claims to proceed.  The Defendants assert that the City of Albuquerque does not deny that it had an employment contract with Salazar and asserts that it reinstated Salazar to his position as a bus driver.  See Reply at 10 (citing First Amended Complaint ¶ 47, at 12).  The Defendants contend, therefore, that the City of Albuquerque has not breached any contract with Salazar, just as the Court determined in the March 28 MOO.  See Reply at 10.  The Defendants assert that Salazar has not responded to their arguments for

dismissal of the newly added parties, and that the Court should, therefore, dismiss Perry, Yermal and Rizzieri. <u>See</u> Reply at 10-11.

The Court held a hearing on September 20, 2012. <u>See</u> Transcript of Hearing at 1:12 (September 20, 2012)("Tr."). The Defendants stated that they intend to "respectfully . . . rest on our briefs." Tr. at 3:21-22 (French).

The Court inquired how the First Amended Complaint differed from the Complaint, and Salazar responded that the First Amended Complaint is "significantly different," because, after the March 28 MOO, the City of Albuquerque withdrew its disciplinary allegations against Salazar for his failure to report as a garbage truck driver. Tr. at 4:1-6:3 (Court, Livingston). Salazar stated that the hearing officer, who determined that the City of Albuquerque had no basis to terminate Salazar from his position as a garbage truck driver, was himself terminated, on allegations of bias in the hearing process. <u>See</u> Tr. at 7:3-21 (Livingston, Court). Salazar asserted that the City of Albuquerque currently employs at-will hearing officers and that the at-will nature of their employment renders the personnel hearings unfair. <u>See</u> Tr. at 8:2-12 (Livingston).

Salazar asserted that the "crux" of his due-process allegation is that the current Personnel Board was "hand selected" and "fired Paul Salazar at the same time it was supposed to be returning him to work," and that the Personnel Board terminated Salazar "by adopting the City's findings of fact to overcome the hearing officer's recommendations." Tr. at 8:17-9:6 (Livingston). The Court stated that its March 28 MOO noted that Salazar had a procedure in place but did not take advantage of it, and that Salazar could not come to federal court with claims of due-process violations without using the procedures available to him. <u>See</u> Tr. at 9:9-

11; id. at 9:14-18 (Court).  Salazar contended that the "whole process, the way it worked is a violation of procedural due process."  Tr. at 10:11-13 (Livingston).

The Court inquired what the procedural posture of Salazar's administrative appeals is at the current time, and Salazar responded that he is not in any administrative appeals.  See Tr. at 10:21-11:8 (Court, Livingston).  Salazar stated that the process with the Personnel Board is "defective on its face."  Tr. at 11:3-4 (Livingston).  Salazar contended that there is "something wrong with this process, which is controlled by the City, when it is coming off as on the books and it looks fair and it looks like it provides due process."  Tr. at 11:13-16 (Livingston).  Salazar stated that he could have gone to state court to appeal the Personnel Board's order, but that he had the "ability to be in this Court."  Tr. at 11:19-12:5 (Court, Livingston).  The Court inquired why the existence of a pending federal case would "excuse you . . . from taking advantage of the due process that the State affords you?"  Tr. at 12:17-20 (Court).  Salazar maintained "that was not due process."  Tr. at 12:21 (Livingston).  The Court stated that it held in the March 28 MOO that Salazar could not bring claims of a violation of due process in federal court without exhausting the due process the State of New Mexico provides.  See Tr. at 13:15-20 (Court).

Salazar asserted that he is not challenging the City of Albuquerque's right to appeal the Personnel Board's order.  See Tr. at 15:16-21 (Livingston).  Salazar asserted that he is challenging "a mayor who made an announcement that 'I will not let this man go back to work no matter what, because he's a bus driver,'" and the Mayor's subsequent appeals.  Tr. at 15:21-25 (Livingston).  The Court inquired whether Salazar had taken further action in state court from the time of the March 28 MOO, and Salazar conceded that he has not.  See Tr. at 16:5-8 (Court, Livingston).  Salazar asserted that he did not want to appeal a decision to state court, because the

record before the Personnel Board indicated that he refused to return to work.  See Tr. at 17:15-17:2 (Livingston).

The Court asked Salazar to state "succinctly as best you can this procedural . . . due-process claim" regarding what exactly "violates the U.S. Constitution."  Tr. at 17:23-18:5 (Court).  Salazar stated that it is an "expansion of the old due-process claim."  Tr. at 18:6-7 (Livingston).  Salazar stated that the City of Albuquerque has used the Personnel Board process to keep him from returning to work.  See Tr. at 18:7-12 (Livingston).  Salazar stated that the City of Albuquerque "[a]t the last minute . . . suddenly forg[o]t all of the allegations of liability, all of the claims of sex offense, all of the claims that the public will revolt if they have a bus driver doing all of that," and told him to report to work as a bus driver without ensuring his safety.  Tr. at 18:13-22 (Livingston).

Salazar contended that he is being subject to an inappropriate level of scrutiny without the benefit of discovery.  See Tr. at 19:7-13 (Livingston).  Salazar stated that he needs discovery to "make the record we need to make."  Tr. at 19:19-21 (Livingston).  The Court responded that nothing was stopping Salazar from conducting discovery, that the Court had allowed discovery with a deadline of August 31, 2012, and that the parties had submitted a joint status report and agreed to other discovery deadlines.  See Tr. at 20:8-12; id. at 20:22-25 (Court).  The Court inquired why Salazar had submitted the Joint Status Report and Provisions Discovery Plan, filed April 25, 2012 (Doc. 36), "if nobody was going to do anything with them?"  Tr. at 21:17-20 (Court).  Salazar conceded that he "can't explain that."  Tr. at 21:21-22 (Livingston).  The Court responded that Salazar cannot "come to my court and complain about discovery not being done,"

to which Salazar inquired: "Well, where are we, then, with this case?"  Tr. at 21:25-22:3 (Court, Livingston).

Salazar stated that he does not believe that this case is an appropriate one for a judgment on the pleadings, which is "what I was getting at, without actually understanding that I was in trouble because we've let a deadline go."  Tr. at 22:15-25 (Livingston).  Salazar stated that the attorneys in this case have not "acted as if this case was proceeding as it should be litigated.  We have all been waiting, as we did in the past, for the Court to rule on motions to dismiss, because that is a preliminary matter."  Tr. at 23:5-11 (Livingston).

The Court stated that it is "surprised everybody's waiting on me."  Tr. at 23:19-20 (Court).  Salazar stated that it "frankly, never occurred" to him that he had the ability to "do the discovery that we need to do in this case."  Tr. at 24:6-9 (Livingston).  Salazar stated that he will need to "move [] the Court to . . . extend those deadlines" so that he can conduct discovery in this case.  Tr. at 24:11-13 (Livingston).  Salazar stated that three of the seven Defendants have not filed answers, and, therefore, it did not occur to him that he "should really do the complete round of discovery before any of that happened."  Tr. at 25:1-8 (Livingston).

Returning to the procedural due-process claim, and Salazar stated that his claim is

[t]he use of the personnel board by the City, the control of the personnel board by the City to get the wanted results or to delay the case indefinitely and, form my personal point of view, to cause an attorney, who's not getting paid by anyone, who's working on a contingency, to spend endless house litigating nonsense, such as did the City return him to work and then fire him for just cause when he didn't report to work even though the case was still pending before this Court and the personnel hearing officer?

Tr. at 25:16-24 (Court, Livingston).  Salazar contended that the City of Albuquerque has terminated him three times, without him ever "really being rehired."  Tr. at 26:1-5 (Livingston).

Salazar suggested that the Court should combine his procedural due process and substantive due process, because "we're really talking about due process."  Tr. at 27:7-9 (Livingston).  The Court declined to combine Salazar's procedural and substantive due-process claims into one cause of action.  See Tr. at 27:14 (Court).  Salazar urged the Court to consider "what due process means and how it -- how it had an effect in this case," and asserted that his case is not moot.  Tr. at 27:17-25 (Livingston).

The Defendants responded that all of Salazar's procedural arguments do not get around the fact that Salazar had adequate procedure available to him in state court which he chose to not use.  See Tr. at 29:19-25 (French).  The Court noted that the First Amended Complaint is "not so much an Amended Complaint, but a supplemental Complaint," because Salazar added ongoing facts.  Tr. at 30:16-19 (Court).  The Court stated that it must consider what additional facts it can use in ruling on the MTD Memo., but stated that it still does not see a claim for procedural due process.  See Tr. at 31:22-32:5 (Court).  The Court stated that, because Salazar had the ability to appeal the Personnel Board's orders to the state court system, the Court was inclined to find that Salazar has failed to state a claim for a violation of his right to due process.  See Tr. at 32:6-18 (Court).

Turning to Salazar's tort claims of defamation, civil conspiracy, and intentional infliction of emotional distress, the Defendants contended that they are immune from liability for these allegations under the NMTCA.  See Tr. at 32:23-34:15 (French).  The Court inquired whether the Defendants have a response to Salazar's arguments that Chavez is not immune from suits for defamation, because defamation is outside the scope of his duties, and the Defendants stated that the Court previously decided that it was untenable for the Charter of the City of Albuquerque to

restrict Chavez from commenting on public employment.   <u>See</u> Tr. at 34:20-35:14 (Court, French).

Salazar asserted that the NMTCA need not waive the Defendants' immunity for them to be liable for actions outside the scope of their duties.   <u>See</u> Tr. at 36:11-20 (Court, Livingston). The Court inquired how Salazar's allegations regarding torts committed within the scope of an employee's duties are different from those raised in <u>Gerald v. Locksley</u>, 785 F. Supp. 2d 1074 (D.N.M. 2011)(Browning, J.), and Salazar responded that one could easily imagine that, "when Mayor Chavez takes off mayor clothes and sits down with his buddies, and he can't just do anything, because it's not waived under the Tort Claims Act."   Tr. at 37:5-38:2 (Court, Livingston).   The Court responded that the reason Chavez commented publicly on employment is because he was the City of Albuquerque's Mayor.   <u>See</u> Tr. at 38:3-8 (Court).   Salazar asserted that the facts will reveal that Chavez "invited himself to be on the talk radio program."   Tr. at 38:9-11 (Livingston).

The Court inquired whether Salazar had alleged new facts in the First Amended Complaint, and Salazar responded that the issues are the same, "except we've made the point that . . . we believe this was outside the scope of the employment."   Tr. at 39:5-10 (Court, Livingston).   Salazar asserted that the relationship of the Merit Ordinance and Salazar's contract raises new issues regarding his breach-of-contract claim.   <u>See</u> Tr. at 39:11-16 (Livingston). Salazar asserted that the Court's ruling on immunity under the NMTCA is in effect "unlimited," because "anything you do once you're a City employee or once you're a City official -- anything you do that has anything to do with . . . a person who you knew at work or anything else, you can do it because it's not waived under the Tort Claims Act."   Tr. at 40:15-21 (Livingston).   Salazar

-29-

asserted that he should be allowed to develop the facts relevant to his claim, because he has established a plausible claim for relief.  See Tr. at 40:22-41:5 (Livingston).  Salazar asserted that his case is "way beyond" the motion to dismiss stage, "two years beyond that," and that he finds the "whole procedure very difficult and very expensive and time-consuming."  Tr. at 41:16-21 (Livingston).

The Defendants stated that, after the Personnel Board's December 16, 2011, hearing, the City of Albuquerque paid Salazar back pay through April 23, 2011, in an amount over $100,000.00.  See Tr. at 42:1-6 (French).  Salazar disputed that statement as "not true."  Tr. at 42:7 (Livingston).

The Court stated that it is "not hearing any difference here between what I decided earlier."  Tr. at 43:3-4 (Court).  The Court stated that the First Amended Complaint appears to be a motion to reconsider, and that the Court's inclination is to dismiss Counts V and VI again.  See Tr. at 43:5-10 (Court).

The Court inquired whether Salazar's breach-of-contract claim differed from the claim he asserted in the Complaint, which the Court dismissed.  See Tr. at 43:19-22 (Court).  Salazar asserted that he has "two more years' worth of facts that show breach of contract."  Tr. at 43:23-25 (Livingston).  Salazar asserted that he has not received "a penny" in back pay.  Tr. at 44:1-6 (Livingston).  Salazar asserted that the Court has been "turning City argument into facts, and in part doing it in footnotes."  Tr. at 44:14-16 (Livingston).  Salazar asserted that he has a "problem with this kind of procedure, where the Court analyzes the facts, the Complaint, and the claims, and then makes rulings preliminary to the case getting started," and insinuated that his attorney, Paul Livingston, is appealing a case with similar footnotes to the United States Court of Appeals

-30-

for the Tenth Circuit.  Tr. at 44:21-45:3 (Livingston)("[I]n fact, Your Honor, I'm going up to Denver on November 6th, I believe, on another case which has a lot of footnotes, and which decided a City-employee case on the basis of not what the employees believed or testified, but on what the summary disposition was.").

The Court inquired what facts had changed from its March 28 MOO regarding Salazar's breach-of-contract claim.  See Tr. at 45:10-13 (Court).  Salazar conceded that he does not "think anything's changed," but rather, he has "more facts."  Tr. at 45:14-15 (Livingston).  Salazar stated that it is "frustrating [] to have a merit system that doesn't work on the basis of merit, but, rather, works on the basis of coercion and what the City claims in an unfair process."  Tr. at 45:19-23 (Livingston).  The Court stated that it appears as though its legal rationale for dismissing Count IV has not changed and that it is inclined to keep Count IV out of the case. See Tr. at 46:7-10 (Court).

The Court inquired whether Salazar objects to the Court ruling on the MTD Memo.'s request to dismiss the newly added Defendants, even though they had not been served.  See Tr. at 46;17-23 (Court).  Salazar stated that he does not oppose the Court applying its analysis to the not-yet-served Defendants.  See Tr. at 47:13-18 (Court, Livingston).

Salazar urged the Court to consider the City of Albuquerque's practice of reinstating him and then wrongfully terminating him, because this case was pending in federal court.  See Tr. at 48:1-20 (Livingston).  Salazar stated that this case has been a "nightmare of litigation, and you never get anywhere."  Tr. at 50:14-15 (Livingston).  Mr. Livingston stated that he has "spent hundreds of hours in the personnel process going to hearing and litigating things, and the end result is the City fired the hearing officer."  Tr. at 50:18-21 (Livingston).

The Defendants stated that they oppose reopening discovery.  See Tr. at 51:17-18 (French).  The Court stated that it cannot think of a good reason to reopen discovery.  See Tr. at 54:4-5 (Court).  Salazar responded that "maybe because there's been no discovery in the case and the case needs to proceed."  Tr. at 54:6-7 (Livingston).  The Court requested Salazar to review the Joint Status Report and Provisional Discovery, and the Scheduling Order, filed May 10, 2012 (Doc. 41).  See Tr. at 54:8-18 (Court).  Salazar stated that reviewing those documents was "not really necessary," and that "it simply wouldn't be fair to cut off discovery now and allow the City to submit dispositive motions when we're still dealing with a dismissal motion."  Tr. at 54:19-55:3 (Livingston).  The Court stated that it does not understand how Salazar can dispute the deadline for discovery on August 31, 2012, given that he agreed to it, and the Court stated that there is nothing unusual about amending a complaint in the course of discovery.  See Tr. at 55:13-22 (Court).

Salazar asserted that the "procedure is all fouled up at this point."  Tr. at 56:15-16 (Livingston).  Salazar asserted that he "should win, Your honor, but, instead," he is "being told that we don't have any facts, we can lose, because we didn't do discovery."  Tr. at 56:20-22 (Livingston).  Mr. Livingston stated that he must "take the blame for agreeing to something in the order which then changed," but contended that the Defendants' counsel has changed, and that "there's no doubt that this is at the beginning of the case, not at the conclusion of the case."  Tr. at 56:25-57:6 (Livingston).  Salazar stated that he was "a little surprised" by the August 31 discovery deadline.  Tr. at 57:9-12 (Livingston).  Salazar inquired what he should do regarding the First Amended Complaint.  See Tr. at 57:25-58:1 (Livingston).  The Court agreed to extend

the deadline for dispositive motions to October 31, 2012.  See Tr. at 60:4-10 (Court).  Salazar

stated that he objects "to this entire procedure."  Tr. at 60:11-12 (Livingston).

## LAW REGARDING DISMISSAL UNDER RULE 12(c)

"After the pleadings are closed -- but early enough not to delay trial -- a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A rule 12(c) motion is designed to

provide a means of disposing of cases when the material facts are not in dispute between the

parties.  See Kruzitis v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)("Under Rule

12(c), we will not grant judgment on the pleadings unless the movant clearly establishes that no

material issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law.")(internal quotation marks omitted).  A "[j]udgment on the pleadings should not be granted

'unless the moving party has clearly established that no material issue of fact remains to be

resolved and the party is entitled to judgment as a matter of law.'"  Park Univ. Enters., Inc. v.

Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006)(citing United States v. Any

& All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).  Claims dismissed

pursuant to a motion under rule 12(c) are dismissed with prejudice.  See In re Great Lakes

Dredge & Dock Co. LLC, 624 F.3d 201, 209 (5th Cir. 2010).

"Any party may move for judgment on the pleadings if no material facts are in dispute

and the dispute can be resolved on both the pleadings and any facts of which the Court can take

judicial notice."  Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. 303, 304 (D.N.M. 2000)(citing

Fed. R. Civ. P. 12(c)).  A motion pursuant to rule 12(c) is generally treated in the same manner

as a motion to dismiss under rule 12(b)(6).  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at

304 (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998)).  A motion

for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.

A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d at 1244. The court must view the facts presented in the pleadings and draw the inferences therefrom in the light most favorable to the nonmoving party. See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304. All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false. See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945); Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000); Freeman v. Dep't of Corr., 949 F.2d 360, 361 (10th Cir. 1991).

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion for judgment on the pleadings under rule 12(c). See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000). Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie,

438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d

1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed

factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to

relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. "Factual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly,

550 U.S. at 555 (citation omitted). "[T]he Supreme Court [of the United States] recently . . .

prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains

'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C.

v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550

U.S. at 558, 562). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across

the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red

Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at

570)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could

prove some set of facts in support of the pleaded claims is insufficient; the complaint must give

the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual

support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.   The

Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible." The allegations must be enough that, if

assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 127 S Ct. at 1974)(internal citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."   [Bell Atl. Corp. v. Twombly, 127 S. Ct.] at 1965 n. 3.  See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007)("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").  The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."  Id.

Robbins v. Oklahoma, 519 F.3d at 1248.

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be taken as true. See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002). "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991). "Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."  Hall v. Belman, 935 F.2d at 1110.   Only well-pleaded facts, as distinguished from conclusory allegations, are admitted when considering a motion to dismiss for failure to state a claim upon which relief can be granted.  See Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d).  Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.  See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279, n.1 (10th Cir. 2004)(citing 27A Fed. Proc., L. Ed. § 62:520 (2003)).  Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002).  If, however, a document is not incorporated by reference or attached to the complaint, but the complaint refers to the document and the document is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  See 5A Charles Alan Wright & Arthur Miller, Fed. Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

## RELEVANT LAW REGARDING TAKING JUDICIAL NOTICE OF DOCUMENTS
## WHEN RULING ON A MOTION TO DISMISS

Rule 201 of the Federal Rules of Evidence allows a court to, at any stage of the proceeding, take notice of "adjudicative" facts that fall into one of two categories: (i) facts that are "generally known within the territorial jurisdiction of the trial court"; and (ii) facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (f). "Adjudicative facts are simply the facts of the particular case." United States v. Wolny, 133 F.3d 758, 764 (10th Cir. 1998)(quoting Advisory Committee Notes to rule 201). A court has discretion to take judicial notice of such facts, regardless whether requested. See Fed. R. Evid. 201(c). On the other hand, if a party requests that the court take judicial notice of certain facts and supplies the necessary information to the court, judicial notice is mandatory. See Fed. R. Evid. 201(d). Also, if the parties timely request an opportunity to be heard, the Court must grant such an opportunity "as to the propriety of taking judicial notice and the tenor of the matter noticed." Fed. R. Evid. 201(e).

Judicial notice may be taken during any stage of the judicial proceeding, including on a motion to dismiss. See 21B Charles Alan Wright & Kenneth W. Graham, Fed. Practice & Procedure § 5110, at 294 & n.17 (2d ed. 2005). While, ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, see Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect, see Duprey v. Twelfth Judicial Dist. Court, No. 08-0756, 2009 WL 2482171, at *7 (D.N.M. July 27, 2009)(Browning, J.)(citing Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)). Also, when considering a motion to dismiss, "[t]he court may take judicial notice of its own files and records, matters of public record, as well as the passage of time."

-38-

Logan v. United States, 272 F. Supp. 2d 1182, 1184 n.1 (10th Cir. 2003).   The documents

judicially noticed, however, should not be considered for the truth of the matters asserted therein:

> Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss.   Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence.   However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.   This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record.   However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.

Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006)(alterations omitted)(citations

omitted)(internal quotation marks omitted).

    Applying these principles, in Genesee Cnty. Emps. Ret. Sys. v. Thornburg Mortg. Sec.

Trust, in the context of a securities class action, the Court took judicial notice of news

publications regarding the mortgage-back-security crisis, the background for plaintiffs'

allegations.   See 825 F. Supp. 2d at 1166.   Additionally, In re Thornburg Mortg., Inc. Sec. Litig.,

another securities class action, the Court took judicial notice of documents that disclosed the

securities held by a person in a particular entity, and/or any changes in those holdings.   See 2009

WL 5851089, at **3-4.   The Court took notice of the existence of the documents and the

statements contained therein, but did not assume the truth of the documents' contents.   The Court

found that rule 201(d) compelled it to take judicial notice of the documents, because the

documents, which were on file with the United States Securities and Exchange Commission,

were "'capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned,'" and the defendants intended to use the documents to prove that they

did not engage in insider trading, contrary to the plaintiffs' allegations.  2009 WL 5851089, at *3 (quoting Fed. R. Evid. 201(b)).

## LAW REGARDING PROCEDURAL DUE PROCESS

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons.  See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property."  Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.).  The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's procedural due-process rights were violated: (i) "'Did the individual possess a protected property interest to which due process protection was applicable?'"; and (ii) "'Was the individual afforded an appropriate level of process?'"  Camuglia v. The City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir. 2006)(quoting Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)).

"The Constitution does not create or define the contours of 'liberty' or 'property,' the 'broad and majestic terms' enshrined in the Fourteenth Amendment."  Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994)(quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation

of it.  He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577.  "Such an interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract.'"  Teigen v. Renfrow, 511 F.3d 1072, 1079 (10th Cir. 2007).  See Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577 ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); Farthing v. City of Shawnee, Kan., 39 F.3d at 1135 ("Rather, property interests, which are the subject of the present litigation, 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577)); Paul v. Davis, 424 U.S. 693, 710 (1976)("[Liberty and property] interests attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law.").

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)(citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).  "[D]ue process is flexible and calls [only] for such procedural protections as the particular situation demands."

Mathews v. Eldridge, 424 U.S. at 334 (internal quotation marks and brackets omitted).   The

Supreme Court has described

> "the root requirement" of the Due Process Clause as being "that an individual be
> given an opportunity for a hearing before he is deprived of any significant
> property interest."   This principle requires "some kind of a hearing" prior to the
> discharge of an employee who has a constitutionally protected property interest in
> his employment.
>
> . . . .
>
> [T]he pretermination "hearing," though necessary, need not be elaborate.   We
> have pointed out that "[t]he formality and procedural requisites for the hearing
> can vary, depending upon the importance of the interests involved and the nature
> of the subsequent proceedings."     In general, "something less" than a full
> evidentiary hearing is sufficient prior to adverse administrative action.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542, 545 (footnote omitted)(citations

omitted).   The United States Court of Appeals for the Second Circuit has stated:

> The Supreme Court . . . explained that procedural due process is a flexible
> standard that can vary in different circumstances depending on "'the private
> interest that will be affected by the official action'" as compared to "the
> Government's asserted interest, 'including the function involved' and the burdens
> the Government would face in providing greater process."   Hamdi v. Rumsfeld,
> 542 U.S. 507, ----, 124 S. Ct. 2633, 2646 . . . (2004)(quoting Mathews v.
> Eldridge, 424 U.S. at 335 . . . ).   A court must carefully balance these competing
> concerns, analyzing "'the risk of an erroneous deprivation' of the private interest
> if the process were reduced and the 'probable value, if any, of additional or
> substitute safeguards.'"   Id. (quoting Mathews v. Eldridge, 424 U.S. at 335 . . .).

United States v. Abuhamra, 389 F.3d 309, 318 (2d Cir. 2004).   The hearing required depends on:

(i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the

procedures already guaranteed, and whether additional procedural safeguards would prove

valuable; and (iii) the government's interest and the burdens that additional procedures might

impose.   See Mathews v. Eldridge, 424 U.S. at 335. For example, "[w]here . . . the state must act

quickly, a meaningful postdeprivation hearing is adequate."   Clark v. City of Draper, 168 F.3d

at 1189.  See also Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989)(removal of a child from parents' custody requires predeprivation hearing "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  (internal quotation marks omitted)).

## LAW REGARDING THE NEW MEXICO TORT CLAIMS ACT

The New Mexico Legislature enacted the NMTCA, because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity."  N.M.S.A. 1978, § 41-4-2A.  The New Mexico Legislature, however, also recognized

> that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

N.M.S.A. 1978, § 41-4-2A. As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." N.M.S.A. 1978, § 41-4-2A. The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." N.M.S.A. 1978, § 41-4-2C.

The NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M.S.A. 1978, § 41-4-17A.  A plaintiff may not sue a governmental entity of New Mexico, or

its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions to

immunity granted in the NMTCA.  See Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255

(Ct. App. 1985)("Consent to be sued may not be implied, but must come within one of the

exceptions to immunity under the Tort Claims Act."), rev'd on other grounds by Smialek v.

Begay, 104 N.M. 375, 721 P.2d 1306 (1986).  A plaintiff also may not sue a governmental

entity or its employees for a damage or damages claim arising out of violations of rights under

the New Mexico Constitution unless the NMTCA contains a waiver of immunity.  See Barreras

v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 133 N.M. 313, 62 P.3d 770 ("In the absence of

affirmative legislation, the courts of this state have consistently declined to permit individuals

to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based

on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City

of Albuquerque, 1998-NMCA-004, ¶ 8, 124 N.M. 479, 952 P.2d 474 (noting that a plaintiff

cannot seek damages for violations of rights under the New Mexico Constitution against a city

or its employees or agents unless the NMTCA waives immunity); Rubio v. Carlsbad Mun. Sch.

Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct. App. 1987)(holding that no waiver of

immunity exists for damages arising out of alleged educational malpractice claim against a

school board); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (finding that no waiver exists

in NMTCA for suit under Article II, § 11 of the New Mexico Constitution).  Thus, if no specific

waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or

its employees must be dismissed.  See Begay v. State, 104 N.M. at 486, 723 P.2d at 255.

## RELEVANT NEW MEXICO LAW REGARDING CIVIL CONSPIRACY

"A civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 140 N.M. 41, 139 P.3d 201 (internal quotations and citations omitted), overruled on other grounds by Zarr v. Washington Tru Solutions, LLC, 2009-NMCA-050, ¶ 11, 146 N.M. 274, 208 P.3d 919, 922 .  The purpose of a civil conspiracy claim is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members."  Seeds v. Lucero, 2005-NMCA-067, ¶ 12, 137 N.M. 589, 113 P.3d 859, 862 (internal quotations and citations omitted), cert. denied, 2005-NMCERT-5, 137 N.M. 522, 113 P.3D 345.  In Seeds v. Lucero, the Court of Appeals of New Mexico stated the elements of a civil conspiracy and compared a civil conspiracy to a criminal conspiracy:

> Civil conspiracy consists of showing that a conspiracy between two or more individuals existed; that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and that the plaintiff was damaged as a result of such acts.  Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators.  Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense.

Seeds v. Lucero, 2005-NMCA-067, ¶ 18, 137 N.M. 589, 113 P.3d 859 (internal quotations and citations omitted).  "[A]n agreement by itself, without an independent, unlawful act, is not an improper means."  Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 140 N.M. 41, 139 P.3d at 207.  Applying these principles, in Archuleta v. City of Roswell, the Court found that a plaintiff failed to state a plausible claim of civil conspiracy to commit assault, because he did not allege in his complaint any specific act that the defendants

supposedly carried out with the purpose of placing him in a position of immediate apprehension of harm.  See 898 F. Supp. 2d at 1255.  In Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591 JB/RHS, 2009 WL 1919970 (D.N.M. May 26, 2009)(Browning, J.), the Court determined that plaintiffs had stated a plausible claim for civil conspiracy against an insurance company in connection with automobile dealers regarding misrepresentation of a vehicle's title, based on evidence that the insurance company submitted a misleading repair estimate and misleadingly informed the New Mexico Motor Vehicle Department that the vehicle, which should have received a salvage title, qualified for a clean title.  See 2009 WL 1919970, at **2-3.

### NEW MEXICO LAW REGARDING BREACH-OF-CONTRACT CLAIMS

A contract is a legally enforceable promise that must consist of an offer, an acceptance, consideration, and mutual assent.  See N.M.R.A., Civ. UJI 13-801.  A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused.  See N.M.R.A., Civ. UJI 13-822.  Incomplete performance is a breach of contract.  See Cochrell v. Hiatt, 97 N.M. 256, 258-59, 638 P.2d 1101, 1103-04 (Ct. App. 1981)(holding that, where the contract called for the roof to be restored to a "healthy" state and guaranteed the work for twenty-five years, because the roof leaked within the twenty-five year period, the defendant's performance was incomplete, and the defendant was in breach of the contract).  Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages." Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.)(citing Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995)).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 92 N.M. 192, 194, 585 P.2d 336, 338 (Ct. App. 1978).

Applying these principles in Armijo v. N.M. Dep't of Transp., No. CIV. 08-0336 JB/ACT, 2009 WL 1329192 (D.N.M. Apr. 6, 2009)(Browning, J.), the Court found that a plaintiffs' allegations failed to state a claim for breach of contract.  In support of the breach-of-contract claim, the plaintiff asserted that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause."  2009 WL 1329192, at *7.  The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached," and did not say "to what his employment contract entitles him or of what the Department deprived him." 2009 WL 1329192, at *7.  The Court found that there was "not enough to determine whether, if taken as true, the Complaint's allegations would support claims for breach of contract."  2009 WL 1329192, at *8.  On the other hand, the Court has previously determined that a pro se plaintiff sufficiently alleged that his counsel breached a contract for legal representation by alleging that his former counsel promised to represent the plaintiff at forfeiture proceedings, that the plaintiff paid the counsel, and that the counsel failed to represent the plaintiff.  See Archuleta v. City of Roswell, No. CIV 10-1224 JB/RHS, 2012 WL 4950324, at **16-17 (D.N.M. Sept. 30, 2012)(Browning, J.).

"Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be

recoverable under some circumstances for a breach of contract." Anderson Living Trust v. ConocoPhillips Co., LLC, No. CIV 12-0040 JB/LFG, 2013 WL 3456913, at *42 (June 28, 2013)(Browning, J.). As the Supreme Court of New Mexico stated in Romero v. Mervyn's, 109 N.M. 249, 784 P.2d 991 (1989): "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights." 109 N.M. at 255, 784 P.2d at 998. Punitive damages are not available when a breaching party's conduct was "solely gross negligence. . . . In addition to, or in lieu of, such negligence there must be evidence of an 'evil motive' or a 'culpable mental state.'" Paiz v. State Farm Fire & Cas. Co., 118 N.M. 208, 211, 880 P.2d 300, 308 (1994). The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm." Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 211, 880 P.2d at 308 (secondary quotations and citation omitted). A defendant does not act with reckless disregard to a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable or evil state of mind." Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 211, 880 P.2d at 308 (secondary quotations and citation omitted). The New Mexico Civil Jury Instructions define the elements necessary for an award of punitive damages for a breach of contract as follows:

> If you find that _____ (*name of party making claim for punitive damages*) should recover compensation for damages, and if you further find that the conduct of _____ (*name of party whose conduct gives rise to a claim for punitive damages*) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent], then you may award punitive damages.

N.M.R.A., Civ. UJI 13-861.

### RELEVANT NEW MEXICO LAW REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement."  Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)(citations omitted).  "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."  Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642 (internal quotation marks omitted).  "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party."  Sanders v. FedEx Ground Package Sys., 2008-NMSC-040, ¶ 7, 114 N.M. 449, 188 P.2d 1200 (secondary quotations omitted).  The Supreme Court of New Mexico has expressed reluctance, however, to use the covenant of good faith and fair dealing "under circumstances where . . . it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract."  Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642.

> "Generally, in the absence of an express provision on the subject, a contract contains an implied covenant of good faith and fair dealing between the parties. Under the implied covenant of good faith and fair dealing, courts can award damages against a party to a contract whose actions undercut another party's rights or benefits under the contract.  Our Supreme Court has nevertheless refused to apply this implied covenant to override an express at-will termination provision in an integrated, written contract."

Elliott Indus., 407 F.3d at 1114-15 (quoting Kropinak v. ARA Health Servs., Inc., 2001-NMCA-083, ¶¶ 3-4, 131 N.M. 128, 33 P.3d 679)(secondary citations omitted).

New Mexico has recognized that a cause of action for breach of the covenant of good faith and fair dealing sounds in contract.  See Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). The Supreme Court of New Mexico has also explained that tort recovery for breach of the covenant of good faith and fair dealing is permissible only where a special relationship exists, such as between an insurer and its insured.  See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.  The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857 (citations omitted)(internal quotation marks omitted).  Similarly, the Court of Appeals of New Mexico has held that "[t]he claim for breach of good faith and fair dealing sounds in contract, at least when no 'special relationship' such as that between an insured and insurer exists."  Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127, ¶ 18, 140 N.M. 552, 144 P.3d 111.

The Supreme Court of New Mexico has indicated that "the duty to not act in bad faith or deal unfairly" which an implied covenant of good faith and fear dealing within a contract imposes "becomes part of the contract and the remedy for its breach is on the contract itself." Bourgeous v. Horizon Healthcare Corp., 117 N .M. at 439, 872 P.2d at 857 (discussing an Arizona case and distinguishing this measure of damages from tort damages that are available for breach of this covenant in the insurance context).  In the insurance context, however, a plaintiff can recover tort damages for breach of this implied covenant.  See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.

The Supreme Court of New Mexico has noted that it does "not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship." Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988). This limitation is because "there is no contract of employment upon which the law can impose the stated duty to exercise good faith and fair dealing." Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987)(emphasis in original).

## ANALYSIS

The Court grants the City Defendants' 2nd MTD in part. The Court construes the 2nd MTD as a motion for judgment on the pleadings under rule 12(c), because the Defendants filed the 2nd MTD after answering the First Amended Complaint, and Salazar does not consent to the Defendants withdrawing their Answer. The Court grants the Defendants judgment on the pleadings on Salazar's procedural due-process claim, because Salazar failed to take advantage of the administrative and state court procedures available to him, thereby waiving his right for the Court to review those procedures, and because Salazar voluntarily relinquished his property interest in continued employment by failing to report for work. The Court grants the Defendants judgment on the pleadings on Salazar's common-law tort claims of defamation, intentional infliction of emotional distress, and civil conspiracy, other than his claims of defamation that are based on Payne's post-employment comments, because the NMTCA does not waive the Defendants' immunity for these common-law tort claims, and because Salazar has failed to state a claim for intentional infliction of emotional distress and civil conspiracy against Payne based on his post-employment comments. The Court grants the Defendants, other than the City of Albuquerque, judgment on the pleadings on Salazar's breach-of-employment-contract claim,

because Salazar has failed to establish that any other Defendant plausibly breached a term of his employment contract. The Court will not grant judgment on the pleadings to the City of Albuquerque on Salazar's claims of a breach of his employment contract, and of breach of the duty of good faith and fair dealing, because the facts in the First Amended Complaint establish that the City of Albuquerque plausibly failed to pay Salazar back pay and benefits for over three years, in violation of the Personnel Board's orders.

**I.    THE COURT WILL CONSTRUE THE 2ND MTD AS A MOTION FOR JUDGMENT ON THE PLEADINGS.**

Salazar asserts that the Defendants improperly filed the 2nd MTD after their Answer. See Response at 2. Salazar is correct that, according to the docket, the Defendants appear to have submitted their Answer before the 2nd MTD. The exact time lapse is difficult to ascertain, because the Answer and 2nd MTD were filed on the same day. Indeed, the Defendants have offered to withdraw the Answer, conceding that the 2nd MTD was filed after the Answer. See Reply at 2.

Initially, the Defendants have not waived their claim for relief under rule 12(b)(6) by filing the Answer before the 2nd MTD. The Federal Rules of Civil Procedure expressly allow that a motion to dismiss for failure to state a claim is not waived so long as the moving party raises the claim "in any pleading allowed or ordered under Rule 7(a)," or "by a motion under rule 12(c)." Fed. R. Civ. P. 12(h)(2)(A), (B). The United States Court of Appeals for the Tenth Circuit has also identified that the defense of failure to state a claim upon which relief can be granted is "'expressly preserved against waiver by amended subdivisions (h)(2) and (3)'" of rule 12. Enter. Mgmt. Consultants, Inc., v. United States ex rel. Hodel, 883 F.2d 890, 893 (10th Cir. 1989)(quoting Fed. R. Civ. P. 12(h) advisory committee's note). In the Answer, the Defendants

raise, as an affirmative defense, that "the complaint fails to state a claim upon which relief may be granted." Answer at 14. The Defendants, therefore, appear to have raised their claim under rule 12(b)(6) both in the Answer, see Fed. R. Civ. P. 12(h)(2)(A), and through a motion, after the pleadings had been submitted, see Fed. R. Civ. P. 12(h)(2)(B). See also Fed. R. Civ. P. 7(a) (listing "pleadings" as "a complaint," "an answer to a complaint," "an answer to a counterclaim designed as a counterclaim," "an answer to a crossclaim," "an answer to a third-party complaint, and," "if the court orders one, a reply to an answer"). Accordingly, the Defendants have not waived their defense of failure to state a claim asserted in the Answer and 2nd MTD.

Further, although the Defendants appear to have offered to withdraw their Answer, see Reply at 2 ("If the Court requires, the City will withdraw its answer to the complaint."), they have not requested the Court's permission to withdraw their Answer, and, moreover, assert that doing so would "be a waste of the clerk's, the Court's and the parties' resources." Reply at 2. The Defendants represent that Salazar does not consent to the withdrawal of the Answer. See Reply at 2 n.1. Because the Defendants have not waived their defense of failure to state a claim on which relief can be granted and because the parties do not consent to withdrawing the Answer, the appropriate method for analyzing the 2nd MTD is as "a motion under rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). The Court, therefore, will analyze the 2nd MTD as a motion for judgment on the pleadings.

## II.   THE COURT WILL TAKE JUDICIAL NOTICE OF SALAZAR'S FAILURE TO APPEAL THE PERSONNEL BOARD'S JANUARY, 2012 DECISION AND HIS FAILURE TO APPEAL HIS TERMINATION IN MARCH, 2012.

The Defendants request the Court to take judicial notice of: (i) Judge Malott's State Court Dismissal in Salazar's appeal from the Personnel Board's December 16, 2011 order, see MTD Memo. at 4 n(b); and (ii) that Salazar has not appealed his termination on March 28, 2012, see

MTD Memo. at 5 n(c).  When ruling on a motion to dismiss, the Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Civ. P. 201(f), and "matters of public record," Logan v. United States, 272 F. Supp. 2d at 1184 n.1, without converting the motion into one for summary judgment, compare Fed. R. Civ. P. 12(d) (providing that when a court considers matters outside of the pleadings when ruling on a motion under rule 12(b)(6), "the motion must be treated as one for summary judgment").  Salazar does not dispute that his state-court appeal was dismissed for lack of prosecution, and he concedes that he did not appeal his March 28, 2012 termination.  See Tr. at 10:21-11:8 (Court, Livingston)(Salazar states that he is not in the process of any administrative appeals at the current time, because the appeal process is "defective on its face"); Tr. at 17:15-17:2 (Livingston)(Salazar asserts that he did not want to appeal any decisions to state court because the administrative record indicates that he refused to report to work).  The Court has reviewed that New Mexico State Court online docket for Salazar's appeal, and the docket indicates that a "Dismissal by Lack of Prosecution" was entered on May 2, 2012, the date of the State Court Dismissal that the Defendants provide to the Court. Paul Salazar v. Albuquerque, City of, et. al., Case No. D-202-CV-201200617, Case Lookup, New Mexico Courts (May 2, 2012), available at https://caselookup.nmcourts.gov /caselookup/app.  The Court determines, therefore, that the State Court Dismissal is a matter of public record, of which the Court may take judicial notice when ruling on the 2nd MTD Memo. While the Court does not consider the State Court Dismissal for the truth of the matter asserted therein, the Court may consider the existence of the State Court Dismissal and its contents without converting this motion into one for summary judgment.  See Tal v. Hogan, 453 F.3d at

1265 n.24 (explaining that a court may take judicial notice of "facts which are a matter of public record," and that a court may use those documents "may be considered to show their contents, not the truth of matters asserted therein").  Additionally, the Court determines that, because Salazar concedes that he did not appeal his March 28, 2012 termination, the Court may take judicial notice of that fact.  The Court will consider these two facts, in addition to the well-pleaded allegations in the First Amended Complaint, in ruling on the 2nd MTD.  See Moore v. Guthrie, 438 F.3d at 1039 (holding that a court should consider all well-pleaded factual allegations in a complaint when ruling on a motion to dismiss under rule 12(b)(6)).

### III.    SALAZAR FAILS TO STATE A PROCEDURAL DUE-PROCESS CLAIM.

The Court has already dismissed Salazar's procedural due-process claim.  See March 28 MOO at 20-27.  Salazar failed to assert facts in his First Amended Complaint that would convince the Court to reexamine his procedural due-process claim.

The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's procedural due-process rights were violated: (i) "Did the individual possess a protected property interest to which due process protection was applicable?"; and (ii) "Was the individual afforded an appropriate level of process?"  Camuglia v. The City of Albuquerque, 448 F.3d at 1219 (quoting Clark v. City of Draper, 168 F.3d at 1189).  The parties do not dispute the Court's previous finding that Salazar satisfies the first prong and possesses a protected interest in his continued employment as a bus driver for the City of Albuquerque.  See March 28 MOO at 27.

The Court previously determined that Salazar failed to establish the second prong of procedural due process, i.e., that he was deprived an appropriate level of process:

> Salazar fails on the second prong.  Taking the allegations in the Complaint as true, Salazar has failed to allege inadequate process.  The essence of Salazar's

contention is that the City of Albuquerque violated his due-process rights when it appealed the Personnel Board's decision. At the hearing, Mr. Livingston asserted [] Salazar's procedural due-process claim accrued on June 17, 2008, when Chavez announced that he planned to appeal the Personnel Board's ruling. See Tr.at 7:17-8:2 (Court, Livingston). See also Tr. at 7:10-15 (Court: "If we just stopped right there after the personnel board reinstated Mr. Salazar and ordered him to be paid back pay and benefits, would you agree with me at that point he doesn't have a procedural due-process claim?" Mr. Livingston: "If the City actually reinstates him."). Salazar does not, thus, allege that he was not "afforded an appropriate level of process." Camuglia v. The City of Albuquerque, 448 F.3d at 1219. Rather, he contends that the Defendants violated his constitutional rights when they appealed the Personnel Board's decision. Salazar's argument is without a sound basis in the law. The process due a person whose protected property interest is impaired depends on: (i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (iii) the government's interest and the burdens that additional procedures might impose. See Mathews v. Eldridge, 424 U.S. at 335. Salazar's contention thus furthers none of the goals due-process protections seek to further. A citizen is entitled to process and is not necessarily guaranteed a win. The City of Albuquerque has a statutory right to appeal the Personnel Board's decision. See NMSA 1978, § 39-3-1.1 ("Unless standing is further limited by a specific statute, a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision."). The right to appeal the Personnel Board's decision is part of the process; the statutory provision that parties may appeal the Personnel Board's increases the protections afforded to the parties. There is no sound basis for Salazar to argue that the Constitution guarantees him a right to appeal but prohibits the City of Albuquerque from appealing. The Court, therefore, concludes that Salazar has not stated a procedural due-process claim.

March 28 MOO at 28-29. In his Response, Salazar asserts that the "City misleadingly alleged that Plaintiff was attempting to challenge the City's right to appeal the decision of its Personnel Board." Response at 3. Salazar states that his due-process claim is that:

The Defendant's disregard and derogation of the City's merit system, including its Personnel Hearing Officer and its Personnel Board and its members, and its appeals to the district court, denied Plaintiff's due process right to a meaningful hearing and the benefit of prevailing on the disciplinary charges against him . . . .

Response at 4.  Notably, this paragraph is not found in the First Amended Complaint, but, rather comes from the amended complaint that Salazar filed without leave of the Court or consent from the Defendants on September 23, 2010.  See Doc. 7 at 12.  It is also identical to paragraph 35 of the Complaint, which Salazar alleged as the basis of the procedural due-process claim that the Court dismissed.  See Complaint ¶ 35, at 8.

> Salazar's new allegation in the First Amended Complaint is that
>
> Defendants have denied Mr. Salazar's right to procedural due process by wrongfully terminating his employment and twice refusing to comply with the Personnel Board's reinstatement orders and then, on a third occasion, by imposing conditions and "reinstating" Salazar while his termination for refusing to report to the Solid Waste Department position was still being reviewed and had not been decided by the Personnel Board.

First Amended Complaint ¶ 64, at 16.  Salazar contends, therefore, that the City of Albuquerque violated his right to due process by refusing to comply with the Personnel Board's reinstatement orders and by reinstating him before his appeal from his termination with the Solid Waste Department was pending.

Also, Salazar alleges that the City of Albuquerque reinstated him as a bus driver on April 12, 2011, and that he did not report for work by the City of Albuquerque's assigned date.  See First Amended Complaint ¶¶ 47-48, at 12.  He admits that he did not appeal from his March 28, 2012 termination, and the record establishes that, although he appealed the Personnel Board's December 16, 2011 order, Judge Malott dismissed that case on May, 2012, because of Salazar's failure to prosecute his claims.  See Tr. at 10:21-11:8 (Court, Livingston)(Salazar affirms that he is not in the midst of any administrative appeal process, because the process with the Personnel Board is "defective on its face"); State Court Dismissal at 1.

## A.   SALAZAR WAIVED HIS CLAIM OF PROCEDURAL DUE PROCESS.

The Tenth Circuit has held that a plaintiff waives his or her right to procedural due process where the plaintiff fails to take advantage of the procedures available. See Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J, 464 F.3d 1182, 1194-95 (10th Cir. 2006)(citing Sandoval v. Boulder, 388 F.3d 1312, 1328-29 (10th Cir. 2004)); Luellen v. E. Chicago, 350 F.3d 604, 616 (7th Cir. 2003); Duprey v. Twelfth Judicial Dist. Court, No. CIV 08-0756, 2009 WL 2482170, at *16 (D.N.M. July 28, 2009)(Browning, J.)(citing Lee v. Regents of Univ. of Cal., 221 F. App'x 711, 714 (10th Cir. 2007)(unpublished)).   This waiver holds even if the plaintiff alleges that pre-deprivation proceedings were biased, if the plaintiff fails to take advantage of post-deprivation proceedings. See Lee v. Regents of Univ. of Cal., 221 F. App'x at 714 (holding that a plaintiff "waived any challenge to the fairness of the [] post-termination hearing procedures because he never requested a post-termination hearing").   In Lee v. Regents of Univ. of Cal., the Tenth Circuit relied on Alvin v. Suzuki, 227 F.3d 107 (3d Cir. 2000), an opinion decided by a unanimous panel consisting of the Honorable Samuel A. Alito, Jr., former Circuit Judge for the United States Court of Appeals for the Third Circuit and current Associate Justice for the United States Supreme Court, the Honorable Edward R. Becker, then-current Chief Circuit Judge for the United States Court of Appeals for the Third Circuit, and the Honorable Maryanne Trump, current Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, in its ruling.   In Alvin v. Suzuki, the United State Court of Appeals for the Third Circuit discussed cases "in which plaintiffs have attempted to make a procedural due process claim, charging that bias has infected a review of its deprivation,

although they have not used all of the procedures available to them."  227 F.3d at 118.  The

Third Circuit stated:

> [A] discharged employee cannot claim in federal court that he has been denied
> due process because his pretermination hearing was held by a biased individual
> where he has not taken advantage of his right to a post-deprivation hearing before
> an impartial tribunal that can rectify any possible wrong committed by the initial
> decisionmaker.

227 F.3d at 119 (internal quotation marks and citations omitted).  The Third Circuit further

explained that an employee fails to state a claim for procedural due process after pursuing a

three-level, apparently biased, grievance procedure, if the plaintiff fails to request arbitration

when arbitration is available.  See 227 F.3d at 119.  The Third Circuit reasoned that such a

failure to pursue an available arbitration precluded a due-process challenge "even when the

plaintiff allege[d] that the defendants acted in concert to deprive him both of a meaningful

hearing and of arbitration because the administrative process in place ha[s] incorporated

safeguards adequate to resolve these allegations in a manner consistent with the demands of due

process."  227 F.3d at 119 (internal quotation marks and citations omitted).

In this matter, the record demonstrates that Salazar had procedures available to him to

"present his side of the story," as well as notice of the charges against him and a forum for the

City of Albuquerque to present evidence.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at

546.  First, after his initial termination, Salazar was informed that he was terminated because of

the allegation that he was a "'convicted sex-offender.'"  First Amended Complaint ¶ 15, at 4.

Salazar had the opportunity, of which he took advantage, to appeal that termination.  See First

Amended Complaint ¶ 16, at 4.  Second, before termination from his position as a garbage truck

driver, Salazar was informed of charges that he violated City Personnel Rules and Regulations.

See First Amended Complaint ¶ 42, at 11.   Salazar had the opportunity to appeal this

termination, which included the ability to present witnesses.  See First Amended Complaint ¶ 45,

at 11.  Last, before termination from his position as a bus driver, Salazar received a notice that he

was again charged with violations of Personnel Rules and Regulations.   See First Amended

Complaint ¶ 59, at 14.  The record also indicates that Salazar had an opportunity to "present his

side of the story," Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546, given that in the

course of Salazar's appeals, orders were made three times that Salazar be reinstated as a bus

driver with back pay, see First Amended Complaint ¶ 16, at 4; id. ¶ 23, at 5; id. ¶ 51, at 13.

Salazar had access to post-deprivation proceedings, not only through the Personnel Board, but

also through an appeal to the state district court.  Rule 1-075(B) of the Rules of Civil Procedure

for the District Courts of New Mexico provides:

> An aggrieved party may seek review of a final decision or order of an agency by
> (1) filing a petition for writ of certiorari in the district court with proof of service;
> and (2) promptly filing with the agency a copy of the petition for writ of certiorari
> that has been endorsed by the clerk of the district court.

NMRA 1-075 (2002).

In a similar case, the Court has held that a plaintiff waived her claim of a violation of

procedural due process by failing to appeal her termination to state district court:

> First, Duprey received the requisite due process because she had notice and an
> opportunity to respond.  Second, she cannot properly challenge the fairness of the
> available post-deprivation procedure -- in this case, a petition for certiorari -- by
> making allegations that the proceedings through which she had already gone were
> biased.   Third, she waived the ability only to challenge the fairness of the
> available post-deprivation proceeding because she did not request such a
> proceeding.

Duprey v. Twelfth Judicial Dist. Court, 2009 WL 2482170, at *18.

The Court concludes that Salazar waived his right to assert a claim of procedural due process by failing to take advantage of the administrative and state court appeal process available to him.  Salazar's refusal to proceed through the administrative and state court appeals available to him precludes the Court from reviewing those procedures any further.  "A party cannot create a due process claim by ignoring established procedures."  <u>Santana v. City of Tulsa</u>, 359 F.3d 1241, 1244 (10th Cir. 2004)(holding that a district court properly entered summary judgment against a plaintiff's procedural due process claim where the plaintiff was given "adequate notice and an opportunity to meaningfully participate" in challenging the enforcement of a nuisance law, and the plaintiff did not initiate the administrative appeal available to him).  Similarly, here, the procedure available to Salazar gave him notice of his terminations and an opportunity to present his side of the story.  His failure to avail himself of that procedure, even if "defective on its face," Tr. at 11:3-4 (Livingston), removes his claim from the Court's purview.  <u>Lee v. Regents of Univ. of Cal.</u>, 221 F. App'x at 714 (holding that, even though a plaintiff asserted that the administrative review process "for employees subject to termination are so biased in favor" of the employee that a "fired employee should not be required to partake of them in order to raise a procedural due process claim," the plaintiff waived "any challenge to the fairness of the [employer's] post-termination hearing procedures because he never requested a post-termination hearing").

**B.    SALZAR VOLUNTARILY RELINQUISHED HIS PROPERTY INTEREST IN CONTINUED EMPLOYMENT.**

Additionally, the record before the Court and Salazar's allegations in the First Amended Complaint establish that Salazar voluntarily relinquished his property interest in his continued employment when he failed to report after he was reassigned to the position of bus driver.  In

Garcia v. City of Albuquerque, 232 F.3d 750 (10th Cir. 2000), the Tenth Circuit held that the

City of Albuquerque did not violate a bus driver's procedural due-process rights, because the bus

driver, Silas Garcia, voluntarily resigned rather than accept reinstatement to a different position.

The bus driver was terminated after failing a random drug test.   The Personnel Board

recommended reinstatement with treatment.   The City of Albuquerque appealed the Personnel

Board's ruling to New Mexico state court.   While the appeal was pending, the City of

Albuquerque reinstated Garcia.   "The City then informed Garcia that he was reassigned to a

security guard position, but would still have the same rate of pay and hours as he had enjoyed as

a bus driver." 232 F.3d at 764.  Garcia did not report for work, despite two letters "warning him

that his absence was 'unauthorized' and stating that he was jeopardizing his position with the

City." 232 F.3d at 764.

Garcia brought a suit in the United States District Court of New Mexico, alleging, among

other things, that the City of Albuquerque violated his procedural due-process and substantive

due-process rights.

> Garcia first contend[ed] that the City did not afford him adequate procedural due
> process in that after he was reinstated by the Personnel Board, the City "without
> any hearing and without justification . . . refused to return him to work."  Garcia
> base[d] this argument on the fact that the City's offer of reinstatement
> contemplated transferring him from his prior position as a bus driver to serving as
> a security guard.

232 F.3d at 769 (citations omitted).  The Tenth Circuit rejected Garcia's argument.  The Tenth

Circuit held:

> Contrary to Garcia's assertions, we hold that his procedural due process
> rights have not been violated.  The City argues that although it complied with the
> Personnel Board's order to reinstate Garcia, he resigned from his employment by
> refusing to report for work.  We agree.  As we ruled in Yearous v. Niobrara
> County Memorial Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997), where plaintiffs
> "resign[ ] of their own free will, even as a result of Defendant's actions, then they

voluntarily relinquish[ ] their property interests and, thus, Defendant did not deprive them of property without due process of law."  See also Parker v. Board of Regents of Tulsa Junior College, 981 F.2d 1159, 1162 (10th Cir. 1992).  That is the case here.  The City, in compliance with the Personnel Board's order, reinstated Garcia's employment, albeit to a different position with the same hours and rate of pay.  Not satisfied with being transferred to a different position, however, Garcia repeatedly refused to report to work, ultimately leading the City to designate him as being "AWOL."  Since Garcia clearly had the option of returning to work, we hold that his actions constitute a voluntary resignation.  Parker, 981 F.2d at 1162 ("A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice.").

Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due. Cf. Mathews v. Eldridge, 424 U.S. 319, 333 . . . (1976) (holding that the fundamental requirement of due process "is the opportunity to be heard at a meaningful time and in a meaningful manner") (citation and internal quotation marks omitted); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 518 (10th Cir. 1998)("A fundamental principle of procedural due process is a hearing before an impartial tribunal."); Loudermill, 470 U.S. at 542 . . . (holding that it is an "essential principle of due process that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case")(citation, alterations, and internal quotation marks omitted).

232 F.3d at 770.

Under the Tenth Circuit's holding in Garcia v. City of Albuquerque, Salazar has voluntarily relinquished his property interest in continued employment.  Salazar has been similarly afforded "three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing." Garcia v. City of Albuquerque, 232 F.3d at 770.  "The City, in compliance with the Personnel Board's order, reinstated [Salazar]," Garcia v. City of Albuquerque, 232 F.3d at 770, to his previous position.  Salazar asserts that the City of Albuquerque failed to "ensur[e] his safety," before requiring him to report for work, Tr. at 18:20-21 (Livingston), but Salazar fails to explain

how this fact indicates that he was deprived of a property interest in continued employment, and the Court, on its own, does not see how this fact would change the due-process analysis. Moreover, Salazar admits that he refused to report for work as a garbage truck driver, a position which Salazar does not allege required a similar assurance of personal safety, further indicating that he was not deprived of a property interest. "[Salazar] repeatedly refused to report to work, ultimately leading the City to designate him as" having abandoned his job. Garcia v. City of Albuquerque, 232 F.3d at 770. It follows that, "[s]ince [Salazar] clearly had the option of returning to work, [the Court] hold[s] that his actions constitute a voluntary resignation." Garcia v. City of Albuquerque, 232 F.3d at 770. Based on the undisputed facts in the First Amended Complaint, the Court holds that Salazar "voluntarily relinquish[ed] [his] property interests and, thus, Defendant did not deprive [hi]m of property without due process of law." Garcia v. City of Albuquerque, 232 F.3d at 770 (quoting Parker v. Board of Regents of Tulsa Junior College, 981 F.2d at 1162). The Court, therefore, enters judgment on the pleadings in favor of the Defendants on Salazar's procedural due-process claim.

## IV.   SALAZAR FAILS TO STATE A CLAIM IN TORT AGAINST THE DEFENDANTS, EXCEPT FOR HIS ALLEGATION OF DEFAMATION BASED ON PAYNE'S POST-EMPLOYMENT STATEMENTS.

The Court previously ruled that the "NMTCA has not waived immunity for claims of defamation or malicious abuse of process against the Mayor and the Transit Department Director." March 28 MOO at 35. Salazar brings three tort claims in his First Amended Complaint against the Defendants, and asserts that, notwithstanding the Court's previous analysis, the Defendants committed tortious acts outside the scope of their duties, and, accordingly, may be personally liable. See Response at 4-5. The Defendants urge the Court to apply its previous analysis to the tort claims in the First Amended Complaint and dismiss these

-64-

claims.   The Court discussed New Mexico law regarding tortious conduct committed in the scope of a public employee's duties in the March 28 MOO:

> Salazar appears to argue that the alleged statements were outside the scope of the Defendants' duties because they were tortious.   "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived" by the NMTCA's provisions.   NMSA 1978, § 41-4-4A.   The New Mexico Legislature defined "scope of duty" to "mean[ ] performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."   NMSA 1978, § 41-4-3. "Whether an employee is acting within the scope of duties is a question of fact, and summary judgment is not appropriate unless 'only one reasonable conclusion can be drawn' from the facts presented."   Celaya v. Hall, 135 N.M. 115, 122, 85 P.3d 239, 246 (2004).   "In the present case, [the Court] ask[s] whether, under any set of facts alleged in the complaint, Defendants' actions can be considered outside the scope of their duties and thus outside the coverage of the TCA." Henning v. Rounds, 142 N.M. 803, 807, 171 P.3d 317, 321 (Ct. App. 2007).

March 28 MOO at 37-38.

The Court agrees with the Defendants that the facts in the First Amended Complaint do not change the Court's previous legal analysis that alleged acts were committed in the course of the Defendants' employment and that the NMTCA does not waive the Defendants' liability for these claims.   The Court accordingly, dismisses Salazar's claims for defamation per se, intentional infliction of emotional distress, and civil conspiracy against all Defendants except Payne, because of their immunity under the NMTCA.   The Court concludes, however, that Salazar has failed to allege sufficient facts for the Court to find that Payne plausibly intentionally inflicted emotional distress or participated in a civil conspiracy against Salazar, and will dismiss Salazar's claims in Counts V and VI against Payne as well.

A.   **THE NEW FACTS WHICH SALAZAR INCLUDES IN THE FIRST AMENDED COMPLAINT DO NOT ALTER THE COURT'S ANALYSIS THAT NMTCA IMMUNIZES CHAVEZ, BERRY, AND PAYNE FOR THE ALLEGEDLY DEFAMING STATEMENTS MADE IN THE COURSE OF THEIR EMPLOYMENT.**

In the March 28 MOO, the Court discussed Salazar's argument that Chavez, Berry, and Payne are not immune under the NMTCA because their defamatory statements were made outside the scope of their employment:

> Salazar argues that
>
> [t]he City's contention that its mayor is both immune from defamation claims and free to comment "on the history and employment status of the City's employees" apparently even to the extent of making false accusations of criminal misconduct against a City employee whom the Personnel Board has ordered to be reinstated, are not worthy of serious consideration.
>
> Response at 9.  Salazar's contention appears to be that the Mayor is not immune from tortious conduct.  In Garcia-Montoya v. State Treasurer's Office, the Supreme Court of New Mexico rejected a plaintiff's argument that unlawful acts fall outside of an employee's duties, because this interpretation would swallow the rule:
>
> > With respect to Garcia-Montoya's claims of intentional infliction of emotional distress and defamation, the district court granted Defendants' motion for summary judgment on the basis that Garcia-Montoya's claims were barred by the Tort Claims Act. . . .  Garcia-Montoya claims that summary judgment was improper because Montoya and Andermann were not acting within the scope of duty.  Garcia-Montoya contends simply that intentional torts are outside the scope of duties for the positions of State Treasurer and Deputy State Treasurer.  Certainly, Garcia-Montoya's position oversimplifies the issue.  Public employees are not directed to commit torts as a part of their official duties; thus, Garcia-Montoya's formulation of the scope of duty test would completely nullify the Legislature's intent to provide governmental immunity against tort claims.  See NMSA 1978, § 41-4-2(A) (1976) ("[T]he area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.").

-66-

The Legislature has specifically defined "scope of duties" to "mean [ ] performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  NMSA 1978, § 41-4-3(G) (1995).  Garcia-Montoya fails to specify any actions by Montoya and Andermann which they were not requested, required, or authorized to perform.  As a result, we do not believe that Garcia-Montoya has raised a genuine issue of material fact that Montoya's and Andermann's actions were outside the scope of their duties, and we affirm the summary judgment in Defendants' favor.

130 N.M. at 43, 16 P.3d at 1102.  By the same measure, Salazar's contention that the NMCTA's immunity does not cover the Mayor's or the Transit Department Director's tortious conduct is unavailing.  See Seeds v. Lucero, 137 N.M. 589, 592, 113 P.3d 859, 862 (Ct. App. 2005)("Our case law establishes that a public employee may be within the scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even criminal."  (citations omitted)); Vigil v. State Auditor's Office, 138 N.M. 63, 68, 116 P.3d 854, 859 (Ct. App. 2005)("[A]ssuming that [the defendant] violated state and federal law in conducting the audit, even to the extent of some tortious or criminal activity, if he was performing an act that he was requested, required or authorized to perform, he was acting within his scope of duty . . . ." (citation internal quotation marks omitted)).  As the Court of Appeals of New Mexico stated in Risk Mgmt. Div. v. McBrayer, 129 N.M. 778, 14 P.3d 43 (Ct. App. 2000):

> [T]he legislature likely foresaw the possibility that a public employee could . . . commit malicious, even criminal acts that were unauthorized, yet incidental to the performance of [his or her] duties.  And it is equally likely that the legislature intended that those unauthorized acts would fall within the scope of duties as defined in the TCA.

129 N.M. at 784, 14 P.3d at 49.  Consequently, the Court concludes that the NMTCA bars Salazar's defamation and malicious-abuse-of-process claims against the Defendants based on statements made while they were City of Albuquerque employees, and the Court dismisses these claims.

March 28 MOO at 38-39.

Salazar's defamation claim against Chavez, Berry, and Payne is unchanged from those the Court dismissed in the First Amended Complaint.  Compare Complaint ¶¶ 43-49, at 10-11,

with First Amended Complaint ¶¶ 76-83, at 18-19.   Salazar has not included new factual allegations of defamation against these Defendants.   Compare Complaint ¶¶ 8-31, at 2-8, with First Amended Complaint ¶¶ 10-31, at 3-8.   Salazar appears to be asserting that the Court mischaracterized his claim of defamation in the March 28 MOO, but his distinction is lost on the Court: "Actually, Salazar's contention is that the statements were outside the scope of Defendants' duties because defaming public employees is not something the Mayor is 'requested, required or authorized to perform' by the City of Albuquerque."   Response at 5.   In the March 28 MOO the Court addressed Salazar's assertion that Chavez, Berry, and Payne are not immune from Salazar's defamation claim because their conduct was tortious.   The Court is unable to determine how asserting that the Mayor is not directed to perform tortious conduct and therefore the conduct Salazar alleges is not immune differs from the argument that the Court previously addressed.   Chavez, Berry, and Payne were authorized to speak for the City of Albuquerque, even if they did so tortuously or in violation of law.   Because Salazar has failed to argue convincingly, with law or new facts, that Chavez', Berry's, and Payne's comments made while employees of the City of Albuquerque are not immune from claims of defamation, the Court determines that Salazar has again failed to state a claim on which relief can be granted for that conduct in Count III.   The Court, accordingly, will grant Chavez, Berry, and Payne judgment on the pleadings for Salazar's allegations of defamation based upon the statements they made during the course of their employment.

**B.     SALAZAR FAILS TO STATE A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND CIVIL CONSPIRACY.**

Salazar alleges that the Defendants, through their false accusations and public defamation of Salazar, have engaged in conduct "so outrageous in character, and so extreme in degree, as to

be beyond all possible bounds of decency." First Amended Complaint ¶ 92, at 21. Salazar also alleges that the Defendants "met, planned, communicated, and conspired with one another to preclude Paul Salazar' return to work as a City bus driver." First Amended Complaint ¶ 96, at 22. Salazar alleges that the Defendants have "agreed upon and attempted to carry out their past, present, and on-going scheme to remove Paul Salazar from his position as a bus driver, force him into a truck driving position, or terminate his employment by 'reinstating' and then terminating him while his prior termination case was still pending." First Amended Complaint ¶ 98, at 22. The Defendants assert that they are immune from claims based on these tort allegations, because Salazar alleges that their conduct was in the scope of their employment for the City of Albuquerque. See MTD Memo. at 9-11. Alternatively, the Defendants assert that Salazar has failed to state a claim of civil conspiracy. See MTD Memo. at 11-13. The Court agrees with the Defendants.

Ostensibly in support of his allegations of intentional infliction of emotional distress and civil conspiracy against the Defendants, Salazar alleges that: (i) Chavez and Payne categorized him as a "sex offender," First Amended Complaint ¶ 15, at 4; (ii) Payne and Chavez publicly and repeatedly called Salazar a "sex offender" and a "child molester," First Amended Complaint ¶ 17, at 4; (iii) Chavez stated that he would not allow Salazar to be around children, see First Amended Complaint ¶¶ 18-20, 27 at 4-5, 7; (iv) Perry stated publicly that the City of Albuquerque believed the best policy was to not return Salazar to his position as a bus driver, for both the public and Salazar, see First Amended Complaint ¶ 33, at 8; (v) the Defendants sent Salazar a memorandum notifying him of a pre-determination hearing regarding his alleged City of Albuquerque Personnel Rules and Regulations violations, see First Amended Complaint ¶ 42,

at 11; (vi) Rizzieri found that Salazar was in violation of the City of Albuquerque Personnel Rules and Regulations because Salazar refused to report for work as a garbage truck driver, see First Amended Complaint ¶ 44, at 11; and (vii) Rizzieri terminated Salazar from his position as a bus driver on March 28, 2012, because Salazar refused to report for work, see First Amended Complaint ¶ 60, at 15.  Salazar makes no factual allegations against Yermal, apart from listing him as the Director of the City of Albuquerque's Human Resources Department.  See First Amended Complaint ¶ 5, at 2.

### 1.   The NMTCA has not Waived the Defendants' Immunity for Intentional Infliction of Emotional Distress and Civil Conspiracy.

The Court finds that, apart from Payne's statement on February 4, 2010 to KOB-TV-4, each of Salazar's allegations against the other Defendants involves conduct in the scope of their employment.   The Court has already concluded that Chavez, Berry, and Payne's public statements while employees of the City of Albuquerque regarding Salazar were made in the course of their employment.   Additionally, Perry's statement to the Albuquerque Journal was made as the "City Attorney," indicating that he was authorized to speak as the City of Albuquerque's representative regarding Salazar's reinstatement, and that these statements were made in the course of his employment.  First Amended Complaint ¶ 33, at 8.  Salazar alleges that he received a memorandum notifying him of the City of Albuquerque's pending charges against him; he does not identify who sent this memorandum.  See First Amended Complaint ¶ 42, at 11. That Salazar received a memorandum detailing the City of Albuquerque's allegations against him indicates that, regardless who sent the memorandum, sending the memorandum was something the individual was "authorized to perform by" the City of Albuquerque, and,

accordingly, within the scope of that person or persons' employment duties.  N.M.S.A. 1978, § 41-4-3.

Salazar then contends that Rizzieri found him in violation of City of Albuquerque Personnel Rules and Regulations, and terminated him.  See First Amended Complaint ¶¶ 42, 44, 60 at 11, 15.  Rizzieri had the ability to discipline and terminate Salazar only by virtue of his employment with the City of Albuquerque, indicating that the termination was performed within the scope of Rizzieri's duties.  Construing all reasonable inferences in Salazar's favor, the Court cannot soundly conclude that, "under any set of facts alleged in the complaint, Defendants' actions can be considered outside the scope of their duties and thus outside the coverage of the TCA."  Henning v. Rounds, 2007-NMCA-139, ¶ 21, 142 N.M. 803, 171 P.3d 317.  Each of Salazar's allegations is against a Defendant that, apart from their employment with the City of Albuquerque and Payne post his employment, would have had no opportunity to commit the allegedly tortious act.  Accordingly, the Court concludes that Salazar's allegations of intentional infliction of emotional distress and civil conspiracy against these Defendants, apart from Payne's post-employment statements, was conduct that the Defendants committed in the scope of their duty as employees of the City of Albuquerque.

"A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived" by the NMTCA's provisions. N.M.S.A. 1978, § 41-4-4A.   "The Supreme Court of New Mexico further held that the Legislature has not waived immunity for claims of intentional infliction of emotional distress." Lovelace v. Cnty. of Lincoln, 2011 WL 2731179, at *9 (citing Garcia-Montoya v. State Treasurer's Office, 2001-NMSC-003, ¶ 48, 130 N.M. 25, 16 P.3d 1084 (upholding dismissal of

intentional infliction of emotional distress claim, because immunity is not waived under NMTCA)).  New Mexico courts have also recognized the there is no waiver of liability for civil conspiracy in the NMTCA.  See Seeds v. Lucero, 2005-NMCA-067, ¶¶ 7-16, 137 N.M. 589, 113 P.3d 859 (stating that a "public employee's conspiratorial and wrongful intent does not remove the employee's immunity when the employee's acts are within the scope of his or her duties"), cert. denied, 2005-NMCERT-067, 137 N.M. 522, 113 P.3d 345.  Accordingly, the Court rules that Chavez, Berry, Payne (except for his post-employment statements), Perry and Rizzieri are entitled to judgment on the pleadings in their favor on Salazar's allegations of intentional infliction of emotional distress and civil conspiracy, because the basis of Salazar's allegations against these Defendants is conduct performed within the scope of their duties, and the NMTCA has not waived their immunity from these claims.  Additionally, because Salazar makes no factual allegations against Yermal, the Court will dismiss Salazar's claims in Count V and VI, in so far as they are alleged against Yermal.

> **2.    Salazar Fails to State a Claim of Intentional Infliction of Emotional Distress and Civil Conspiracy Against Payne Based on his Post-Employment Statements.**

The following elements must be proven to establish a claim of intentional infliction of emotional distress:  "'(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress.'"  Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333 (quoting Hakkila v. Hakkila, 112 N.M. 172, 182, 812 P.2d 1320, 1330 (Ct. App. 1991)(Donnelly, J.)).  Extreme and outrageous character is conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all

possible bound of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community.'" Trujillo v. N. Rio Arriba Elec. Co-op., Inc., 2002-NMSC-004, ¶ 25, 131 N.M.

607, 41 P.3d 333 (quoting Restatement (Second) of Torts § 46)). Severe emotional distress

refers to distress that "'a reasonable person, normally constituted, would be unable to cope

adequately with the mental distress engendered by the circumstances . . . . so severe that no

reasonable [person] could be expected to endure it.'" Trujillo v. N. Rio Arriba Elec. Co-op.,

Inc., 2002-NMSC-004, ¶ 28, 131 N.M. 607, 41 P.3d 333 (quoting Restatement (Second) of Torts

§ 46)).

Here, Salazar alleges that Payne's post-employment statement is "atrocious and utterly

intolerable in a civilized community," and has caused him "extensive and severe emotional

distress and damage." First Amended Complaint ¶¶ 92, 93, at 21. These allegations do no more

than recite the elements of the cause of action. "Threadabare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice" for surviving a motion to

dismiss under rule 12(b)(6). Ashcroft v. Iqbal, 556 U.S. 678. Although the statements that the

"personnel board is absolutely crazy" to reinstate Salazar as a bus driver, and that "Mayor Berry .

. . should have given him a position where he's not around children," First Amended Complaint

¶ 27, at 7, may be defaming, Salazar has provided no evidence that this statement was "beyond

all possible bounds of decency," Trujillo v. N. Rio Arriba Elec. Co-op., Inc., 2002 NMSC-004, ¶

27, 131 N.M. 607, 41 P.3d 333, or any facts supporting a plausible claim that he underwent

severe mental anguish. Additionally, Payne does not label Salazar as a "sex offender" or a "child

molester" -- the negative statements which Salazar focuses on in the First Amended Complaint.

First Amended Complaint ¶ 17, at 4. Payne could plausibly be speaking about a person with a

short temper or one who is easily distracted.  Further, while the Mayor cannot likely falsely accuse any City of Albuquerque employee of being a sex offender, and rely on his official immunity to shield him from allegations of intentional infliction of emotional distress, the record in this matter indicates that labeling Salazar a "sex offender" is not baseless: He pled no contest to allegations of improperly touching a minor child in 2006.  Payne's comments that Salazar should not be around children are based, at least in part, on disposition of the charges against Salazar.  Although Payne's statements might be insulting, "[m]ere insults . . . do not exceed the bounds of decency."  Andrews v. Stallings, 119 N.M. 478, 491, 892 P.2d 611, 625 (Ct. App. 1995).  Additionally, that Salazar pled no contest to those charges likely lessens any emotional damage Payne's words may have caused him.  Also, Salazar has not alleged a causal connection between Payne's statements to KOB-TV and his own severe mental anguish.  Moreover, the Court of Appeals of New Mexico has determined that making false statements in order to support an employee's suspension and termination, even in conjunction with other allegedly wrongful acts, did not rise to the level of outrageous conduct inflicting severe mental distress necessary to support a claim for intentional infliction of emotional distress.  See Weise v. Washington Tru Solutions, L.L.C., 2008-NMCA-121, ¶¶ 11-19, 144 N.M 867, 192 P.3d 1244. Without more, these allegations fail to state a claim for relief based on Payne's intentional infliction of emotional distress.  The Court, accordingly, will grant judgment on the pleadings on Salazar's allegation against Payne that his post-employment statements intentionally inflicted emotional distress on him.

A claim for civil conspiracy requires a showing

that a conspiracy between two or more individuals existed; that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and that the plaintiff was damaged as a result of such acts.  Unlike a conspiracy in the criminal

> context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators.  Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense.

Seeds v. Lucero, 2005-NMCA-067, ¶ 18, 137 N.M. 589, 113 P.3d 859.  "A civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."   Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 140 N.M. 41, 139 P.3d 201.

Here, Salazar alleges that Payne's post-employment statement was part of a conspiracy to "remove Paul Salazar from his position as a bus driver, force him into a truck driving position, or terminate his employment by 'reinstating' and then terminating him while his prior termination case was still pending."  First Amended Complaint ¶ 98, at 22.  Salazar fails to establish that Payne carried out any wrongful acts in furtherance of the alleged conspiracy.  Even if the Court were to conclude that Salazar's transfer to the position of a garbage truck driver or his reinstatement as a bus driver while his termination was pending were unlawful, Salazar has failed to allege how Payne's statements, made while no longer an employee of the City of Albuquerque, effected the City of Albuquerque's hiring, termination, and transfer processes.  While Payne's statements were plausibly defaming, Salazar has not demonstrated that the statement could have, in any way, furthered an unlawful purpose.  Salazar's pleading problems are compounded, because it is not apparent from the First Amended Complaint that his transfer to the Solid Waste Department, or his reinstatement as a bus driver while his appeal was pending, were wrongful acts.  "Salazar has a property interest in continued employment; he may not, however, have a property interest in continued employment as a bus driver." March 28

MOO at 24 (citing <u>Potts v. Davis County</u>, 551 F.3d 1188, 1193 (10th Cir. 2009)(holding a transfer to a position at the same class and grade in compliance with a statute does not did not implicate the plaintiff's property interest)).   Accordingly, the Court concludes that Salazar has failed to state a claim for intentional infliction of emotional distress or civil conspiracy against Payne based on his post-employment statements, and the Court will grant Payne judgment on the pleadings on those allegations in Counts V and VI.

**V.   SALAZAR STATES A PLAUSIBLE BREACH-OF-CONTRACT CLAIM AGAINST THE CITY OF ALBUQUERQUE.**

The Court has already dismissed a breach-of-contract claim in this case.   In its previous ruling, the Court discussed Salazar's breach-of-contract claim as follows:

> Salazar's claim for breach of employment contract, and of the duty of good faith and fair dealing, appear to be based on two arguments.   First, he implies the Defendants should not have appealed the Personnel Board's order.   <u>See</u> Complaint ¶ 56, at 12 ("Pursuant to his employment contract, Mr. Salazar was entitled to a fair hearing before a Personnel Hearing Officer, and once that hearing had been held and a decision rendered the City was required to comply with the final orders of its Personnel Board.").   Second, he alleges that "[b]oth Mayor Berry and Mayor Chavez were prohibited by the City Charter from involvement in personnel matters, yet both mayors made invidious statements and comments defaming Paul Salazar."   Complaint ¶ 57, at 12.   Both of Salazar's arguments fail as a matter of law.   The Court will therefore dismiss Count V of Salazar's Complaint.

> . . . .

> On the first contention, the Defendants rely on their arguments against the merits of Salazar's procedural due-process claim.   They contend that the City of Albuquerque has a statutory right to appeal the Personnel Board's decisions, and that Salazar's argument would require them to abandon their right and immediately acquiesce to the Personnel Board.   They note that the upshot of Salazar's argument is that employees, too, could not appeal the Personnel Board's decisions without violating their employment contracts.

> The Court agrees that the City of Albuquerque's appeal of the Personnel Board decision did not violate Salazar employment contract.   The City of Albuquerque has a statutory right to appeal the Personnel Board's decisions.   <u>See</u> NMSA 1978, § 39-3-1.1 ("Unless standing is further limited by a specific statute,

a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision."). The essence of Salazar's argument is that a governmental entity breaches an employment contract whenever it exercises its right to appeal rulings that are adverse to it. The consequence of Salazar's contention would be that the only way to avoid a contract claim would be for the government entity to acquiesce at every turn. Again, a citizen is entitled to process and is not necessarily guaranteed a win. A process consistent with due process is a notice of a hearing and a hearing, and that process can include appeals; that is part of the process. If an employer has a right under NMSA 1978, § 39-3-1.1 to appeal a Personnel Board decision, there is no sound basis in the law to say that Constitution precludes the City of Albuquerque from taking an appeal. The Court concludes that the City of Albuquerque's appeals of the Personnel Board's decisions to the state court did not breach Salazar's employment contract or their duty of good faith and fair dealing.

. . . .

Salazar alleges that "both Mayor Berry and Mayor Chavez were prohibited by the City Charter from involvement in personnel matters," Complaint ¶ 57, at 12, "but that they ignored and overrode the City Charter, Merit System Ordinance, and City Rules and Regulations concerning employee rights and disciplinary actions, and arrogated 'to themselves the ability to do or say whatever they wanted,'" Response at 11 (quoting Complaint ¶ 58, at 12). The City of Albuquerque and Berry contend that nothing in the City's Charter or Merit System Ordinance prevents the Mayor, or any other elected official, from commenting publicly on matters of public interest. They assert that nothing precludes the Mayor from commenting on the history and employment status of the City of Albuquerque's employees, or taking a position on litigation of cases. They further assert that public statements made on cases of public interest are not necessarily involvement in the hiring or discharge process. Salazar responds that whether or not Chavez' and Berry's alleged statements are "'involvement in the hiring or discharge process' and whether they do or do not 'demonstrate actual involvement in the process' are again mixed questions of fact and law," which the Court should allow to proceed. Response at 11 (quoting Memorandum at 6).

The Court concludes that Salazar has not stated a claim for breach of contract or duty of good faith and fair dealing. The City Charter states: "Except to the extent necessary for the administration of the merit system, the Mayor is prohibited from becoming involved in the hiring, promotion, demotion, or discharge of any city employee except those personnel hired for unclassified positions directly responsible to the Mayor." Albuquerque City Charter, art. X, § 2(b). There is scant case law interpreting the meaning of this provision. The Court finds only its prior opinion addressing the structure of the City Attorney's office and the authority to make personnel decisions as to unclassified employees

has touched on the issue.  See Kelley v. City of Albuquerque, 375 F. Supp. 2d 1183, 1191 (D.N.M. 2004)(Browning, J.).  The City Charter's provision appears to address concerns about the Mayor awarding patronage positions, or otherwise using promotions and hiring to reward favor, or demotions or terminations to punish his adversaries.  The Court does not believe the Supreme Court of New Mexico would interpret the provision to restrict the mayor from commenting on any matter involving an employment decision.  For example, it would defy reason to interpret the Charter as gagging the mayor from commenting on a matters of public corruption or police brutality that resulted in employees being fired, because the matter involved employees that had been discharged, and the Court does not believe the Supreme Court of New Mexico would adopt an unreasonable interpretation.    The language of the City Charter does not require such a hampering decision.  Moreover, there is nothing inconsistent with allowing the Mayor to comment on all city matters, but not give him power to effect some.  The Mayor may comment on judicial decisions or council actions, but may not, because of the separation of powers, make their decisions.  It would be ironic to take away from the Mayor the ability to publicly comment on employees when everyone else in Albuquerque has that ability.  A Mayor might use his bully pulpit to change the system, even if he or she cannot make individual personnel decisions.

Moreover, Salazar cannot enforce the City Charter as a condition of his employment contract.  A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct.  See Newberry v. Allied Stores, Inc., 108 N.M. at 426, 773 P.2d at 1233.  "An implied contract is created only where an employer creates a reasonable expectation.  The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon."  Hartbarger v. Frank Paxton Co., 115 N.M. 665, 672, 857 P.2d 776, 783 (1993)(citation omitted).  If the alleged employer's promise is not sufficiently explicit, the courts will not find an implied contract.  Hartbarger v. Frank Paxton Co., 115 N.M. at 669, 857 P.2d at 780.  Courts have held that an alleged implied contract that merely restates the law does not create an implied contract.  In Peralta v. Cendant Corp., 123 F. Supp. 2d 65 (D. Conn. 2000), the United States District Court for the District of Connecticut stated:

> The language of the anti-harassment policy that plaintiff urges as the basis of his implied contract claim does not indicate that defendant is undertaking any contractual obligations towards the plaintiff; rather, it obliges Cendant to comply with federal and state anti-discrimination laws, and to undertake an investigation upon receiving complaints of discrimination and/or harassment. Cendant is required to publicize its equal opportunity and anti-harassment policy, as well as the complaint procedure, in order to

guard against liability under the discrimination laws.  See Faragher v. City of Boca Raton, 524 U.S. 775, 807 . . . (1998).  As any promises in the policy are general statements of adherence to the anti-discrimination laws, standing alone they do not create a separate and independent contractual obligation.  See Gally v. Columbia Univ., 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (anti-discrimination policy does not give rise to contractual liability); Belgrave v. City of New York, 1999 WL 692034 (E.D.N.Y.) (no breach of contract claim where employee claimed that employer failed to follow its procedures for providing equal opportunity to employees).

123 F. Supp. 2d at 83-84 (citation to the record omitted).  See Mutua v. Tex. Roadhouse Mgmt. Corp., Civ. No. 09-4080, 2010 WL 4683859, at *14-15 (D.S.D. Nov. 10, 2010)(granting summary judgment on a breach-of-contract claim seeking to enforce the anti-discrimination provisions in the employer's employee handbook, because the employer already must abide by Title VII and a promise to perform a legal duty is not consideration for a return promise); Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233, 254 (D. Conn. 2008)(recognizing that an "anti-discrimination policy" does not indicate that an employer is undertaking any contractual obligations towards the employee; rather, it requires the employer "to comply with federal and state anti-discrimination laws"); Gally v. Columbia Univ., 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998)(stating that a provision in the code of conduct requiring that all students receive fair and equal treatment is "merely a general statement of adherence by [the defendant] to existing anti-discrimination laws[;] [i]t does not create a separate and independent contractual obligation")(citation omitted).  Similarly, the Supreme Court of New Mexico has recognized that "an agreement to do what one is already legally bound to do is not sufficient consideration for the promise to another."  W. Bank of Santa Fe v. Biava, 109 N.M. 550, 551, 787 P.2d 830, 831 (1990).  Because the Mayor is already bound to obey whatever strictures the City Charter imposes upon him or her, it cannot also be a part of Salazar's employment contract.  The Court thus concludes that Salazar's contention that the City Charter implies he is entitled, as a condition of his employment, to prohibit the Mayor from speaking about matters of public concern when the matters involve "hiring, promotion, demotion, or discharge of any city employee," Albuquerque City Charter, art. X, § 2(b), fails as a matter of law.

March 28 MOO at 42-47.

Salazar has not alleged new facts in support of his breach-of-contract claim in the First Amended Complaint.  Rather, his legal argument has changed.  He asserts: "Without just cause

or other reasonable justification Defendants have repeatedly violated the employment contract, the Merit System Ordinance, the Personnel Board's orders, and other agreements and promises and Plaintiff is entitled to damages proximately resulting from Defendants' breach of contract, agreements, and promises."  First Amended Complaint ¶ 89, at 21.  Salazar contends that the Court "mischaracterized" his allegations of breach of contract in the March 28 MOO.  Response at 8.  He also contends that the Merit System Ordinance is a "'contract of employment,'" which the Defendants breached when they "sent him to drive garbage trucks and fired him when he refused," and when the City of Albuquerque "ordered him back to work as a bus driver without regard for his safety, finally firing him again."  Response at 9 (quoting Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 25, 124 N.M. 479, 952 P.2d 474).  Salazar also maintains that he has not received the back pay and benefits which the Personnel Board ordered the City of Albuquerque to pay him.  See First Amended Complaint ¶ 31, at 8.  The Defendants contend that the Court should dismiss the First Amended Complaint, because it contains the same allegations of a breach of contract as the Complaint, and because the City of Albuquerque reinstated Salazar to his position as a bus driver and provided him back pay and benefits.  See MTD Memo. at 13; Reply at 10.

In the March 28 MOO, the Court concluded that Salazar failed to establish that the Charter of the City of Albuquerque was incorporated into his employment contract.  Upon further consideration, however, the Court concludes that Salazar is correct in his position that the Merit System Ordinance, found in Article X of the Charter of the City of Albuquerque, is incorporated into his employment contract.  Salazar points the Court to N.M.S.A. 1978, § 3-13-4(C): "Following the adoption of a merit system, the contract of employment between the

municipality and an employee in a position covered by the merit system shall be subject to the provisions of the ordinance and rules and regulations issued pursuant to the ordinance." N.M.S.A. 1978, § 3-13-4(C).  <u>See</u> Response at 8-9.  Salazar does not notify the Court of this statute in the First Amended Complaint, and he did not raise this legal argument in his response to the 1st MTD.  <u>See</u> Plaintiff's Response to Defendants' Motion to Dismiss, filed September 11, 2010 (Doc. 6).  In light of this authority, however, the Court concludes that New Mexico state law incorporates merit system ordinances into contracts of employment between employees and the municipality that adopted the merit system.  The Court will reconsider the portion of its March 28 MOO which held that the Charter of the City of Albuquerque was not incorporated into Salazar's employment contract, and the Court determines that the Merit System Ordinance is incorporated by statute into Salazar's employment contract with the City of Albuquerque.

The Merit System Ordinance provides that a "merit system governing the hiring, promotion, discharge and general regulations of employees" is "necessary for the optimum functioning of the Mayor-Counsel form of government."  Art. X § 1.  The Merit System Ordinance requires the Mayor and Counsel to

maintain by ordinance, and the Mayor administer, a merit system which shall include as a minimum, reasonable provisions establishing . . . [m]ethods of initial employment, continuation thereof and promotion . . .; [a]ppropriate grievance and appeal procedures for classified employees; and [a]n active personnel board composed of individual not employed by the city.

Art. X § 1(c), (d), (e).  The Merit System Ordinance also prohibits the Mayor from "becoming involved in the hiring, promotion, demotion, or discharge of any city employee," with two specified exceptions.  Art. X § 2(b).  The two exceptions allow the Mayor to be involved in

personnel matters "to the extent necessary for the administration of the merit system" and "for unclassified positions directly responsible to the Mayor."  Art. X § 2(b).

In this matter, Salazar alleges that the Defendants breached his employment contract and the Merit System Ordinance, in two ways: (i) Chavez and Berry violated the prohibition on involvement in personnel matters through their "invidious statements and comments defaming Paul Salazar, demeaning the effect of the Personnel Board's written decisions, and vowing to continue their futile litigation and appeals"; and (ii) the Defendants ignored or overrode the City Charter, Merit System Ordinance and City Rules and Regulations regarding employee rights and disciplinary actions, and have "repeatedly violated the employment contract, the Merit System Ordinance, the Personnel Board's orders, and other agreements and promises."  First Amended Complaint ¶¶ 87-89, at 20-21.

## A.   CHAVEZ' AND BERRY'S STATEMENTS DID NOT BREACH SALAZAR'S EMPLOYMENT CONTRACT.

The Court previously determined that Chavez' and Berry's public statements regarding Salazar did not violate the terms of his employment contract or the Merit System Ordinance. The Court determined that, whatever damaging statements Chavez and Berry made regarding Salazar, those statements did not violate the City Charter, because the Court concluded that the Supreme Court of New Mexico would not interpret the City Charter to prohibit a mayor from "commenting on any matter involving an employment decision."  March 28 MOO at 45.  Even though the Court has reconsidered its holding that the Merit System Ordinance was not incorporated into Salazar's employment contract, the Court's rationale for dismissing Salazar's breach-of-contract claims on this theory has not changed, and Salazar has given the Court no new facts to change its legal analysis of the Merit System Ordinance.  Moreover, even if the

Supreme Court of New Mexico concluded that Chavez' and Berry's public statements regarding Salazar's employment violated § 2 of the Merit System Ordinance and breached Salazar's contract of employment, the Court concludes that Salazar's claim would nonetheless fail.  To state a claim for breach of contract, Salazar must allege "the existence of the contract, breach of the contract, causation, and damages."  Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp. 2d at 1247.  In this matter, it would appear that Salazar has failed to establish the causation and damages portion of his breach-of-contract claim.  If, for example, Chavez' and Berry's conduct caused Salazar to wrongfully lose his job as a bus driver, the Personnel Board twice ordered him reinstated with back pay and benefits, thereby demonstrating that Chavez and Berry's conduct caused him no harm.  See First Amended Complaint ¶ 23, at 9; id. ¶¶ 56-57, at 14.  On the other hand, if the damage which Salazar alleges is that he never received back pay and benefits, Salazar fails to allege facts in the First Amended Complaint linking Chavez and Berry's conduct to Salazar not receiving his award.  Accordingly, the Court determines that Salazar has failed to state a breach-of-contract claim against Chavez and Berry for their public statements regarding Salazar, and will grant Chavez and Berry judgment on the pleadings for this allegation.

> **B.**    **THE CITY OF ALBUQUERQUE, BUT NOT THE OTHER DEFENDANTS, PLAUSIBLY BREACHED SALAZAR'S EMPLOYMENT CONTRACT BY FAILING TO PAY HIM BACK PAY AND BENEFITS.**

In the First Amended Complaint, Salazar alleges that the Personnel Board twice ordered the City of Albuquerque to pay him back pay and benefits.  First, on April 12, 2009, following Salazar's initial termination, the Personnel Board ordered the City of Albuquerque to pay Salazar back pay and benefits, because it failed to demonstrate that Salazar was terminated for cause.

See First Amended Complaint ¶ 23, at 5.  Second, following Salazar's appeal of his termination

from his position as a garbage truck driver, the facts in the First Amended Complaint indicate

that the Personnel Board adopted the hearing officer's recommendation that Salazar receive back

pay and benefits, although the Personnel Board may have not allowed Salazar to recover back

pay following his reinstatement to the bus driver position until he returned to work.  See First

Amended Complaint ¶¶ 51, 56-57, at 13-14 (alleging that the hearing officer recommended

awarding Salazar back pay and benefits, and that the Personnel Board ultimately adopted a

modified version of the hearing officer's findings of fact and conclusions of law; whether

Fourney's additional language that Salazar would not receive back pay and benefits after April

23, 2011, until he reported for work was included in the Personnel Board's order is unclear, as

Salazar alleges that the modified version was adopted after elimination of  "a few of the more

offensive 'conclusions'").  Salazar maintains that he is yet to receive back pay.  See First

Amended Complaint ¶ 31, at 3; Tr. at 44:1-6 (Livingston).

The Merit System Ordinance requires the City of Albuquerque to administer reasonable

provisions establishing "an active personnel board composed of individuals not employed by the

city."  Art. X § 1(e).  The Court has been unable to find case law interpreting this provision, but

it would appear to the Court that "reasonable provisions," at a minimum, would empower the

Personnel Board to issue orders by which the City of Albuquerque must either abide or appeal.

Salazar alleges that the Defendants violated Personnel Board orders, and, construing all

reasonable inferences in Salazar's favor, he has stated that the City of Albuquerque plausibly

failed to ever pay him back pay in accordance with the Personnel Board's orders.  Additionally,

if the City of Albuquerque has persisted in refusing to pay Salazar back pay for over three years,

in violation of the Personnel Board's orders, then such ongoing disregard for Salazar's rights may be evidence that the City of Albuquerque intentionally breached Salazar's employment contract, with an intent to deprive him of the benefit thereof.  See Sanders v. Fed-Ex Ground Package Sys., 2008-NMSC-040, ¶ 7, 114 N.M. 449, 188 P.2d 1200 ("The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party.").

On the other hand, the facts alleged in the First Amended Complaint are insufficient to state a breach-of-contract claim against the other Defendants.  Rather than "arrogating to themselves the ability to do or say whatever they wanted," it appears as though Chavez, Berry, Perry, Yermal, Payne, and Rizzieri ultimately followed the Personnel Board's order to reinstate Salazar as a bus driver, see First Amended Complaint ¶ 48, at 12, and Salazar has not alleged that these individual Defendants were responsible for Salazar's failure to receive back pay and benefits.  It appears as though Salazar's contract was with the City of Albuquerque, and, therefore, the Court cannot conclude how these Defendants' actions breached the City of Albuquerque's contractual duties to Salazar.  See First Amended Complaint ¶ 10, at 3 (alleging that Salazar was employed with the City of Albuquerque").  Summary judgment may be fatal for Salazar on this claim, as the City of Albuquerque contends that it has paid Salazar back pay in accordance with the Personnel Board's orders.  See Tr. at 42:1-5 (French)("After the hearing on December 16, 2011 . . . Mr. Salazar received over a-hundred-thousand dollars in back pay from the City.").  At this point, however, when ruling on a motion for judgment on the pleadings, that fact is not before the Court.  Accordingly, the Court will not grant the City of Albuquerque judgment on the pleadings on Salazar's breach-of-contract claim in Count IV.

The Court, therefore, grants the Defendants judgment on the pleadings in their favor on Salazar's procedural due-process claim in Count I, because he has waived his right for the Court to review the administrative and state court procedures applicable for review of his termination from employment with the City of Albuquerque by failing to take advantage of those procedures, and because he voluntarily relinquished his property interest in continued employment by failing to report for work.  The Court grants the Defendants judgment on the pleadings on Salazar's tort claims in Counts III, V, and VI, because the NMTCA does not waive the Defendants' immunity for the actions alleged therein, except for Payne's post-employment statements.  The Court will not dismiss Count III against Payne, to the extent it is based on his post-employment statements, but the Court will grant Payne judgment on the pleadings on Counts V and VI, because Salazar has failed to allege sufficient facts which, if true, establish that he plausibly intentionally inflicted emotional distress or participated in a civil conspiracy against Salazar.  The Court grants judgment on the pleadings to the Defendants, except the City of Albuquerque, on Salazar's breach-of-contract and breach-of-the-duty-of-good-faith-and-fair-dealing in Count IV, because Salazar has failed to establish that he suffered damages from Chavez and Berry's violation of the Merit System Ordinance, and he has failed to establish that Chavez' Berry's, Perry's, Yermal's, Payne's, and Rizzieri's actions breached his employment contract.  The Court will not dismiss or grant judgment on the pleadings to the City of Albuquerque on Count IV, because Salazar has alleged that the City of Albuquerque plausibly violated his employment contract in bad faith by failing to abide by the Personnel Board's orders that he receive back pay and benefits.

**IT IS ORDERED** that the Defendants City of Albuquerque, Richard Berry, and Greg Payne's Motion to Dismiss Portions of First Amended Complaint (Doc. 48), filed July 9, 2012 (Doc. 52), is granted in part and denied in part. The Court grants the Defendants City of Albuquerque, Richard Berry, Robert J. Perry, Vincent Yermal, Martin Chavez, Greg Payne, and Bruce Rizzieri judgment on the pleadings in their favor on Plaintiff Paul Salazar's procedural due-process claim, his common-law tort claims of defamation and intentional infliction of emotional distress, his breach-of-contract claim, and his civil conspiracy claim, and dismisses these claims with prejudice. The Court will not dismiss for Salazar's defamation claim in Count III against Defendant Greg Payne based on his post-employment statements, and Salazar's breach-of-contract claims and breach-of-the-duty-of-good-faith-and-fair-dealing in Count IV against Defendant the City of Albuquerque based on the City of Albuquerque's failure to pay him back pay and benefits in accordance with orders from the Personnel Board.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul Livingston
Placitas, New Mexico

      *Attorney for the Plaintiff*

Paula Forney
French & Associates, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendants City of Albuquerque; Martin Chavez former Mayor;*
        *Richard J. Berry, Mayor; Greg Payne, former Transit Department Director,*
        *Robert Perry, Chief Administrative Officer; Vincent Yermal, Director of*
        *Human Resources; and Bruce Rizzieri, Transit Department Director*

Rebecca E. Wardlaw
City Attorney's Office
Albuquerque, New Mexico

   *Attorneys for Defendants City of Albuquerque; Martin Chavez former Mayor;*
       *Richard J. Berry, Mayor*

Stephen G. French
French & Associates, P.C.
Albuquerque, New Mexico

   *Attorneys for Defendant Greg Payne, former Transit Dept. Director*