## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PAUL SALAZAR,

       Plaintiff,

vs.                                          No. CIV 10-0645 JB/ACT

CITY OF ALBUQUERQUE,
RICHARD BERRY, Mayor,
ROBERT J. PERRY, Chief Administrative Officer,
VINCENT YERMAL, Director of Human Resources,
MARTIN CHAVEZ, former Mayor,
GREG PAYNE, former Transit Dept. Director, and
BRUCE RIZZIERI, Transit Dept. Director,

       Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment, filed October 31, 2012 (Doc. 77)("MSJ"). The Court held a hearing on August 20, 2013. The primary issues are: (i) whether Plaintiff Paul Salazar acted dilatory in not conducting discovery; (ii) whether the Plaintiff's Counsel's Declaration Under Penalty of Perjury, filed November 26, 2012 (Doc. 83-1)("Declaration"), states with specificity how additional discovery will rebut the MSJ; (iii) whether Salazar received an adequate name-clearing hearing; (iv) whether Salazar can show that the Defendants' alleged defamatory statements occurred in the course of his termination or foreclosed employment opportunities; (v) whether there is a constitutional cause-of-action for defamation; and (vi) whether the Court should retain supplemental jurisdiction over Salazar's state law claims after dismissing all of his federal

---

[1]The Court entered an Order, filed September 30, 2013 (Doc. 114), granting in part and denying in part the Motion for Summary Judgment, filed October 31, 2012 (Doc. 77), and stating: "The Court will . . . at a later date issue a memorandum opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

claims.  Because Salazar was dilatory in not conducting discovery, because the Declaration does not adequately specify how additionally discovery will help Salazar rebut the MSJ, because Salazar received an adequate name-clearing hearing to defeat his stigma-plus claim, because Salazar has not shown that the Defendants' statements were made in the course of his termination or foreclosed employment opportunities, because there is no constitutional defamation cause-of-action, and because the Court should not exercise supplemental jurisdiction over Salazar's state law claims, the Court will grant the MSJ in part and deny it in part.  The Court will grant the MSJ as to Salazar's stigma-plus claim.  The Court will decline to exercise supplemental jurisdiction over Salazar's remaining state law claims and will dismiss them without prejudice.

**FACTUAL BACKGROUND**

On September 23, 2004, Salazar was indicted for criminal sexual penetration of a child under thirteen.  See Defendants Memorandum in Support of Motion for Summary Judgment ¶ 31, at 8, filed October 31, 2012 ("MSJ Memo.")(setting forth this fact); Grand Jury Indictment, State v. Salazar, No. D-1329-CR-04-0423, (N.M.D.-Ct. Sept. 23, 2004), filed October 31, 2012 (Doc. 78-8); Plaintiff's Response to Defendant's Motion for Summary Judgment at 1-12, filed November 26, 2012 (Doc. 83)("Response")(not disputing this fact).[2]  On October 11, 2006,

---

[2]The local rules state:

The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.  The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion.  Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.

Salazar entered a no contest plea to a fourth degree felony: attempt to commit criminal sexual contact of a minor child, under the age of thirteen.  See MSJ Memo. ¶ 32, at 8 (setting forth this fact); Plea and Disposition Agreement, State v. Salazar, No. D-1329-CR-2004-0423 (N.M.D.-Ct. Oct. 11, 2006), filed October 31, 2012 (Doc. 78-8)("Plea Agreement"); Response at 1-12 (not disputing this fact).  On October 11, 2006, a judgment and order of conditional discharge was

_____

D.N.M.LR-Civ. 56.1(b).   The local rules regarding summary judgment thus require the responding party to "specifically controvert[]" the fact, or else the fact is deemed admitted. D.N.M.LR-Civ. 56.1(b).  Salazar does not respond to the material facts that the Defendants set forth in the MSJ Memo., nor does Salazar submit evidence to controvert the facts.  See Response at 1-12.  The Court, therefore, deems the facts that the Defendants set forth in the MSJ Memo. as undisputed, and will cite to the Response as not disputing these facts.

In his Response, Salazar asserts a number of facts.  See Response ¶¶ 1-18, at 1-4.  Salazar does not, however, refer to the "portions of the record upon which" he relies in asserting these facts.  D.N.M.LR-Civ. 56.1(b).  See Response ¶¶ 1-18, at 1-4.  In their Reply, and in accordance with local rules, the Defendants address each of these asserted facts by admitting them or disputing them.  See Defendants Reply in Support of Motion for Summary Judgment ¶¶ 1-18, at 4-6, filed November 29, 2012 (Doc. 86)("Reply").   See also D.N.M.LR-Civ. 56.1(b)("The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection.").  Of Salazar's asserted facts, the only facts that the Defendants admit either correspond with a fact asserted in the MSJ Memo. or deal with the proceeding before the Court -- such as when the Amended Complaint was filed, when a motion to dismiss was filed, the Court's opinion ruling on a motion to dismiss, and an electronic mail transmission exchange between counsel.  See Response ¶¶ 1-18, at 1-4; Reply ¶¶ 1-18, at 4-6.  Because Salazar has not supported his asserted facts with evidence and has not followed the local rules, the Court will consider only the facts that the Defendants admit in their Reply.  See Tapia v. City of Albuquerque, No. Civ. 13-0206 JB/ACT, 2014 WL 2757519, at *1 n.1 ("Accordingly, except as to those two facts that the [defendant] admitted, the Plaintiffs have not supported their facts with competent evidence, and the Court will not, therefore, view them as facts for summary judgment purposes.").

Salazar's admitted "facts" dealing with the proceedings before this Court will be discussed in the Procedural Background section and not the factual section.  The Court will also address the electronic mail transmission in the Procedural Background section.  Salazar's asserted fact, concerning the electronic mail transmission, states that the day before a hearing on September 20, 2012, counsel for the Defendants sent Salazar's counsel an electronic mail transmission stating: "In case you're wondering, I am representing the defendants."  Response ¶ 14, at 4.  Salazar uses this asserted fact to argue that the Court should defer considering the MSJ and extend the discovery deadline.  See Response at 8.  Because the asserted fact does not concern the facts underlying this case, but instead concerns a procedural dispute, the Court will consider the fact in the Procedural Background section but not the factual section.

entered.  See MSJ Memo. ¶ 33, at 8 (setting forth this fact); Judgment and Order of Conditional

Discharge, State v. Salazar, No. D-1329-CR-2004-0423 (N.M.D.-Ct. Oct. 11, 2006), filed

October 31, 2012 (Doc. 78-8); Response at 1-12 (not disputing this fact).  On February 27, 2007,

an officer from the State Probation and Parole Division delivered a notice to the City of

Albuquerque Transit Department, informing the Department that Salazar was a convicted sex

offender and that he had been adjudicated guilty of attempted sexual conduct of a minor.  See

MSJ Memo. ¶ 34, at 8-9 (setting forth this fact); Affidavit of Annette Paez ¶ 10, at 3, filed

October 31, 2012 (Doc. 78-5)("Paez Aff."); Letter from Chris James, Probation-Parole Officer,

to Employer (delivered Feb. 27, 2007), filed October 31, 2012 (Doc. 78-5)("Probation Letter");

Response at 1-12 (not disputing this fact).

On July 6 or 9,[3] 2007, the Transit Department terminated Salazar from his position as a

bus driver for the city of Albuquerque.  See MSJ Memo. At ¶ 1, 3 (setting forth this fact);

Affidavit of Vincent A. Yermal, Director of Human Resources for the City of Albuquerque ¶ 7,

at 2, filed October 31, 2012 (Doc. 78-1)("Yermal Aff.");  Interoffice Memorandum from Annette

S. Paez, Operations Division Manager, to Paul Salazar, Motor Coach Operator at 1 (delivered

July 6, 2007), filed October 31, 2012 (Doc. 78-1)("Paez Memo.");  Response at 1-12 (not

disputing this fact).  On July 17, 2007, Salazar appealed his termination.  See MSJ Memo. ¶ 1,

---

[3]The Defendants' asserted fact states that Salazar was terminated July 9, 2007.  See MSJ Memo. ¶ 1, at 3.  To support this fact, the Defendants refer the Court to a memorandum from Annette Paez to Salazar, dated July 6, 2007, which states that Paez recommends that Salazar "be terminated effective, Friday, July 6, 2007."  Interoffice Memorandum from Annette S. Paez, Operations Division Manager, to Paul Salazar, Motor Coach Operator at 1 (delivered July 6, 2007), filed October 31, 2012 (Doc. 78-1).  In Vincent Yermal's affidavit, however, Yermal, the Director of Human Resources for the City of Albuquerque, states that Salazar was terminated on July 9, 2007.  See Affidavit of Vincent A. Yermal, Director of Human Resources for the City of Albuquerque ¶ 7, at 2, filed October 31, 2012 (Doc. 78-1).  Because of the discrepancies between Yermal's affidavit and Paez' memorandum, the Court has modified the Defendants' asserted fact to state that Salazar was terminated on either July 6 or 9, 2007; the difference is incidental to the determination of the Motion.

at 3 (setting forth this fact); Yermal Aff. ¶ 8, at 2; Letter from Paul Livingston to Dr. Bruce Perlman, Chief Administrative Officer for the City of Albuquerque at 1 (delivered July 17, 2007), filed October 31, 2012 (Doc. 78-1); Response at 1-12 (not disputing this fact).  On June 11, 2008, the City Personnel Board adopted the Personnel Hearing Officer's recommendations, reinstating Salazar to his position as a bus driver.  See MSJ Memo. ¶ 1, at 3 (setting forth this fact); Yermal Aff. ¶ 9, at 2; In re Paul Salazar, PB-07-08 (Albuquerque Pers. Bd. June 11, 2008)(adopting Personnel Hearing Officer's recommendation), filed October 31, 2012 (Doc. 78-1)("First Board Decision"); First Amended Complaint for Violation of Statutory, Contractual, and Constitutional Rights ¶ 16, at 4, filed June 29, 2012 (Doc. 48)("Amended Complaint"); Response at 1-12 (not disputing this fact).

The City of Albuquerque appealed the Personnel Board's findings to State District Court, pursuant to rule 1-074 of the New Mexico Rules of Civil Procedure.  See MSJ Memo. ¶ 2, at 3 (setting forth this fact); Yermal Aff. ¶ 10, at 2; City of Albuquerque v. Salazar, No. CV 2008-06817, Memorandum Opinion and Order (N.M.D.-Ct. Jan. 7, 2009), filed October 31, 2012 (Doc. 78-4)("Huling Decision"); Response at 1-12 (not disputing this fact).  On January 7, 2009, the Honorable Valerie A. Huling, District Judge, Div. XII, Second Judicial District Court, State of New Mexico, remanded the case to the Personnel Board to consider, and enter findings and conclusions, regarding whether the City of Albuquerque had just cause to terminate Salazar's employment regardless of the predetermination hearing's due-process violations.  See MSJ Memo. ¶ 2, at 3-4 (setting forth this fact); Huling Decision at 1; Yermal Aff. ¶ 10, at 2; Amended Complaint, ¶ 22, at 5; Response at 1-12 (not disputing this fact).  On February 11, 2009, the Personnel Board remanded the case to the Personnel Hearing Officer.  See MSJ Memo. ¶ 3, at 4 (setting forth this fact); Yermal Aff. ¶ 11, at 2; Response at 1-12 (not disputing this fact).  On

July 2, 2009, the Personnel Hearing Officer found that the City of Albuquerque did not meet its burden of proof to demonstrate that Salazar was discharged for just cause, and the Personnel Hearing Officer reaffirmed Salazar's reinstatement.  See MSJ Memo. ¶ 4, at 4 (setting forth this fact); Yermal Aff. ¶ 12, at 2-3; In re Paul Salazar, (Remand) PB 07-08 (Albuquerque Personnel Hearing Officer July 2, 2009), filed October 31, 2012 (Doc. 78-1)("Hearing Officer's Second Recommendations"); Response at 1-12 (not disputing this fact).  On August 12, 2009, the Personnel Board upheld the Personnel Hearing Officer's recommendation to reinstate Salazar. See MSJ Memo. ¶ 5, at 4 (setting forth this fact); Yermal Aff. ¶ 13, at 3; Amended Complaint ¶ 23 at 5; Response at 1-12 (not disputing this fact).

On August 31, 2009, the City of Albuquerque filed a notice of appeal to the state District Court, pursuant to rule 1-074 of the New Mexico Rules of Civil Procedure.  See MSJ Memo. ¶ 6, at 4 (setting forth this fact); Yermal Aff. ¶ 14, at 3; City of Albuquerque v. Salazar, No. D-202-CV-200910465, Notice of Lower Court Appeal (N.M.D.-Ct. Aug. 31, 2009)(caselookup.nmcourts.gov);  Amended Complaint ¶ 24, at 6; Response at 1-12 (not disputing this fact).  On August 16, 2010, the City of Albuquerque withdrew its appeal.  See MSJ Memo. ¶ 7, at 4 (setting forth this fact); City of Albuquerque v. Salazar, No. D-202-CV-200910465, Motion to Withdraw   (N.M.D.-Ct. Aug. 16, 2009)(caselookup.nmcourts.gov); Response at 1-12 (not disputing this fact).  On August 28, 2010, the City of Albuquerque reinstated Salazar to a position as a bus driver with the Transit Department.  See MSJ Memo. ¶ 8, at 4 (setting forth this fact); Yermal Aff. ¶ 15, at 3; City of Albuquerque Personnel Action: Rehire, filed October 31, 2012 (Doc. 78-1); Response at 1-12 (not disputing this fact).  On August 30, 2010, the City of Albuquerque gave Salazar notice to appear for a Commercial

Driver's License ("CDL") physical.  See MSJ Memo. ¶ 9, at 4 (setting forth this fact); Yermal

Aff. ¶ 16, at 3; Amended Complaint ¶ 34, at 9; Response at 1-12 (not disputing this fact).

On September 9, 2010, Salazar was administratively transferred to the position of Clean

City Operator with the Solid Waste Management Department ("Solid Waste"), and was ordered

to report to work at Solid Waste on September 13, 2010.  See MSJ Memo. ¶ 10, at 4-5 (setting

forth this fact); Yermal Aff. ¶ 17, at 3; Interoffice Memorandum from David S. Campbell, Chief

Administrative Officer, to Paul Salazar (delivered Sept. 9, 2010), filed October 31, 2012 (Doc.

78-2); Interoffice Memorandum from Eugene J. Moser, Director of Human Resource

Department, to David S. Campbell, Chief Administrative Officer (delivered Sept. 9, 2010), filed

October 31, 2012 (Doc. 78-2); Amended Complaint ¶ 36, at 9; Response at 1-12 (not disputing

this fact).  On September 13, 2010, through his attorney, Salazar declined the transfer to Solid

Waste.  See MSJ Memo. ¶ 11, at 5 (setting forth this fact); Yermal Aff. ¶ 18, at 3; Letter from

Paul Livingston to David Campbell, Chief Administrative Officer (delivered Sept. 13, 2010),

filed October 31, 2012 (Doc. 78-2); Amended Complaint ¶ 39, at 10; Response at 1-12 (not

disputing this fact).  On September 13, 2010, the City of Albuquerque delivered a notice to

Salazar to appear for work at Solid Waste by September 15, 2010.  See MSJ Memo. ¶ 12, at 5

(setting forth this fact); Letter from Eugene J. Moser, Director Human Resources, to Paul Salazar

(delivered Sept. 13, 2010), filed October 31, 2012 (Doc. 78-2); Amended Complaint ¶ 40, at 10;

Response at 1-12 (not disputing this fact).  On September 15, 2010, Salazar failed to appear for

work at either the Transit Department or Solid Waste.  See MSJ Memo. ¶ 13, at 5 (setting forth

this fact); Yermal Aff. ¶ 19, at 3; Response at 1-12 (not disputing this fact).  On September 15,

2010, the City of Albuquerque's motion to dismiss the state court case was granted.  See MSJ

Memo. ¶ 14, at 5 (setting forth this fact); City of Albuquerque v. Salazar, No. D-202-CV-

200910465 (N.M.D.-Ct. Sept. 15, 2010)(caselookup.nmcourts.gov); Response at 1-12 (not disputing this fact).

On September 20, 2010, the City of Albuquerque, through Solid Waste, gave Salazar notice of a pre-determination hearing, which was scheduled for September 23, 2010.  See MSJ Memo. ¶ 15, at 5 (setting forth this fact); Yermal Aff. ¶ 22, at 4; Interoffice Memorandum from Ismael Montanez, City of Albuquerque Assistant Superintendent, Human Resources, to Paul Salazar, Clean City Operator, Solid Waste (delivered Sept. 20, 2010), filed October 31, 2012 (Doc. 78-2); Amended Complaint ¶¶ 42-43, at 11; Response at 1-12 (not disputing this fact).  On September 27, 2010, the City of Albuquerque terminated Salazar's employment with Solid Waste and the City of Albuquerque.  See MSJ Memo. ¶ 16, at 5 (setting forth this fact); Yermal Aff. ¶ 23, at 4; Interoffice Memorandum from Ismael Montanez, Assistant Superintendent, Human Resources, to Paul Salazar, Clean City Operator, Solid Waste, (delivered Sept. 27, 2010), filed October 31, 2010 (Doc. 78-2); Response at 1-12 (not disputing this fact).  On October 7, 2010, Salazar appealed that termination.  See MSJ Memo. ¶ 17, at 5 (setting forth this fact); Yermal Aff. ¶ 24, at 4; Letter from Paul Livingston to David Campbell, Chief Administrative Officer, and Eugene Moser, Human Resources Officer (delivered Oct. 7, 2010), filed October 31, 2012 (Doc. 78-2); Amended Complaint ¶ 45, at 11; Response at 1-12 (not disputing this fact). The hearing before the Personnel Hearing Officer, regarding Salazar's termination from Solid Waste, began on December 13, 2010, and continued on December 16, 2010.  See MSJ Memo. ¶ 18, at 6 (setting forth this fact); Yermal Aff. ¶ 25, at 4; Notice of Hearing, Case No. PB-10-19 (Oct. 20, 2010), filed October 31, 2012 (Doc. 78-2); Notice of Hearing (2nd Day), Case No. PB-10-19 (Dec. 14, 2010), filed October 31, 2012 (Doc. 78-2); Amended Complaint ¶¶ 45-46, at 11; Response at 1-12 (not disputing this fact).

On April 12, 2011, the City of Albuquerque ordered Salazar to return to work at the Transit Department.  See MSJ Memo. ¶ 19, at 6 (setting forth this fact); Yermal Aff. ¶ 26, at 4; Letter from Mary L. Scott, Deputy Director, Human Resources, to Paul Salazar (delivered April 12, 2011), filed October 31, 2012 (Doc. 78-3)("Notice of Reinstatement"); Response at 1-12 (not disputing this fact).   On April 23, 2011, Salazar failed to report to work at the Transit Department.  See MSJ Memo. ¶ 20, at 6 (setting forth this fact); Yermal Aff. ¶ 27, at 4; Response at 1-12 (not disputing this fact).   On October 8, 2011, the Personnel Hearing Officer made recommendations to the Personnel Board regarding Salazar's termination from Solid Waste.  See MSJ Memo. ¶ 21, at 6 (setting forth this fact); Yermal Aff. ¶ 28, at 4; In re Paul Salazar, PB-10-19 (Pers. Hearing Off. Oct. 8, 2011)(recommendations for Personnel Board), filed October 31, 2012 (Doc. 78-3)("Hearing Officer's Third Recommendations"); Amended Complaint ¶ 50, at 12; Response at 1-12 (not disputing this fact).   On December 16, 2011, the Personnel Board adopted those recommendations, with modifications, and entered its own findings and conclusions.  See MSJ Memo. ¶ 22, at 6 (setting forth this fact); Yermal Aff. ¶ 29, at 5; In re Paul Salazar, PB-07-08 (Albuquerque Pers. Bd. Dec. 16, 2011)(adopting and modifying Personnel Hearing Officer's recommendation), filed October 31, 2013 (Doc. 78-3); Amended Complaint ¶ 53, at 13; Response at 1-12 (not disputing this fact).   On January 17, 2012, Salazar appealed the Personnel Board's decision to the state district court.  See MSJ Memo. ¶ 23, at 6 (setting forth this fact); City of Albuquerque v. Salazar, No. D-202-CV-2012-0617, Administrative Appeal (N.M.D.-Ct. Jan. 17, 2012)(caselookup.nmcourts.gov); Response at 1-12 (not disputing this fact).

On February 6, 2012, the City of Albuquerque gave Salazar notice to report for a CDL physical and drug screening to return to work at the Transit Department.  See MSJ Memo. ¶ 24,

at 6 (setting forth this fact); Yermal Aff. ¶ 30, at 5; Interoffice Memorandum from Annette S. Paez, Operations Division Manager, to Paul Salazar, Motor Coach Operator (delivered Feb, 6, 2012), filed October 31, 2012 (Doc. 78-3); Paez Aff. ¶ 5, at 2; Interoffice Memorandum from Annette S. Paez, Operations Division Manager, to Bruce Rizzieri, Director, Transit Department (delivered March 26, 2012), filed October 31, 2012 (Doc. 78-5)("March 26 Paez Memo."); Response at 1-12 (not disputing this fact).  Salazar failed to appear and was given a notice of a pre-determination hearing.  See MSJ Memo. ¶ 25, at 6 (setting forth this fact); Yermal Aff. ¶ 31, at 5; Paez Aff. ¶ 7, at 2; Response at 1-12 (not disputing this fact).  A pre-determination hearing was conducted on February 24, 2012, and Salazar appeared through his attorney.  See MSJ Memo. ¶ 25, at 6-7 (setting forth this fact); Paez Aff. ¶ 6, at 2; Yermal Aff. ¶ 32, at 5; March 26 Paez Memo. at 1; Response at 1-12 (not disputing this fact).  On March 26, 2012, the hearing officer's report and recommendation from the pre-determination hearing was provided to the Director of Transit, recommending that Salazar be terminated, and the Director of Transit accepted the recommendation and terminated Salazar on March 28, 2012.  See MSJ Memo. ¶ 25, at 7 (setting forth this fact); Yermal Aff. ¶ 33, at 5; Paez Aff. ¶ 6 at 2; March 26 Paez Memo. at 1-6; Response at 1-12 (not disputing this fact).  Salazar did not appeal his March 28, 2012, termination.  See MSJ Memo. ¶ 27, at 7 (setting forth this fact); Yermal Aff. ¶ 34, at 5; Paez Aff. ¶ 7, at 2; Response at 1-12 (not disputing this fact).

On May 2, 2012, the Honorable Alan Malott, District Judge, Div. XV, Second Judicial District Court, State of New Mexico, dismissed Salazar's January 17, 2012, appeal for lack of prosecution, because Salazar failed to file the required statement of appellate issues pursuant to rule 1-074, N.M. Rules Ann. § 1-074.  See MSJ Memo. ¶ 26, at 7 (setting forth this fact); Salazar v. City of Albuquerque, No. D-202-CV-2012-00617, Order Granting Motion to Dismiss for Lack

of Prosecution (N.M.D.-Ct. May 2, 2012), filed October 31, 2012 (Doc. 78-6); Response at 1-12 (not disputing this fact).  Salazar did not petition for certiorari to review the dismissal for lack of prosecution by Judge Malott.  See MSJ Memo. ¶ 28, at 7 (setting forth this fact); Paul Salazar v. Albuquerque, City of, et.  al., New Mexico Courts: Case Look Up, https:// caselookup.nmcourts.gov/caselookup/app?component=cnLink&page=SearchResults&serserv= direct&session=T&sp=SD-202-CV-201200617 (last visited Sept. 29, 2014); Response at 1-12 (not disputing this fact).  Salazar was paid back wages and reinstated for his benefits from his initial termination in 2007, until April 23, 2011, when he failed to report to work.  See MSJ Memo. ¶ 29, at 7 (setting forth this fact); Yermal Aff. ¶ 35, at 5; Paez Aff. ¶ 8, at 2; Response at 1-12 (not disputing this fact).  Salazar was paid and reinstated with full seniority.  See MSJ ¶ 29, at 7 (setting forth this fact); Yermal Aff. ¶ 35, at 5; Paez Aff. ¶ 8, at 2; Response at 1-12 (not disputing this fact).  The Personnel Board held that the City of Albuquerque was not obligated to pay Salazar after April 23, 2011, because Salazar failed to report to work.  See MSJ ¶ 29, at 7; Yermal Aff. ¶ 36, at 5; Paez Aff. ¶ 9, at 2; In re Paul Salazar, PB-07-08, PB 10-19 (Albuquerque Pers. Bd. Dec. 16, 2011)(adopting and rejecting Personnel Hearing Officer's recommendations), filed October 31, 2012 (Doc. 78-3)("Third Board Decision"); Affidavit of Sarah Williamson ¶¶ 9-11, at 2, filed October 31, 2012 (Doc. 78-7)("Williamson Aff."); Response at 1-12 (not disputing this fact).  Salazar was paid back wages only through August, 2010, because he did not submit a statement of outside earnings.  See MSJ Memo. ¶ 30, at 7-8 (setting forth this fact); Yermal Aff. ¶ 37, at 6; Notice of Reinstatement at 1; City of Albuquerque Personnel Board Rules of Procedure for Appeals of Disciplinary Actions ¶ 13.B, at 7, filed October 31, 2012 (Doc. 78-3); Response at 1-12 (not disputing this fact).  Salazar was aware of his obligation to provide this statement, because he had previously sworn, in an affidavit, to his outside earnings, which were

used to calculate the back pay awarded to him.  See MSJ Memo. ¶ 30, at 8 (setting forth this fact); Yermal Aff. ¶ 38, at 6; Notice of Reinstatement at 1; Affidavit of Paul Salazar ¶¶ 2-5, at 1, filed October 31, 2012 (Doc. 78-3); Response at 1-12 (not disputing this fact).

Salazar's personnel record with the City of Albuquerque has been purged of the disciplinary actions resulting from his initial termination and his transfer to Solid Waste, which resulted in his second termination.  See MSJ Memo. ¶ 35, at 9 (setting forth this fact); Yermal Aff. ¶39, at 6; Response at 1-12 (not disputing this fact).  The action resulting in Salazar's final termination has not been purged.  See MSJ Memo. ¶ 35, at 9 (setting forth this fact); Yermal Aff. ¶ 39, at 6; Response at 1-12 (not disputing this fact).

The City of Albuquerque did not employ Defendants Greg Payne and Martin Chavez on December 1, 2009.  See MSJ Memo. ¶ 36, at 9 (setting forth this fact); Yermal Aff. ¶ 40, at 6; Affidavit of Greg Payne ¶ 2, at 1, filed October 31, 2012 (Doc. 78-9)("Payne Aff."); Response at 1-12 (not disputing this fact).  After Payne left the office of Director of Transit, he made the statement:

> There is no question if [Salazar] drives a bus he will have contact with children.  The public would recoil if we hired someone like this.  It's almost as if the crime didn't happen.  I don't know how someone could reach this conclusion unless they are in a bubble and detached from reality.

Amended Complaint ¶ 20, at 5.  See MSJ Memo. ¶ 37, at 9 (setting forth this fact); Payne Aff. ¶ 19, at 3; Response at 1-12 (not disputing this fact).  Payne also made the statement:

> I think the personnel board is absolutely crazy to say we need to bring this individual back, put him behind the wheel of a bus and give him $100,000.  That's nuts. . . .  If Mayor Berry was forced to re-hire [Salazar], he should have given him a position where he's not around children.

Amended Complaint ¶ 27, at 7.  See MSJ ¶ 38, at 9 (setting forth this fact); Payne Aff. ¶ 20, at 3; Response at 1-12 (not disputing this fact).  Payne made both of these statements, because he was

the official who terminated Salazar.  See MSJ Memo. ¶ 38, at 9 (setting forth this fact); Payne

Aff. ¶ 20, at 3; Response at 1-12 (not disputing this fact).  Salazar's counsel threatened Payne

that Salazar was going to file a lawsuit naming Payne as a defendant.  See MSJ Memo. ¶ 39, at 9

(setting forth this fact); Payne Aff. ¶ 22, at 3; Response at 1-12 (not disputing this fact).  Payne

was aware of the City Attorney office's decision to appeal the Personnel Board decision rendered

in 2008, and Payne had authorized the City Attorney's office to appeal the decision.  See MSJ

Memo. ¶ 40, at 9 (setting forth this fact); Payne Aff. ¶ 13, at 2; Response at 1-12 (not disputing

this fact).

## PROCEDURAL BACKGROUND

On June 8, 2010, Salazar filed the Complaint for Violations of Statutory, Contractual, and

Constitutional Rights, filed June 8, 2010 (Doc. 1)("Complaint").   In the Complaint, Salazar

alleged six Counts against the City of Albuquerque, Chavez, Defendant Richard Berry, and

Payne, including (i) violations of Salazar's right to procedural due process; (ii) violations of

Salazar's right to substantive due process;[4] (iii) defamation per se; (iv) malicious abuse of

process; (v) breach of employment contract, and breach of duty of good faith and fair dealing;

and (vi) punitive damages.  See Complaint ¶¶ 32-63, at 8-13.  Salazar alleges that Defendants

wrongly terminated his employment as a City of Albuquerque bus driver and that the Defendants

made defamatory statements about him by repeatedly calling him a sex offender and child

molester.  See Complaint ¶¶ 15-20, at 4-5; id. ¶¶ 24-33, at 6-9.

---

[4]While Salazar and the Defendants repeatedly refer to Salazar's claim as a right to
substantive due process, his stigma-plus claim is more correctly characterized as a procedural
due process right.  See Brown v. Montoya, 662 F.3d 1152, 1172 n.16 (10th Cir. 2011)(noting
that denial of name-clearing hearing in connection with stigmatizing statement is procedural due
process violation and not substantive due process violation).

1.      <u>**First and Second Motions to Dismiss**</u>.

On August 10, 2010, the City of Albuquerque and Berry, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, filed the Defendants' Motion to Dismiss Plaintiff's Complaint for Violations of Statutory, Contractual, and Constitutional Rights, filed August 10, 2010 (Doc. 3)("MTD").   On March 28, 2011, the Court granted in part and denied in part the MTD. <u>See</u> <u>Salazar v. City of Albuquerque</u>, 776 F. Supp. 2d 1217, 1251-52 (D.N.M. 2011)(Browning, J.).   The Court dismissed Salazar's procedural due-process claim, finding that the Defendants' appeal of the Personnel Board's decision did not violate his procedural due process rights.   <u>See</u> 776 F. Supp. 2d at 1238-39.   The Court dismissed Salazar's tort claims, except for his allegations based on Payne's post-employment comments, because the New Mexico Tort Claims Act, N.M. Stat. Ann. § 41-4-4, does not waive the Defendants' immunity for defamation and malicious abuse of process.   <u>See</u> 776 F. Supp. 2d at 1243-48. The Court dismissed Salazar's breach-of-employment-contract, and breach of the duty of good faith and fair dealing claims, because the Charter of the City of Albuquerque does not prohibit the Mayor from commenting on any matter of public concern involving an employment decision, because Salazar failed to demonstrate that the Charter of the City of Albuquerque was incorporated into his employment contract, and because the Defendants' appeal did not breach their duty of good faith and fair dealing.   <u>See</u> <u>Salazar v. City of Albuquerque</u>, 776 F. Supp. 2d at 1248-51.   The Court also dismissed Salazar's punitive damages claim, because punitive damages cannot be a stand-alone claim.   <u>See</u> 776 F. Supp. 2d at 1251.   The Court allowed Salazar's substantive due process claim to proceed, because the Court found that Salazar plausibly alleged that the Defendants violated his substantive due process rights by depriving him of his liberty interest in his employment as a bus driver.   <u>See</u> 776 F. Supp. 2d at 1240-42.

Salazar filed the Amended Complaint on June 29, 2012.  Salazar added Defendants Robert Perry, Vincent Yermal, and Bruce Rizzieri.  See Amended Complaint ¶¶ 3-1, at 2.  In the Amended Complaint, Salazar asserts that the City of Albuquerque wrongfully accused him of criminal conduct with his daughter, that the City of Albuquerque terminated him because of those false allegations, and that the City of Albuquerque's actions have damaged his reputation and his ability to work and earn a living wage.  See Amended Complaint ¶ 61, at 15.  Salazar contends that Eugene Moser and David Campbell were "fully aware that by transferring Paul Salazar to the Solid Waste Department they were violating the Personnel Board's orders" that Salazar be returned to work as a bus driver.  Amended Complaint ¶ 37, at 9.  Salazar also contends that the City of Albuquerque improperly added language to the findings of fact and conclusions of law in his case before the Personnel Board in December, 2011, including the language that "[t]he board further orders that grievant will not be entitled to back pay after April 23, 2011 when he refused to return to work at Transit, until he appears for work."  Amended Complaint ¶ 56, at 14.

The Amended Complaint re-alleges some of the same counts that the Court dismissed in the March 28, 2011, including: (i) violations of Salazar's right to procedural due process, (ii) defamation per se; and (iii) breach of Salazar's employment contract and breach of the duty of good faith and fair dealing.  See Amended Complaint ¶¶ 62-67, at 16-17; id. at ¶¶ 76-90 at 18-21.  Salazar asserted additional claims, including intentional infliction of emotional distress and civil conspiracy.  See Amended Complaint ¶¶ 91-101, at 21-23.

Salazar also reasserts the claim that the Defendant's violated his right to substantive due process.  See Amended Complaint ¶¶ 68-75, at 17-18.  Salazar alleges that, "[b]y asserting and reasserting stigmatizing claims of misconduct, immorality, and illegality of a kind that

effectively limits or precludes other employment, the Defendants have violated and continue to violate Mr. Salazar's right to substantive due process."  Amended Complaint ¶ 70, at 17.  Salazar contends that the "Defendants' abuse of power and defamatory actions against Paul Salazar will shock the conscience of the court and meet the U.S. Supreme Court's 'stigma plus' test for violations of substantive due process rights."  Amended Complaint ¶ 74, at 18.  Salazar asks the Court for "[c]ompensatory relief . . . [d]eclaratory, injunctive and equitable relief, including but not limited to reinstatement as a bus driver, expungement of the employment record, full back pay, sufficient front pay, benefits, and interest . . . [p]unitive and exemplary damages . . . [a]ttorney's fees and costs . . . [and] [s]uch other and further relief as the Court deems just." Amended Complaint at 23.

On July 9, 2012, the Defendants, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, filed Defendants City of Albuquerque, Richard Berry, and Greg Payne's Motion to Dismiss Portions of First Amended Complaint (Doc. 48), filed July 9, 2014 (Doc. 52)("2d MTD"), and Defendants City of Albuquerque, Richard Berry, and Greg Payne's Memorandum in Support of Motion to Dismiss Portions of First Amended Complaint (Doc. 48), filed July 9, 2012 (Doc. 53)("MTD Memo.").  In their MTD Memo., the Defendants assert that the Court "previously dismissed some of the same counts realleged in the First Amended Complaint."  MTD Memo. at 1 (citing Salazar v. City of Albuquerque, 776 F. Supp. 2d at 1217). The Defendants assert that the new facts which Salazar added to the Amended Complaint "do not clarify plaintiff's claims and do not make the claims any more legally cognizable."  MTD Memo. at 1-2.  The Defendants assert that the Court should dismiss Counts I, III, IV, V, and VI, and should dismiss the claims against the new Defendants, because Salazar has failed to state a claim for relief in those counts and against those parties.  See MTD Memo. at 2.  In the 2d MTD,

the Defendants did not move the Court to dismiss Count II -- Salazar's substantive due-process claim.  See 2d MTD ¶¶ 4-8, at 2.

On August 20, 2013, the Court issued a Memorandum Opinion and Order, dismissing Salazar's claims against the Defendants City of Albuquerque, Berry, Perry, Yermal, Chavez, Payne, and Rizzieri for procedural due process, common-law tort including defamation and intentional infliction of emotional distress, breach of contract, and civil conspiracy.  See Salazar v. City of Albuquerque, No. CIV 10-0645 JB/ACT, 2013 WL 5554185, at *50 (D.N.M. Aug. 20, 2013)(Browning, J.).  The Court did not dismiss Salazar's defamation claim in Count III against Payne based on his post-employment statements, and Salazar's breach-of-contract claims and breach-of-the-duty-of-good-faith-and-fair-dealing claim in Count IV against the City of Albuquerque, based on the City of Albuquerque's failure to pay Salazar back pay and benefits in accordance with orders from the Personnel Board.  See Salazar v. City of Albuquerque, 2013 WL 5554185, at *50.

2.    **The MSJ, Response, and Reply**.

While the 2d MTD was pending, the Defendants filed the MSJ and the MSJ Memo., urging the Court to grant summary judgment on Salazar's remaining claims and dismiss the Amended Complaint in its entirety.  See MSJ at 3.  The Defendants argue that Salazar's liberty interest claim fails to satisfy the necessary elements.  See MSJ ¶ 3, at 1.  The Defendants argue that, because the City of Albuquerque reinstated Salazar to his position as a bus driver, the "alleged deprivation of his liberty interests did not occur in the course of his termination," and that the Defendants provided Salazar with a name-clearing hearing.  MSJ ¶¶ 4-5, at 2.  The Defendants also argue that Chavez and Payne are entitled to qualified immunity for the statements they made during their employment, and that the individual Defendants are entitled to

qualified immunity, because the law was not clearly established to indicate that they were violating Salazar's liberty interest.  See MSJ ¶¶ 6-7, at 2.  The Defendants also contend that Payne's post-employment comments about Salazar are not defamatory, are absolutely privileged, and are statements of opinion.  See MSJ ¶ 8, at 2.

Regarding Salazar's contention that the Defendants infringed on Salazar's liberty interest, the Defendants argue that "because the City reinstated plaintiff to his position as a bus driver, the alleged deprivation of his liberty interests did not occur in the course of his termination." MSJ Memo. at 11.  The Defendants argue that the relevant facts for Salazar's liberty interest claim are undisputed: (i) the City of Albuquerque reinstated Salazar to his position as a bus driver for the Transit Department; (ii) the City of Albuquerque paid Salazar back wages and benefits from the time the City of Albuquerque initially terminated him until August, 2010, and the City of Albuquerque will pay Salazar back wages up to April 23, 2011, if he submits a statement of outside earnings; and (iii) Salazar did not perfect his appeal of the Personnel Board's finding in state district court.  See MSJ Memo. at 11.  The Defendants argue that, of the four elements for a liberty interest claim, the third requirement -- that "the statements must occur in the course of terminating the employee or must foreclose other employment opportunities" -- is lacking.  MSJ Memo. at 11-12.  The Defendants contend that the third element requires the defamation to occur in the course of the termination of the employee and that "[i]t is undisputed that [Salazar] was not ultimately terminated in conjunction with the defamatory statements." MSJ Memo. at 12.  The Defendants argue that Salazar "was terminated for not appearing for work on April 23, 2011, which had nothing to do with the alleged defamatory statements, which allegedly occurred in 2009 and 2010."  MSJ Memo. at 12.

The Defendants discuss the Court's March 12, 2011, Opinion, in which the Court stated that reinstatement to a different position "does not necessarily defeat a liberty-interest claim." MSJ Memo. at 12 (quoting Salazar v. City of Albuquerque, 776 F. Supp. 2d at 1240). The Defendants contend that, although the City of Albuquerque initially offered Salazar a pay increase to work as a Clean City Operator assigned to Solid Waste, the City of Albuquerque has since offered to reinstate Salazar to his previous position as a bus driver in the Transit Department, and has given Salazar back pay, benefits, and reinstated his seniority. See MSJ Memo. at 13. The Defendants argue that "the City satisfied the Court's concern about reinstatement to a position other than the one from which he was terminated." MSJ Memo. at 13. The Defendants argue that, when Salazar failed to report for work at the Transit Department, the City of Albuquerque terminated him again, and Salazar did not appeal this final determination. See MSJ Memo. at 13-14. The Defendants further contend that Salazar cannot produce evidence that his employment opportunities have been foreclosed, because he has "garnered outside wages." MSJ Memo. at 14.

The Defendants argue that Salazar's stigma-plus claim lacks merit, because, even if he is able to show that the City of Albuquerque infringed his liberty interest, he is unable to demonstrate that the City of Albuquerque did so without due process of law. See MSJ Memo. at 15. The Defendants assert that the City of Albuquerque provided Salazar with "several hearings, both pre- and post-termination, to clear his name." MSJ Memo. at 15. The Defendants also contend that the City of Albuquerque did not terminate Salazar for the "'attempt to commit criminal sexual contact of a minor (Child under 13) a fourth degree felony,' to which he plead no contest, but for his failure to appear for work." MSJ Memo. at 16 (quoting Plea Agreement at 1)(citation omitted). The Defendants assert that, in each of the hearings, Salazar was able to

clear his name, "which he did when the City was ordered to and did reinstate him to a position as a bus driver with Transit and paid him back wages."  MSJ Memo. at 16.

The Defendants also argue that they are entitled to qualified immunity.  See MSJ Memo. at 16-24.  Analyzing Salazar's Amended Complaint, the Defendants argue that it is not clear "what plaintiff is arguing the newly named defendants did to violate his constitutional rights." MSJ Memo. at 18.   In the Defendants' view, parts of the Amended Complaint amount to procedural due-process claims, "but plaintiff was given all the process to which he was entitled." MSJ Memo. at 18.  The Defendants contend that, to the extent the Amended Complaint alleges that "the newly added defendants violated plaintiff's substantive due process or liberty interest rights, the amended complaint does not state how."  MSJ Memo. at 18.  The Defendants review Salazar's allegations against each of them: (i) against Chavez, that, while he was Mayor, he "publically and repeatedly" called Salazar a "sex offender" and "child molester," and told the Albuquerque Journal that he intended to appeal the Personnel Board's decision; (ii) against Payne, that, while the City of Albuquerque employed him, he "publically and repeatedly" called Salazar a "sex offender" and "child molester"; (iii) against Berry, that he stated: "The City believes it is not in the public's interest that this individual be allowed to drive a city bus" and that the City of Albuquerque is pursuing all legal options; (iv) against Perry, that he said, even though Salazar was "adjudicated guilty," "the mere accusation causes potential problems and liability exposure"; and (v) against Rizzieri, that he adopted the Personnel Hearing Officer's recommendations and terminated Salazar.  MSJ Memo. at 19-20 (quoting Amended Complaint ¶¶ 17-20, 27, 33, at 4-5, 7-8).  The Defendants assert that, after the State of New Mexico delivered a letter to the City of Albuquerque indicating that Salazar was a "convicted sex offender and/or is under the supervision of the Probation-Parole Division of a sexual offense,"

the City of Albuquerque never received a subsequent letter that Salazar was conditionally discharged.  MSJ Memo at 20-21 (quoting Probation Letter at 1).  The Defendants argue that there is no clearly established law indicating that they were infringing Salazar's procedural due-process or liberty interests, because "[t]here is no case which puts defendants on notice that making the statement concerning plaintiff and giving him several name clearing hearings, violated his constitutional rights."  MSJ Memo. at 22.

The Defendants assert that the only claim against Payne in the Amended Complaint is a claim for defamation per se, which is related to two post-employment statements Payne made about Salazar.  See MSJ Memo. at 24.  The Defendants argue that Payne's statements are not defamatory, because they are statements of opinion and not statements of fact, and that Payne's statements are absolutely privileged.  See MSJ Memo. at 24-26.  The Defendants argue that Payne made the statements in relation to litigation -- commenting on instructing the City of Albuquerque's Attorney's Office to appeal the Personnel Board's decision to adopt the Personnel Hearing Officer's recommendations, and commenting on the lawsuit that Salazar's counsel threatened against Payne.  See MSJ Memo. at 27.  The Defendants contend that the post-employment statements which Payne made are not false, because Salazar pled no contest to the offense, and the Probation-Parole Division gave the City of Albuquerque a statement that Salazar was a convicted sex offender.  See MSJ Memo. at 27-28.  The Defendants argue that there is no evidence that Salazar suffered actual injury, because the City of Albuquerque reinstated Salazar to a position with a salary increase, and then reinstated Salazar to the Transit Department -- the position he requested -- and finally, Salazar does not allege special damages. See MSJ Memo. at 28.

In response, Salazar asks the Court to stay consideration of the MSJ and postpone the date his response is due until the Court rules on the, then-pending, 2d MTD, and to give him "a reasonable opportunity to conduct discovery . . . ."  Response at 1.  Salazar argues that the 2d MTD and the MSJ are 'incompatible," because "Counsel has not been able to find any case in which a motion to dismiss and a summary judgment motion on the same subject were both concurrently pending."  Response at 6-7.  Salazar contends that when the Defendants filed the MSJ, Salazar's counsel sent the Defendants' counsel an electronic mail transmission regarding this issue:

> As a preliminary matter, the Motion for Summary Judgment appears to cover the same issues as your motion to dismiss, and the motion to dismiss is presently awaiting a ruling by Judge Browning.
>
> Were you planning to withdraw your motion to dismiss?  Are you substituting the present motion for the dismissal motion?  I think it has to be one or the other.

Response at 6.

Salazar contends that he is unable to adequately respond to the MSJ, because he has not been able to conduct discovery.  See Response at 8.  Salazar's counsel attached to the Response a Declaration, under rule 56(d) of the Federal Rules of Civil Procedure, stating, in part:

> While [the 2d MTD] was pending, the parties were not permitted to engage in discovery. . . . . Unfortunately I, and the other counsel in the case concerned ourselves with the dismissal motions and failed to attend to the deadline date for discovery.  I was surprised and dismayed when the Court reminded me that the discovery deadline had expired. . . .  Without discovery in this case Plaintiff will have no way of learning the extent and motivations for Defendants' violations of his rights and interests.

Declaration ¶¶ 3, 8, 11, at 1-2.

Salazar contends that the Defendants did not follow proper procedure when they filed the MTD after they filed their Answer, because rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a motion to dismiss be made before the answer is filed.  See Response at 9.  Salazar

argues that the Amended Complaint sets out sufficient facts to state a claim for a procedural due-process violation.  See Response at 10.  Salazar argues that the validity of his claims in the Amended Complaint "should not be decided against him either on the basis of determinations of law that are uninformed by facts or on the bases of purported undisputed facts before the parties engage in discovery."  Response at 10.

The Defendants reply, by arguing that the Court should not stay its ruling on the MSJ to permit discovery, because the 2d MTD addresses the pleadings and not the proof, because Salazar never sought to extend the discovery deadline, because there are no grounds for extending the discovery period, and because the Defendants are entitled to judgment as a matter of law.  See Reply at 1-2.  The Defendants contend that, at the September 20, 2012, hearing, the Court informed Salazar that the discovery deadline had passed and that Salazar did not request an extension for discovery, but instead requested an extension for filing dispositive motions.  See Reply at 2 n.1.  The Defendants argue that the Declaration does not satisfy rule 56(d), because the Declaration does not specify the reasons that Salazar is unable to present the facts necessary to support his position, other than Salazar missing the discovery deadline.  See Reply at 3.  The Defendants quote Todd v. Montoya, 877 F. Supp. 2d 1048 (D.N.M. 2012)(Browning, J.), for the proposition that,

> [t]o invoke the shelter that rule 56(d) provides, a party must (i) file an affidavit; (ii) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts; (iii) explain why facts precluding summary judgment cannot be presented; and (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment.

Reply at 3 (quoting Todd v. Montoya, 877 F. Supp. 2d at 1111)(alterations omitted).   The Defendants argue that Salazar has not identified what probable facts are not available, has not stated what steps have been taken to obtain those facts, and has not stated how additional time

would help him in opposing the MSJ.  See Reply at 4.  The Defendants argue that the "Court should deem that plaintiff has waived his right to conduct additional discovery permitted under Rule 56(d)."  Reply at 4.

The Defendants note that, in the Response, Salazar does not respond to the MSJ.  See Reply at 6.  The Defendants address Salazar's contention that the MSJ and 2d MTD cover the same issues by arguing that "the two motions do not raise the same issues."  Reply at 7.  The Defendants argue that Salazar addresses the standard for a motion to dismiss, which is not relevant to a motion for summary judgment, which is decided on undisputed material facts.  See Reply at 10.

### 3. **The August 20, 2013, Hearing.**

The Court held a hearing on August 20, 2013.[5]  See Transcript of Hearing at 36:16-61:16 (taken August 20, 2013)(Livingston, Forney, French, Court)("Tr.").  [6]  The Defendants argued that Salazar has been reinstated to the position from which he was fired, that back wages had been paid to Salazar, and that they will pay back wages from 2010 to April, 2011, as soon as Salazar files an affidavit stating his outside earnings.  See Tr. at 41:6-18 (Forney).  The Defendants maintained that it is not appropriate to grant Salazar's request for discovery, because it would be rewarding Salazar for failing to follow the rules.  See Tr. at 48:1-7 (Forney).  The Defendants argued that the issue of stigma-plus in the MSJ was not just a reconsideration of the Court's refusal to dismiss the stigma-plus claim through the MTD, because additional facts were

---

[5]The day before the hearing, the Defendants' counsel notified Salazar, via electronic mail transmission, that they were representing the Defendants, by stating: "In case you're wondering, I am representing the defendants."  Response ¶ 14, at 4 (setting forth this fact).  See Reply ¶ 14, at 6 (not disputing this fact).

[6]The Court's citations to the transcripts of the hearings reflect the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

necessary that could not be considered in ruling on the MTD.  See Tr. at 48:21-49:5 (French, Forney, Court).  The Defendants argued that reinstatement of Salazar into a different position would not cure the stigma-plus claim, but that reinstatement in the position, from which he was terminated, would -- and did -- cure the stigma-plus claim.  See Tr. at 49:18-50:6 (Forney, Court).  The Defendants did not address the defamation claim against Payne, but, instead, told the Court they would rely on their briefs.  See Tr. at 51:21-25 (Forney, Court).

Salazar argued that there has not been discovery in the case, so the Court should not differ in its ruling on the 2d MTD and the MSJ.  See Tr. at 37:8-14 (Livingston).  Salazar contended that, after the MSJ was filed in October, 2012, he requested that his response be postponed until the Court ruled on the 2d MTD.  See Tr. at 42:17-22 (Livingston).  Salazar noted that the Court's ruling on the 2d MTD was released on August 20, 2013, the day of the hearing. See Tr. at 42:22-23 (Livingston).  Salazar argued that, because the 2d MTD was just decided, the Court should grant him a reasonable time to conduct discovery.  See Tr. at 42:23-43:1 (Livingston).  Salazar argued that there was a stigma attached to his separation from his city job when the mayor publicly announced that Salazar had "done wrong in the opinion" of the Defendants.  Tr. at 43:19-24 (Livingston).  Salazar contended that by terminating him and alleging that he is a sex offender and child molester, there was certainly a stigma connected with his termination.  See Tr. at 45:14-24 (Livingston).  Salazar contended that, without discovery, it is difficult to single-out the acts attributable to each Defendant.  See Tr. at 43:24-44:5 (Livingston).  Salazar requested that the Court review the pleadings in the case and note that the Defendants do not respond in their answer to almost any of the allegations set forth in the Amended Complaint.  See Tr. at 45:6-13 (Livingston).

Concerning the defamation claim, Salazar argued that he considered his defamation claim to be a "constitutional defamation claim" and that it is based on a violation of his constitutional right to privacy.  Tr. at 52:4-10 (Livingston).  Salazar argued that the Court misconstrued his defamation claims by treating them like regular tort claims, when he intended for the defamation claims to have constitutional implications and be based on a constitutional violation.  See Tr. at 52:9-14 (Livingston).  Salazar contended that Payne made fifteen defamatory statements, but that he knows of only one because Salazar has not yet conducted discovery.  See Tr. at 57:20-58:4 (Livingston).

When asked why he did not conduct discovery before the deadline, Salazar responded that the deadline was in August, 2012, and that he was still attempting to serve various parties in July and August, 2012.  See Tr. at 55:2-6 (Livingston).  Salazar also argued that, in other cases, there are not scheduling conferences with deadlines being established, but instead the cases are just on-going.  See Tr. at 55:7-11 (Livingston).  Salazar contended that, in some of those cases, when a motion based on qualified immunity is filed, the judge stays discovery, without even having an initial conference.  See Tr. at 58:5-11 (Livingston).  Salazar also contended that counsel did not represent some of the Defendants when the discovery deadline expired.  See Tr. at 56:2-6 (Livingston).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221

(D.N.M. 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[7]  Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R.

---

[7]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

Civ. P. 56(c)(1).   It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."   Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).   Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).   "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"   Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81.  The Supreme Court explained:

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The United States Court of Appeals for the Tenth Circuit applied this doctrine in

Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312 (brackets omitted). "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[8]] explained that the

---

[8]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

blatant contradictions of the record must be supported by more than other witnesses' testimony[.]"  Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . .  Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

---

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Rhoads v. Miller; Kennedy v. Smith, 259 F. App'x 150 (10th Cir. 2007)(unpublished); Tadlock v. Lahood, 550 F. App'x 541 (10th Cir. 2013)(unpublished); Bjorklund v. Miller, 467 F. App'x 758 (10th Cir. 2012)(unpublished); Muller v. Culbertson, 408 F. App'x 194 (10th Cir. 2011)(unpublished); Castillo v. Hobbs Municipal School Board, 315 F. App'x 693 (10th Cir. 2009)(unpublished); Estate of Ricci v. Salt Lake City Corp., 180 F. App'x 810 (10th Cir. 2006)(unpublished); Douglass v. United Auto Workers Local Union 31, 188 F. App'x 656 (10th Cir. 2006)(unpublished); Nard v. City of Oklahoma City, 153 F. App'x 529 (10th Cir. 2005)(unpublished); Chavez v. Perry, 142 F. App'x 325 (10th Cir. 2005)(unpublished); McCarty v. City of Bartlesville, 8 F. App'x 867 (10th Cir. 2001)(unpublished); Mintz v. Henman, No. 97-3081 (10th Cir. Feb. 11, 1998)(unpublished); Harjo v. Varnum Public School, 166 F.3d 347, No. 98-7023 (10th Cir. Nov. 27, 1998)(unpublished); Pipkin v. Mortgage Creditcorp, Inc., No. 94-6443 (10th Cir. Dec. 18, 1995)(unpublished); and Klick v. Hercules, Inc., No. 90-C-1067-B (10th Cir. Aug. 19, 1993)(unpublished), have persuasive value with respect to material issues and will assist the Court in its preparation of this Memorandum Opinion.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v.

Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).

In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes,

United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal

question of qualified immunity and "determine whether plaintiff's factual allegations are

sufficiently grounded in the record such that they may permissibly comprise the universe of facts

that will serve as the foundation for answering the legal question before the court" before

inquiring into whether there are genuine issues of material fact for resolution by the jury.

584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th

Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes

are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the

plaintiffs' facts").

### LAW REGARDING RULE 56(d)

Rule 56(d) of the Federal Rules of Civil Procedure provides:

> **(d)**  **When Facts Are Unavailable to the Nonmovant.**
>
> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)**  defer considering the motion or deny it;
>
> **(2)**  allow time to obtain affidavits or declarations or to take discovery; or
>
> **(3)**  issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Before 2010, this rule was rule 56(f); rule 56(d) "carries forward without

substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56(d) advisory

committee's notes to the 2010 amendments.  "A party who seeks relief under subdivision (d)

may seek an order deferring the time to respond to the summary-judgment motion." Fed. R. Civ. P. 56(d) advisory committee's notes to the 2010 amendments. The rule permits a nonmovant to show by affidavit or declaration the need for additional discovery; a formal affidavit is thus not required. See Fed. R. Civ. P. 56(d). The rule permits a "written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit." Fed. R. Civ. P. 56(c) advisory committee's notes to the 2010 amendments.

When a party files an affidavit or declaration, and moves for additional discovery time under rule 56(d), the party invokes the court's discretion. See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553-54 (10th Cir. 1993). "'Unless dilatory or lacking in merit,'" a party's 56[(d)] application "'should be liberally treated.'" Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554 (quoting Comm. for 1st Amend. v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992)). "The general principle of Rule 56(d) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." Price ex rel. Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000). Rule 56(d) does not require, however, that summary judgment not be entered until discovery is complete. See Price ex rel. Price v. W. Res., Inc., 232 F.3d at 784.

"Rule 56[(d)] is not a license for a fishing expedition . . . ." Lewis v. Ft. Collins, 903 F.2d 752, 758 (10th Cir. 1990). To invoke rule 56(d), the party filing the affidavit or declaration must state with specificity how the desired time would allow it to meet its burden in opposing summary judgment. See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554. Rule 56(d) may not be invoked based solely upon the assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554. Moreover, while the

summary judgment movant's exclusive control of information weighs heavily in favor of relief under 56(d), see Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783, merely asserting that the movant has the evidence is insufficient to justify denial of summary judgment, see Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.  Furthermore, "if the party filing the Rule 56[(d)] affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted."   Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554 (denying a 56(d) request stating "the record reflect[ed] that plaintiffs were dilatory in pursuing discovery prior to the filing of their 56[(d)] affidavit").   See Johnson v. Holmes, 377 F. Supp. 2d 1039, 1044-45 (D.N.M. 2004)(Browning, J.), aff'd, 455 F.3d 1133 (10th Cir. 2006)(denying a 56(d) request where plaintiff did not explain why, during the discovery period that the court allowed, he did not obtain the discovery sought in his motion).   The Tenth Circuit has summarized rule 56(d)'s requirements as follows:

> A prerequisite to granting relief pursuant to Rule 56[(d)] is an affidavit furnished by the nonmovant.  Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts.  In this circuit, the nonmovant also must explain[, with specificity,] how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783 (quoting Comm. for 1st Amend. v. Campbell, 962 F.2d at 1522).  See Tadlock v. Lahood, 550 F. App'x at 547 (citing Price ex rel. Price v. W. Res., Inc. for the requirements of rule 56(d) after the 2010 amendment); Douglass v. United Auto Workers Local Union 31, 188 F. App'x at 658 (stating that the affidavit must state "with specificity" how the additional time would enable the party to meet its burden).  A rule 56(d) affidavit or declaration must state, with specificity, what additional discovery is believed

necessary.  See Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006);

Chavez v. Perry, 142 F. App'x at 334 ("To resist summary judgment on this basis, a party must

specifically identify what facts it seeks to discover and show how those facts would materially

aid its case on the dispositive issues.").  If a party does not file an affidavit or declaration, a

district court does not abuse its discretion in denying discovery.  See Tadlock v. Lahood, 550 F.

App'x at 547.

        In determining whether a party has been dilatory in pursuing discovery, courts should

consider: (i) "the length of the pendency of the case prior to the Rule 56[(d)] request";

(ii) "whether and when plaintiff could have anticipated its need for the requested discovery";

(iii) "the previous efforts, if any, made by plaintiff to obtain the needed information either

through Rule discovery or otherwise"; (iv) "the degree and nature of discovery already

undertaken"; (v) "any limitations placed upon discovery previously by the trial court"; (vi) "any

prior solicitations of or provisions for discovery by the trial court"; (vii) "any warning which

plaintiff might have had that, absent a speedier request, discovery might be denied and his claim

be dismissed"; and (viii) "whether the requested information was inaccessible to plaintiff, e.g. as

when within defendant's exclusive control, or whether alternative, accessible sources existed but

were foregone."  Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1031 (5th Cir. 1983).

See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1555 n.7 (noting that the "Fifth

Circuit enumerates eight factors to be considered in determining whether a party has been

dilatory in seeking discovery" (citing Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d at

1031)); Klick v. Hercules, Inc., No. 90-C-1067-B at *4 n.3 (stating that Paul Kadair, Inc. v. Sony

Corp. of America enumerates "eight factors which should be considered by the court before

determining whether a party has been dilatory in conducting discovery"); Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 n.4 (1984)(same).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Roybal v. City of Albuquerque, No. CIV 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. at 818). When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must demonstrate on the facts alleged that: (i) the defendants' actions violated his or her constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged unlawful activity. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

In evaluating whether the right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  In determining whether the plaintiff has met his or her burden, a court must construe the facts in a light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378 (2007).  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."  Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001).  On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

The Tenth Circuit held in Kerns v. Bader, 663 F.3d 1173 (10th Cir. 2011), that, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction might make a constitutional difference."  663 F.3d at 1188 (emphasis in original).  In Kerns v. Bader, dealing with the search

of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was beyond debate in 2005 that the officers' entry and search lacked legal justification." 663 F.3d at 1183 (emphasis added). Earlier Tenth Circuit cases, clarifying the level of generality at which a legal rule must be defined, applied a sliding scale to determine when the law is clearly established. See Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."). "[W]hen an officer's violation . . . is particularly clear . . . , [the Tenth Circuit] does not require a second decision with greater specificity to clearly establish the law." Casey v. City of Fed. Heights, 509 F.3d at 1284. Furthermore, "general statements of the law are not inherently incapable of giving fair and clear warning . . . ." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

> The Court applied the test from Kerns v. Bader in Reid v. Pautler,
>
> The problem, however, is that the law was not clearly established that Ross' conduct would violate the Constitution, because the Tenth Circuit held in Kerns v. Bader that, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction *might* make a constitutional difference." 663 F.3d at 1188 (emphasis in original). There are several differences between Ross' conduct and a police officer's conduct in submitting an affidavit that lacks probable cause. A police officer must swear to certain facts that he or she believes establish probable cause, and a person subject to the warrant does not have any way to challenge the warrant application until after the warrant has been issued and executed. Here, Ross did not swear to any facts in the draft Order of Probation that she submitted to Judge Purcell, but merely determined, although apparently inaccurately, that Reid had not served his entire probation term. Further, Reid could challenge the Order of Probation before any alleged unconstitutional searches or seizures took place, through appealing the Order of Probation. There may also be a difference between a police officer who primarily will perform law enforcement functions, and a probation officer, who may sometimes perform law enforcement functions and at other times may perform judicial functions. These differences convince the Court that the law was not clearly established . . . .

- 38 -

Reid v. Pautler, No. CIV 13-0337 JB/KBM, 2014 WL 3845042, at *116 (D.N.M. July 31, 2014)(Browning, J.).

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified immunity defense.  In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  555 U.S. at 236.  The Supreme Court also noted in Pearson v. Callahan that, while no longer mandatory, the protocol outlined in Saucier v. Katz would often be beneficial.  See 555 U.S. at 241.  Once the plaintiff has established the inference that the defendants' conduct violated a clearly established constitutional right, a qualified immunity defense generally fails.  See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

## LAW REGARDING STIGMA-PLUS CLAIMS

The Tenth Circuit's stigma-plus standard requires a plaintiff to demonstrate:

> (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered his or her status as a matter of state law."

Kennedy v. Smith, 259 F. App'x at 155 (quoting Paul v. Davis, 424 U.S. 693, 709 (1976))(alterations omitted).  "Tenth Circuit caselaw on stigma-plus claims generally arises out of employment-law cases."  Bell v. Bd. of Educ., No. CIV 06-1137 JB/ACT, 2008 WL 4104118, at *17 (D.N.M. May 6, 2008)(Browning, J.)(citing Six v. Henry, 42 F.3d 582, 585 (10th Cir. 1994); Corbitt v. Andersen, 778 F.2d 1471, 1474-75 (10th Cir. 1985)).  To satisfy a liberty-interest claim, a plaintiff must demonstrate that:

> First . . . the statements must impugn the good name, reputation, honor, or integrity of the employee.  Second, the statements must be false.  Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities.  And fourth, the statements must be published.  These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest.

Evers v. Regents of Univ. of Colo., 509 F.3d 1304, 1308 (10th Cir. 2007)(quoting Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994)(citations omitted)).  While the third element appears to require a plaintiff to prove that the statement either was made in the course of terminating the employee or foreclosed other employment opportunities, the Tenth Circuit interprets this element in the conjunctive, requiring proof that the statements occurred in the course of terminating the employee and that they foreclosed other employment opportunities.  See Guttman v. Khalsa, 669 F.3d 1101, 1126 (10th Cir. 2012)("[The plaintiff] contends New Mexico's defamatory report . . . foreclose[ed] employment opportunities . . .  This claim fails, however, because . . . the stigma-plus doctrine, as applied in the area of employment, . . . [is] limited to claims of defamation occurring in the course of employment termination." (emphasis omitted)(citing Renaud v. Wyo. Dep't of Family Servs., 203 F.3d 723, 728 n.1 (10th Cir. 2000))).

"An alleged defamatory or stigmatizing statement by a government actor, standing alone, is insufficient to state a due-process claim."  Kvech v. N.M. Dep't of Pub. Safety, 987 F. Supp. 2d 1162, 1197 (D.N.M. 2013)(Browning, J.)(citing McGhee v. Draper, 639 F.2d 639, 643 (10th Cir. 1981)("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.")).  The Supreme Court explained in Paul v. Davis:

> While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is

either "liberty" or "property" by itself sufficient to invoke the procedural
protection of the Due Process Clause.

424 U.S. at 701.  In Paul v. Davis, the plaintiff's name and photograph appeared on a flyer with

the caption "Active Shoplifters" that was distributed to local area merchants.   424 U.S. at

695-96.  The Supreme Court explained:

> The "stigma" resulting from the defamatory character of the posting was
> doubtless an important factor in evaluating the extent of harm worked by that act,
> but we do not think that such a defamation, standing alone, deprived [the plaintiff]
> of any "liberty" protected by the procedural guarantees of the Fourteenth
> Amendment.

424 U.S. at 709.

A "stigma plus," due-process claim cannot survive solely on the basis that the

government said something about the plaintiff that is allegedly inaccurate; the claim must be

based on a denial of due process to contest the allegedly erroneous statement.   Segal v. City of

New York, 459 F.3d 207, 214 (2d Cir. 2006)(holding that, where the plaintiff's protected interest

was her reputation and professional interest, a post-deprivation hearing was sufficient to defeat a

stigma-plus claim).  A stigma-plus claim rests on a violation of procedural due process and not

of substantive due process.   See Doe v. Mich. Dept. of State Police, 490 F.3d 491, 502 (6th

Cir. 2007)("Our review of the caselaw has failed to identify any case that applies the stigma-plus

test to a substantive due process claim.").  In Segal v. City of New York, the United States Court

of Appeals for the Second Circuit explained:

> Because stigma plus is a species within the phylum of procedural due process
> claims, however, it is not enough that the plaintiff has demonstrated the
> deprivation of her liberty interest; in order to bring a successful stigma-plus claim,
> the plaintiff also must demonstrate that her liberty was deprived without due
> process of law.  Stated differently, the availability of adequate process defeats a
> stigma-plus claim.

459 F.3d at 214.

Due-process concerns may be implicated only when the subject of the stigmatizing statement is denied a hearing to clear his or her name. See Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004)("Where a person's good name, reputation, or integrity is at stake because of what the government is doing to him, a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name.")(internal quotations omitted). "A person who establishes a liberty-interest deprivation is entitled to a name-clearing hearing." Evers v. Regents of Univ. of Colo., 509 F.3d at 1308.

The law requires a tangible injury to support a stigma-plus claim. See Phelps v. The Wichita Eagle-Beacon, 886 F.2d 1262, 1268-69 (10th Cir. 1989)(holding that future harm to prospective relationships and damages to prospective employment opportunities are too intangible to constitute a deprivation of a property or liberty interest). In Phelps v. The Wichita Eagle-Beacon, the attorney brought suit against employees of a newspaper and a former assistant attorney general for articles that he contended "placed a defamatory cloud over his employment opportunities." 886 F.2d at 1266, 1268. The Tenth Circuit noted that the plaintiff had "merely . . . alleged speculative future harm to prospective relationships as a result of the generalized damage to his reputation." 886 F.2d at 1268. The Tenth Circuit noted that the "plaintiff has not been foreclosed from practicing law. At most, he alleges that the newspaper articles made him less attractive to potential clients." 886 F.2d at 1269. The Tenth Circuit held "[t]hat allegation is insufficient to state a deprivation of a liberty or property interest." 886 F.2d at 1269.

In Workman v. Jordan, the plaintiff asserted a due-process claim for deprivation of a liberty interest based on "damage to his reputation due to allegedly stigmatizing documents placed in his personnel file" by defendants after his reinstatement to a job. 32 F.3d at 480. The

- 42 -

Tenth Circuit held that the plaintiff had not shown lost-employment opportunities and was unable to make a "sufficient showing of false stigmatizing statements entangled with his interest in employment." 32 F.3d at 481. The Tenth Circuit noted that, because the plaintiff was not deprived of a liberty interest, "due process did not require an adequate name-clearing hearing." 32 F.3d at 482.

"To state a stigma-plus liberty-interest due process claim, a plaintiff must also establish that the allegedly stigmatizing statements were published." Isengard v. N.M. Pub. Educ. Dept., 708 F. Supp. 2d 1190, 1201 (D.N.M. 2009)(Browning, J.)(citing Renaud v. Wyo. Dep't of Family Servs., 203 F.3d at 727). See Workman v. Jordan, 32 F.3d at 481; Harrison v. Bd. of Cnty. Comm'rs., 775 F. Supp. 365, 367 (D. Colo. 1991)(Carrigan, J.)(explaining that intra-government disclosure of information does not constitute publication in the context of a liberty interest claim). "Publication, in the context of a liberty interest claim, is accorded its ordinary meaning 'to be made public.'" Harrison v. Bd. of Cnty. Comm'rs, 775 F. Supp. at 367 (quoting Bishop v. Wood, 426 U.S. 341, 348 (1976))(internal quotation marks omitted). In Orozco v. County of Monterey, 941 F. Supp. 930 (N.D. Cal. 1996), the Honorable Edward A. Infante, United States Magistrate Judge for the Northern District of California, noted that:

> In order for plaintiff to satisfy the "publication" requirement, plaintiff must plead that the defendants published the allegedly false and stigmatizing information to the public. Plaintiff has not so alleged. Plaintiff has alleged only that the information was disseminated within her department and to law enforcement departments in the course of the investigation of plaintiff's activities. This is not sufficient.

941 F. Supp. at 939. See Diehl v. Albany Cnty. Sch. Dist. No. 1, 694 F. Supp. 1534, 1537 (D. Wyo. 1988)(explaining that statements made about a coach by a school board regarding nonrenewal were not published, because "[r]easons for termination or nonrenewal given to an employee in private cannot impair the employee's interest in his good name, reputation, honor,

or integrity. . . .   Statements made in the course of a judicial proceeding also do not support a

liberty interest claim.")(citations omitted)(internal quotations omitted).   "The Tenth Circuit

requires actual dissemination of information for a plaintiff to satisfy the publication prong of the

stigma-plus standard."   Kvech v. N.M. Dep't of Pub. Safety, 987 F. Supp. 2d at 1199.

> Other circuits have held that placement of false and stigmatizing information in an
> employee personnel file may constitute publication if the file is either available to
> the public or likely to be disclosed to prospective employers. . . .   In Harris v.
> Blake, 789 F.2d 419, 419 n.2 (10th Cir. 1986), the Tenth Circuit appears to
> require dissemination in lieu of a more lenient "likely to be disseminated" or
> "available to the public" standard.

Bell v. Bd. of Cnty. Comm'rs, 343 F. Supp. 2d 1016, 1021 (D. Kan. 2004).

In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court noted that students, on the

basis of state law, had legitimate claims of entitlement to a public education.   See 419 U.S. at

573.   The Supreme Court explained that "the State is constrained to recognize a student's

legitimate entitlement to a public education as a property interest which is protected by the Due

Process Clause and which may not be taken away for misconduct without adherence to the

minimum procedures required by that Clause."   419 U.S. at 574.   In Goss v. Lopez, school

authorities suspended students, for periods up to ten days, based on charges of misconduct.   See

419 U.S. at 575.   The Supreme Court noted: "If sustained and recorded, those charges could

seriously damage the students' standing with their fellow pupils and their teachers as well as

interfere with later opportunities for higher education and employment."   419 U.S. at 575.   The

Supreme Court held that the appropriate name-clearing process, in connection with a suspension

of ten days or less, is "that the student be given oral or written notice of the charges against him

and, if he denies them, an explanation of the evidence the authorities have and an opportunity to

present his side of the story."   419 U.S. at 551.

## LAW REGARDING DEFAMATION

Fifty years ago, in New York Times v. Sullivan, 376 U.S. 254 (1964), the Supreme Court of the United States declared that state-law defamation claims must be measured by standards that satisfy the First Amendment to the Constitution of the United States, which permits no law "abridg [ing] the freedom of speech, and of the press."  N.Y. Times v. Sullivan, 376 U.S. at 269. That holding is grounded in "a profound national commitment to the principle that debate on public issues should be unlimited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."  376 U.S. at 270.  The protection of speech on issues of public concern extends even to false speech, so that the First Amendment's "freedom of expression . . . ha[s] the 'breathing space'" it needs to survive. 376 U.S. at 271-72.  See Gertz v. Robert Welch, Inc., 418 U.S. 323, 341 (1974)("The First Amendment requires that we protect some falsehood in order to protect speech that matters.").

"[T]here is no federal cause of action for defamation."  Bartel v. FAA, 725 F.2d 1403, 1405 n.2 (D.C. Cir. 1984).  See Estate of Ricci v. Salt Lake City Corp., 180 F. App'x at 813 ("Further, [the plaintiff] has no § 1983 cause of action for defamation."); DeCamp v. Douglas Cnty. Franklin Grand Jury, 978 F.2d 1047, 1050 (8th Cir. 1992).  The Court may only hear a state law defamation cause-of-action through exercising supplemental jurisdiction under 28 U.S.C. § 1367, see Fisher v. Lynch, 531 F. Supp. 2d 1253, 1271 (D. Kan. 2008)(Vratil, J.)("[U]nder Section 1367(a) . . . the Court may exercise supplemental jurisdiction over the [state law] defamation claim."), or through its diversity jurisdiction under 28 U.S.C. § 1332, see Cleary Bldg. Corp. v. David A. Dame, Inc., 674 F. Supp. 2d 1257, 1260 (D. Colo. 2009)(Arguello,

J.)("Plaintiff also alleges claims of [state] common law . . . defamation . . . .   Jurisdiction is proper pursuant to . . . 28 U.S.C. § 1332 . . . .").

Under New Mexico law, a prima-facie case of the tort of defamation includes: (i) a published communication by the defendant; (ii) the communication includes an asserted statement of fact; (iii) the communication was concerning the plaintiff; (iv) the statement of fact is false; (v) the communication was defamatory; (vi) the persons receiving the communication understood it to be defamatory; (vii) the defendant knew the communication was false or negligently failed to recognize that it was false, or acted with malice; (viii) the communication caused actual injury to the plaintiff's reputation; and (ix) the defendant abused its privilege to publish the communication.  See N.M. Rules Ann., Civ. UJI 13-1002(B).[9]  See also Newberry v. Allied Stores, Inc., 108 N.M. 424, 429, 773 P.2d 1231, 1236 (1989)("Generally, the elements of a defamation action include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff.")(citing N.M. Rules Ann., Civ. U.J.I. 13-1002).

### 1.    Statement of Fact.

The Supreme Court has held that, under the First Amendment to the Constitution, a statement can serve as a basis for a defamation claim only if it is a statement of fact and not of opinion:

> Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.  But there is no constitutional value in false statements of fact.  Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust,

---

[9]The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the court establishes a presumption that the instructions are correct statements of law.  See State of New Mexico v. Wilson, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994).

and wide-open" debate on public issues.  New York Times Co. v. Sullivan, 376
U.S., [sic] at 270 . . . .  They belong to that category of utterances which "are no
essential part of any exposition of ideas, and are of such slight social value as a
step to truth that any benefit that may be derived from them is clearly outweighed
by the social interest in order and morality."  Chaplinsky v. New Hampshire, 315
U.S. 568, 572 (1942).

Gertz v. Robert Welch, Inc., 418 U.S. at 339-40.  Thus, "[a]n action for defamation lies only for

false statements of fact and not for statements of opinion."  Mendoza v. Gallup Indep. Co., 107

N.M. 721, 723, 764 P.2d 492, 494 (Ct. App. 1988).  The Supreme Court of New Mexico, in

Marchiondo v. Brown, 98 N.M. 394, 649 P.2d 462 (1982), held that the court is to determine as a

matter of law whether the alleged defamatory statement was or contained a statement of fact:

> Where the statements are unambiguously fact or opinion, . . . the court determines
> as a matter of law whether the statements are fact or opinion.  However, where the
> alleged defamatory remarks could be determined either as fact or opinion, and the
> court cannot say as a matter of law that the statements were not understood as
> fact, there is a triable issue of fact for the jury.

Marchiondo v. Brown, 98 N.M. at 404, 649 P.2d at 472.

Whether a statement asserts a fact or opinion turns on whether the statement is verifiable

-- i.e. whether it "is sufficiently factual to be susceptible of being proved true or false."

Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990).  See Moore v. Sun Publ'g Corp., 118

N.M. 375, 382, 881 P.2d 375, 382 (Ct. App. 1994)("New Mexico appears to be among the states

requiring verifiability as the controlling element in determining whether a statement is fact or

opinion.   Under this analysis, opinions are statements which cannot be proved or

disproved.")(citations and internal quotation marks omitted).  Opinions may be actionable as

defamatory where they implicitly contain an assertion of fact.  See Schwartz v. Am. Coll. of

Emergency Physicians, 215 F.3d 1140, 1145 (10th Cir. 2000)("Certain expressions of opinion

implicitly contain an assertion of objective fact, and such statements are not exempt from a

defamation claim.")(citing Milkovich v. Lorain Journal Co., 497 U.S. at 18-19).  The Supreme

Court of the United States has recognized that simply couching statements in terms of an opinion does not dispel its implications of a false assertion of fact.  See Milkovich v. Lorain Journal Co., 497 U.S. at 19 ("It would be destructive of the law of libel if a writer could escape liability for accusations of defamatory conduct simply by using, explicitly or implicitly, the words 'I think.'")(quoting Cianci v. New Times Publ'g Co., 639 F.2d 54, 64 (2d Cir. 1980)(Friendly, J.)(alterations omitted)).

The Supreme Court of New Mexico, in Marchiondo v. Brown, provided guidance on how to distinguish between fact and opinion: "The crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact."  98 N.M. at 404, 649 P.2d at 472 (quoting Mashburn v. Collin, 355 So. 2d 879, 885 (La. 1977)).  This determination must be made by considering the statement in the context of the entirety of the publication.  See Mendoza v. Gallup Indep. Co., 107 N.M. at 723, 764 P.2d at 494 ("In resolving the distinction between fact and opinion, the trial court should consider . . . the entirety of the publication . . . .  In considering the 'entirety' requirement, the published statement must be read in context.").  The Supreme Court of New Mexico has illustrated how a court should evaluate whether the ordinary person may understand the expression to imply a statement of fact:

> In Kutz v. Independent Pub. Co., Inc., 97 N.M. 243, 638 P.2d 1088 (Ct. App. 1981), the court set out the criteria for determining as a matter of law, when a statement may be said to be opinion or fact.  "If the material as a whole contains full disclosure of the facts upon which the publisher's opinion is based and which permits the reader to reach his own opinion, the court in most instances will be required to hold that it is a statement of opinion, and absolutely privileged."  Id. at 245, 638 P.2d at 1090 (citation omitted).  Conversely, where there are implications in the statement "that the writer has private, underlying knowledge to substantiate his comments about plaintiff," and such knowledge implies the

existence of defamatory facts, the statement is deemed to be factual and not privileged.  Id. at 246, 638 P.2d at 1091.

Marchiondo v. Brown, 98 N.M. at 404, 649 P.2d at 472 (alterations omitted).  Accord Mendoza v. Gallup Indep. Co., 107 N.M. at 724, 764 P.2d at 495 ("[I]f the material, as a whole, fully discloses the facts upon which the opinion is based and permits the reader to reach [the reader's] own opinion, the statement is generally an opinion rather than an assertion of fact, and is absolutely protected.").

### 2.      **Statement Concerning the Plaintiff.**

"The communication is concerning the plaintiff if the person to whom it was communicated reasonably understood that it was intended to refer to the plaintiff."  Schuler v. McGraw-Hill Cos., 989 F. Supp. 1377, 1384 (D.N.M. 1997)(Campos, J.)(quoting N.M. Rules Ann., Civ. U.J.I. 13-1005).   "There must be evidence showing that the attack was read as specifically directed at the plaintiff."  Rosenblatt v. Baer, 383 U.S. 75, 81 (1966).  In New York Times Co. v. Sullivan, the Supreme Court held that the alleged defamatory advertisement could not reasonably be read to be "of and concerning" the plaintiff, the police commissioner, because "[t]here was no reference to respondent in the advertisement, by name or official position." 376 U.S. at 288.   The Supreme Court noted that the advertisement contained two assertions concerning police and police functions, but stated: "Although the statements may be taken as referring to the police, they did not on their face make even an oblique reference to respondent as an individual."  376 U.S. at 289.  The Supreme Court concluded: "[D]espite the ingenuity of the arguments which would attach the significance to the word 'They,' it is plain that these statements could not reasonably be read as accusing respondent of personal involvement in the acts in question."  376 U.S. at 288-89.

If a defendant publishes a defamatory communication concerning a group of persons, the defendant may be liable to an individual member if the context of the publication reasonably gives rise to the inference that the article is referencing the individual member.  See Restatement (Second) of Torts § 564A ("One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if, . . . the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.").[10]  The Court of Appeals of New Mexico has recognized:

> No action lies for publication of defamatory words concerning a group or class of persons unless the group or class is so small that the matter can reasonably be understood to refer to the plaintiff, or unless the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

Saenz v. Morris, 106 N.M. 530, 533, 746 P.2d 159, 162 (Ct. App. 1987)(citing Restatement (Second) Torts § 564A (1977); Poorbaugh v. Mulllen, 99 N.M. 11, 653 P.2d 511 (Ct. App. 1982)).  Where the group is a government entity, however, there is a presumption that the statement refers only to the government, and not to any particular individual or government officer.  See Andrews v. Stallings, 119 N.M. 478, 484, 892 P.2d 611, 617 (Ct. App. 1995)("In a close case on the issue of whether defamatory speech is 'of and concerning' an individual or the government itself, it should be construed as of and concerning the government.")(quoting Rodney A. Smolla, Law of Defamation § 2.28[3], at 2-99 (1994)).

---

[10]New Mexico courts often look to the law as stated in the Restatement (Second) of Torts for guidance on tort law.  See Schmitz v. Smentowski, 109 N.M. 386, 393, 785 P.2d 726, 736 (1990)("We have . . .  been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas."); Montanez v. Cass, 89 N.M. 32, 38, 546 P.2d 1189, 1195 (Ct. App. 1975)("It has long been the policy of our courts to follow in the footsteps of the Restatement of Torts, 2d."), rev'd on other grounds 89 N.M. 278, 551 P.2d 634.

### 3. __The Asserted Statement of Fact Was False.__

To support a claim for defamation, the asserted statement of fact must be false in a material way; insignificant inaccuracies are insufficient.  See N.M. Rules Ann., Civ. U.J.I. 13-1006 ("To support a claim for defamation, the communication must be false.  One or more statements of fact in the communication must be false in a material way.  Insignificant inaccuracies of expression are not sufficient.").  In Franklin v. Blank, 86 N.M. 585, 525 P.2d 945 (Ct. App. 1974), the Court of Appeals of New Mexico announced the converse of this rule, holding that a statement is not defamatory if it is substantially true: "It is not necessary to prove the literal truth of statements made.  Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance, and it is sufficient to show that the imputation is substantially true."  86 N.M. at 588, 525 P.2d at 948 (quoting Saleeby v. Free Press, 91 S.E.2d 405, 407 (1956)).  See Restatement (Second) of Torts § 581A, cmt. f ("Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.").  The Supreme Court of the United States has provided guidance on when a statement is substantially true:

> Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.  Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17 (1991)(citations omitted)(internal quotation marks omitted).

### 4. __The Communication Was Defamatory.__

A statement is not defamatory because it is merely unflattering of the plaintiff.  See Robert D. Sack, Sack on Defamation: Libel, Slander and Related Problems § 2.4.1 (4th ed. 2011)("There is common agreement that a communication that is merely unflattering,

annoying, irksome, or embarrassing, or that hurts the plaintiff's feelings, without more, is not actionable."). A defamatory communication is a communication that tends to expose the plaintiff to contempt, to harm the plaintiff's reputation, or to discourage others from associating or dealing with the plaintiff. See N.M. Rules Ann., Civ. U.J.I. 13-1007; Marchiondo v. N.M. State Tribune Co., 98 N.M. 282, 287, 648 P.2d 321, 326 (Ct. App. 1981)("Any false and malicious writing published of another is libelous . . . when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him." (quoting Colbert v. Journal Publ'g Co., 19 N.M. 156, 142 P. 146 (1914))(alterations omitted)), rev'd on other grounds, Marchiondo v. Brown, 98 N.M. 394, 649 P.2d 462 (1982). Statements that are not defamatory in their "plain and obvious meaning" may still be actionable for defamation where they are "susceptible of two reasonable interpretations, one of which is defamatory and another which is innocent, or . . . are not on their face defamatory, but which may become so when considered in connection with innuendos and explanatory circumstances." Marchiondo v. N.M. State Tribune Co., 98 N.M. at 288, 648 P.2d at 327. See Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741 ("New Mexico cases support recognizing an action for defamation based on implication."). "The theory of defamation by implication recognizes that the reputational injury caused by a communication may result not from what is said but from what is implied." Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741. The Court of Appeals of New Mexico endorsed a test for defamation by implication that the United States Court of Appeals for the District of Columbia has put forth:

> The court must first examine what defamatory inferences might reasonably be drawn from a materially true communication, and then evaluate whether the author or broadcaster has done something beyond the mere reporting of true facts to suggest that the author or broadcaster intends or endorses the inference. We

> emphasize that the tortious element is provided by the affirmative conduct of the author or broadcaster, although it is immaterial for purposes of finding defamatory meaning whether the author or broadcaster actually intends or endorses the defamatory inference.

Moore v. Sun Publ'g Corp., 118 N.M. at 381, 881 P.2d at 741 (quoting White v. Fraternal Order of Police, 909 F.2d 512, 520 (D.C. Cir. 1990))(alterations omitted).  In determining whether a statement may be defamatory by implication, the statement must be analyzed, in both the "immediate context . . . [and] the broader social context into which the statement fits."  Fikes v. Furst, 134 N.M. 602, 608, 81 P.3d 545, 551 (2003).

In Moore v. Sun Publishing Corp., where the plaintiff contended that a publication defamed him, because the publication described a "disagreement over policy, rather than making any particular, direct statement about [the plaintiff's] fitness," the Court of Appeals of New Mexico concluded that its plain and obvious meaning was not defamatory.  118 N.M. at 380, 881 P.2d at 740.  The court noted that the facts which the plaintiff argued defamed him were "not explicitly stated in the notice."  118 N.M. at 380, 881 P.2d at 740.  The court held, however, that, although the plain and obvious meaning is not defamatory, the statements in the notice were nonetheless defamatory, because they went beyond the essential facts, and included unnecessary facts intended to cause the readers to draw a defamatory inference about the plaintiff.  See 118 N.M. at 381, 881 P.2d at 741 ("Readers of the notice might have drawn a defamatory inference . . . .  In providing further explanation in the June 7 notice, Defendants probably hoped to encourage the readers to attribute fault to [the plaintiff] rather than current management.").

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by Constitution and statute."  Kokkonen v. Guar. Life

Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

### 1.   Congressional Authority.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The term "supplemental jurisdiction" is now used to refer collectively to the common-law doctrines of ancillary jurisdiction, pendent jurisdiction, and pendant-party jurisdiction.  28 U.S.C. § 1367, statutorily codifying Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365 (1978)(outlining the doctrine of ancillary jurisdiction), and United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)(outlining the doctrine of pendent jurisdiction), and invalidating Finley v. United States, 490 U.S. 545 (1989)(rejecting the doctrine of pendent-party jurisdiction).  Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties whose insertion into the litigation lacks support of any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, the Honorable William H. Rehnquist, Chief Justice of the Supreme Court of the United States, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. CIV 09-0540 JB/CG, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.)(citing 16 James W. Moore et al., Moore's Federal Practice § 106.04[5] (Matthew Bender 3d ed.)).   In response to the Committee's findings regarding pendent, ancillary, and pendent-party jurisdiction, Congress codified the doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

## 2.    District Court Discretion.

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial

- 55 -

economy, convenience and fairness to litigants" when deciding whether to exercise supplemental

jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates

four factors that the court should consider:

> **(1)**　　the claim raises a novel or complex issue of State law,
>
> **(2)**　　the claim substantially predominates over the claim or claims over which
> the district court has original jurisdiction,
>
> **(3)**　　the district court has dismissed all claims over which it has original
> jurisdiction, or
>
> **(4)**　　 in exceptional circumstances, there are other compelling reasons for
> declining jurisdiction.

28 U.S.C. § 1367(c).   In applying these factors, district courts should seek to exercise

supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness,

and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the

district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions

of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian

News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has

indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir.

1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims

only in the four instances described therein."); Exec. Software N. Am. v. U.S. Dist. Court,

24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in

subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be

triggered by the court's identification of a factual predicate that corresponds to one of the section

1367(c) categories."), overruled on other grounds by 533 F.3d 1087 (9th Cir. 2007); Palmer v.

Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994) ("[S]upplemental jurisdiction must be

exercised in the absence of any of the four factors of section 1367(c).”); Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)(“28 U.S.C. § 1367(c) changed the district courts’ supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.”).   At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion.   See Gudenkauf v. Stauffer Commc’ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(“[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until ‘triggered’ by the existence of one of the four conditions enumerated.”).

The Tenth Circuit has held that district courts should generally decline jurisdiction over state claims when federal claims no longer remain: “When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.” Koch v. Del City, 660 F.3d at 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm’n, 149 F.3d 1151, 1156 (10th Cir. 1998)).   The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.   Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. at 726.   The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when one of the 28 U.S.C. § 1367(c) factors applies.   See Armijo v. New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.).   The Tenth Circuit has recognized that a district court does not “abuse [its] discretion” when it declines to exercise supplemental

jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction.'"   Muller v. Culbertson, 408 F. App'x at 197 (quoting 28 U.S.C. § 1367(c)(3)).

## ANALYSIS

The Court will grant the MSJ in part and deny it in part.  Because Salazar was dilatory in not conducting discovery and the Declaration does not specify how additional discovery will assist Salazar in rebutting the MSJ, the Court will deny Salazar's request for additional discovery under rule 56(d) of the Federal Rules of Civil Procedure.  Additionally, the Court will grant the MSJ as to Salazar's stigma-plus claim, because Salazar received an adequate name-clearing hearing, and because Salazar was reinstated into his former position.  Salazar's remaining claims are state law claims.  Because the Court has dismissed all of Salazar's federal claims, the Court will decline to exercise supplemental jurisdiction and will dismiss Salazar's remaining state law claims without prejudice.

## I.   THE COURT WILL DENY SALAZAR'S REQUEST UNDER RULE 56(d).

The Court will deny Salazar's rule 56(d) request.  In response to a motion for summary judgment, the nonmovant can request the Court, under rule 56(d) to: (i) "defer considering the motion or deny it," (ii) "allow time to obtain affidavits or declarations or to take discovery," or (iii) "issue any other appropriate order."  Fed. R. Civ. P. 56(d).  In his Response, Salazar cites to rule 56(d) and attaches a sworn declaration to the Response in accordance with rule 56(d).  See Response at 8; Declaration ¶¶ 1-16, at 1-3.  Salazar does not specify which of rule 56(d)'s remedies he is seeking, but instead merely quotes rule 56(d) in its entirety.  See Response at 8. The Court is unsure whether Salazar is requesting the Court to defer considering the MSJ, to deny the MSJ, to permit additional time to conduct discovery or to obtain affidavits, or to issue

some other order.  See Fed. R. Civ. P. 56(d) (stating potential remedies).  It is unnecessary, however, to determine precisely what remedy Salazar is requesting, because his rule 56(d) request fails to satisfy the requirements that the Tenth Circuit has placed on rule 56(d).  The Tenth Circuit has cautioned courts that, unless a 56(d) request is "'dilatory or lacking merit,'" the request should be treated liberally.  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554 (quoting Comm. for 1st Amend. v. Campbell, 962 F.2d at 1522).  Salazar's request is both dilatory and lacks a sound basis in the relevant law and in the case's facts.

### A.    SALAZAR WAS DILATORY IN NOT CONDUCTING DISCOVERY.

Salazar has been dilatory in not conducting discovery.  In his Declaration, Salazar contends that discovery was not permitted until the parties held a rule 16 scheduling conference.  See Declaration ¶ 5, at 1.  Salazar also contends that the parties waived their appearances at the scheduling conference[11] and that the pre-trial scheduling order set the discovery deadline as August 31, 2012.  See Declaration ¶ 5, at 1.  On April 25, 2012, both parties agreed to and proposed to the Court a discovery deadline of August 31, 2012, a 128-day discovery period, see Joint Status Report at 10, and the Court established this Scheduling Order on May 10, 2012, setting August 31, 2012 as the discovery deadline, see Scheduling Order at 1, filed May 10, 2012 (Doc. 41)("Scheduling Order").  In the Declaration, Salazar states that he "and the other counsel in the case concerned ourselves with the dismissal motions and failed to attend to the deadline date for discovery," and that he "was surprised and dismayed" when he learned from the Court

---

[11]The parties' joint status report states that a scheduling conference was by telephone on April 18, 2012.  Joint Status Report and Provisional Discovery Plan at 1, filed April 25, 2012 (Doc. 36)("Joint Status Report")("Pursuant to FED. R. CIV. P. 26(f), a telephonic meeting was held on April 18, 2012, and was attended by Paul Livingston for Plaintiffs; Michael I. Garcia for Defendants City of Albuquerque, Martin Chavez, and Richard Berry (City Defendants); and Paula Forney for Defendant Greg Payne.").  It appears that a rule 26(f) scheduling conference was held, but that the parties "waived" appearing in person for the conference.

that the deadline had passed.[12]   Declaration ¶ 8, at 2.   Salazar -- or, more accurately, his counsel -- asserts that, because the Defendants filed an Answer, the MTD, and then the MSJ, he was presented with "complex and confusing legal and jurisdictional problem[s]" that he has "never encountered before."   Declaration ¶ 10, at 2.   At the August 20, 2013, hearing, Salazar argued that he was still attempting to serve some of the parties up until the discovery deadline. See Tr. at 55:2-55:6 (Livingston).   Salazar also noted that, in some cases, when a motion based on qualified immunity is filed, discovery is stayed.   See Tr. at 57:5-11 (Livingston).

Salazar's proffered reasons in the Declaration and at the August 20, 2013, hearing why he did not conduct discovery support the conclusion that he has been dilatory.   The parties agreed to an August 31, 2012, deadline on April 25, 2012, see Joint Status Report at 10, and the Court agreed to the parties' proposed deadline on May 10, 2012, see Scheduling Order at 1.   Salazar had approximately four months to conduct discovery.   Cf. Mintz v. Henman, No. 97-3081, at *2 (holding that a party was dilatory for not attempting to obtain discovery during four month discovery period).   Salazar's proffered reason for not conducting discovery in the Declaration is that he was too "concerned . . . with the dismissal motions."   Declaration ¶ 8, at 2.   The Court had already ruled on the first MTD by the time the parties agreed to the August 31, 2012, deadline, and the 2d MTD was not filed until July 9, 2012.   See 2d MTD at 1.   In the Declaration, Salazar does not explain why he did not conduct any discovery between April 25, 2012, and July 9, 2012.   See Declaration ¶¶ 1-16, at 1-3.   Salazar responded to the 2d MTD on July 31, 2012.   See Plaintiff's Response to Defendants' Motion to Dismiss, filed 31, 2012 (Doc. 55).   Again, in the Declaration, Salazar does not explain why he did not conduct discovery during the month between July 31 and August 31, 2012.   See Declaration ¶¶ 1-16, at 1-3.

---

[12]Salazar was informed that the discovery deadline had passed during a hearing on September 20, 2012.   See Transcript of Hearing at 19:9-21:9 (taken September 20, 2012)(Livingston, Court).

At the August 20, 2013, hearing, Salazar asserted that he was still trying to serve some of the parties up until the discovery deadline.   See Tr. at 55:2-6 (Livingston).   There is not, however, any rule prohibiting discovery until every party has been served.  To the contrary, the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure indicate that discovery can commence before all parties have been served.  See Fed. R. Civ. P. 26(a)(1)(D) (noting that parties may be served after the rule 26(f) conference); D.N.M.LR-Civ. 26.4(b) (noting that a "party first served . . . after the Initial Scheduling Conference must meet all established case management deadlines").  Attempting to serve additional parties is no excuse for not conducting discovery.  Salazar also argued that discovery is sometimes stayed when a motion based on qualified immunity is filed.  See Tr. at 57:5-11 (Livingston).  The 2d MTD was not, however, based on qualified immunity.  See 2d MTD at 1.  Additionally, the MSJ, which does assert qualified immunity, was not filed until after the discovery deadline had passed.  See MSJ at 1. No motion based on qualified immunity was pending during the discovery period.  This argument is, thus, inapplicable in this case.  At best, Salazar may have made assumptions about how cases are done, and which apply in other cases, but were not applicable in this case.  In the end, Salazar was not diligent about pursuing his case.

The United States Court of Appeals for the Fifth Circuit in Paul Kadair, Inc. v. Sony Corp. of America enumerated factors that the Tenth Circuit has cited with approval.  See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1555 n.7.   These factors support a conclusion that Salazar has been dilatory in conducting discovery.  See Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d at 1031.  These factors are: (i) "the length of the pendency of the case prior to the Rule 56[(d)] request"; (ii) "whether and when plaintiff could have anticipated its need for the requested discovery"; (iii) "the previous efforts, if any, made by plaintiff to obtain

the needed information either through Rule discovery or otherwise"; (iv) "the degree and nature of discovery already undertaken"; (v) "any limitations placed upon discovery previously by the trial court"; (vi) "any prior solicitations of or provisions for discovery by the trial court"; (vii) "any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim be dismissed"; and (viii) "whether the requested information was inaccessible to plaintiff, e.g. as when within defendant's exclusive control, or whether alternative, accessible sources existed but were foregone."   Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1031 (5th Cir. 1983).

    Salazar filed his rule 56(d) request on November 26, 2012 -- over two years after he filed the Complaint.  See Complaint at 1.  Salazar should have anticipated the need for discovery, as he is now arguing that, "without discovery," he has "no way of learning the extent and motivations for Defendants' violations of his rights and interests."   Declaration ¶ 11, at 2. Salazar has made no effort to conduct any discovery other than filing the rule 56(d) request.  The Court did not place any limitations on discovery after the rule 26(f) conference, which the parties held on April 18, 2012.  See Joint Status Report at 1.  Salazar had notice more than four months in advance that he needed to complete all discovery by August 31, 2012.  See Joint Status Report at 10.  Additionally, it is unclear whether the information that Salazar is seeking is within the Defendants' control or whether there are alternative, accessible sources to the information, because Salazar has not specified what information he is seeking.  The only portion of the Declaration, in which Salazar states what information he is seeking, Salazar states: "Without discovery in this case Plaintiff will have no way of learning the extent and motivations for Defendants' violations of his rights and interests."  Declaration ¶ 11, at 2.  All of these factors

support a finding that Salazar has been dilatory in conducting discovery.[13]   Salazar "had an opportunity to make full discovery; [he] simply chose not to do so," and, thus, the Court will deny his rule 56(d) request.  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1555.

### B.   SALAZAR'S RULE 56(d) DECLARATION IS INSUFFICIENT.

Salazar's rule 56(d) request lacks a sound basis in the law and in the case's facts.  Rule 56(d)'s required affidavit or declaration must "explain why facts precluding summary judgment cannot be presented," which includes: (i) "identifying the facts not available and what steps have been taken to obtain these facts"; and (ii) explaining "how additional time will enable him to rebut movant's allegations of no genuine issue of fact."  Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783.  Salazar has neither identified unavailable facts nor explained how additional time would help him rebut the MSJ.

The only statement in the Declaration, which even remotely addresses the information that Salazar is seeking, states: "Without discovery in this case Plaintiff will have no way of learning the extent and motivations for Defendants' violations of his rights and interests." Declaration ¶ 12, at 2.  This statement does not specifically state or identify the "'probable facts not available'" to him.  Burke v. Utah Transit Auth. & Local 382, 462 F.2d at 1264 (quoting Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783).  The Declaration does not describe or state what probable facts that Salazar hopes to uncover through discovery.  See Declaration ¶¶ 1-16, at 1-3.  The Declaration is, thus, insufficient to support a rule 56(d) request.  See Pipkin v. Mortg. Creditcorp, Inc., No. 94-6443, at *5 (holding that statement that plaintiff "cannot

---

[13]Salazar has continued to be dilatory, which the Declaration demonstrates.  In the Declaration, Salazar states that the "Plaintiff will file a Motion for a new scheduling order."  See Declaration ¶ 16, at 3.  Nearly a year after the declaration was filed, Salazar has yet to file a motion requesting a new scheduling order.

properly prosecute claim without the requested discovery or additional discovery as may become necessary" was insufficient to meet rule 56(d)'s requirements).

In the same way, the Declaration does not "'state with specificity how the additional material will rebut the summary judgment motion.'"  Burke v. Utah Transit Auth. & Local 382, 462 F.2d at 1264 (quoting Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006))(alterations omitted).  Because Salazar does not state with specificity what additional material he is requesting, he also does not state how this material will rebut the MSJ.  See Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783.  Salazar simply states that, without discovery in general, he cannot learn the extent of the Defendants' violations of his rights.  See Declaration ¶ 11, at 2. This assertion does not state with specificity what additional information he is requesting or how any additional information will rebut the MSJ.  See Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783.  Salazar's request appears to be, at best, a "fishing expedition" for some evidence to rebut the MSJ.  Lewis v. Ft. Collins, 903 F.2d at 758 ("Rule 56[(d)] is not a license for a fishing expedition . . . .").  Accordingly, the Court finds that Salazar's rule 56(d) Declaration is insufficient and will deny Salazar's rule 56(d) request.

## II.   **SALAZAR HAS FAILED TO ESTABLISH A STIGMA-PLUS VIOLATION.**

Salazar has failed to establish a stigma-plus violation.  The remedy for a stigma-plus claim is normally a name-clearing hearing.  See Evers v. Regents of Univ. of Colo., 509 F.3d at 1308 (citing Workman v. Jordan, 32 F.3d at 481).  A name-clearing hearing, however, is not the sole remedy for a stigma-plus violation, because if a name-clearing hearing is denied or inadequate, a plaintiff may recover monetary damages.  See McGhee v. Draper, 639 F.2d at 644-46; Patterson v. City of Utica, 370 F.3d 322, 337-38 (2d Cir. 2004).  Here, the Defendants afforded Salazar an adequate name-clearing hearing.  Thus, even if Salazar may have had an

actionable stigma-plus claim in the absence of a name-clearing hearing, the Defendants have

provided him with an adequate name-clearing hearing, which defeats Salazar's claim.[14]

_____

[14]Because Salazar has not provided any evidence in opposition to the MSJ, there is insufficient evidence to conclude that there is a genuine issue of material fact that Salazar has an actionable stigma-plus claim if no name-clearing hearing were provided.  Based on the evidence that the Defendants present and the allegations in the Amended Complaint, it appears that Salazar might have been able to present competent evidence to support his stigma-plus claim.

   To establish a stigma-plus claim, Salazar must prove that (i) the government made a statement that impugned his "good name, reputation, honor, or integrity"; (ii) the statement is false; (iii) the statement occurred "in the course of terminating" his employment or it foreclosed "other employment opportunities"; and (iv) the statement was published.  See Evers v. Regents of Univ. of Colo., 509 F.3d 1304, 1308 (10th Cir. 2007).  As to the first element, the Defendants accused Salazar of being "a convicted sex offender" and of being "adjudicated guilty of" Attempted Sexual Contact of a Minor.  Paez Memo. at 1.  An accusation that Salazar is a convicted sex offender and has been adjudicated of attempted child molestation impugns his good name, reputation, and integrity.  See Behrens v. Regier, 422 F.3d 1255, 1260-61 (11th Cir. 2005)(holding that an accusation that the plaintiff was a verified child abuser was sufficiently stigmatizing to satisfy the first element of a stigma-plus claim).  To the second element, Salazar contends that these statements are false, because Salazar pled no contest, which discharged the charges "without adjudication of guilt."  Amended Complaint ¶ 12, at 3.  The New Mexico Conditional Discharge Statute states that if a conditional discharge is entered, the sentence is deferred or suspended "without entering an adjudication of guilt."  N.M. Stat. Ann. § 31-20-13(A).  By receiving a conditional discharge, Salazar was, thus, not adjudicated guilty.  See N.M. Stat. Ann. § 31-20-13.  To the third element, Salazar contends that the statements occurred in the course of terminating Salazar's employment; the Defendants made these statements both in the interoffice memorandum, which notified Salazar of his termination, see Paez Memo. at 1, and, according to Salazar, publicly to the various news outlets, including newspapers and radio talk shows, see Amended Complaint ¶¶ 17-20, at 4-5; id. ¶¶ 27-30, at 7; id. ¶ 33, at 8.  Salazar contends that many of these public statements to the media concerned the Defendants' reasons for terminating Salazar and for refusing to reinstate him after the Personnel Hearing Officer ordered reinstatement.  See Amended Complaint ¶¶ 17-20, at 4-5; id. ¶¶ 27-30, at 7; id. ¶ 33, at 8.  If Salazar would have presented competent evidence of these public statements -- the Paez Memo. does not constitute publication, because inter-government disclosures, which are not made available to the public, are not considered to be publicized, see Harrison v. Bd. of Cnty. Comm'rs, 775 F. Supp. at 367 -- they would likely qualify as being made in the course of his termination.  See Bjorklund v. Miller, 467 F. App'x at 768 ("A 'roughly contemporaneous statement' made 'incident to the termination' that concerns the 'manner or reasons for the employee's termination' may qualify as one made 'in the course of termination of employment.'" (quoting Renaud v. Wyo. Dep't of Family Servs., 203 F.3d at 727)(alterations omitted)).  As to the fourth, and final element, Salazar alleges that the statements were published, and that several of the Defendants made the statements to news media.  See Amended Complaint ¶¶ 17-20, at 4-5; id. ¶¶ 27-30, at 7; id. ¶ 33, at 8.  If the Defendant's allegations are true, the statements were, thus, actually disseminated.  See Kvech v. N.M. Dep't of Pub. Safety, 987 F. Supp. 2d at 1199.

Additionally, the Defendants reinstated Salazar into his previous position.  By being reinstated, Salazar cannot establish the third element for a stigma-plus violation -- that the statements occurred in the course of his termination and foreclosed employment opportunities.

## A.  MONETARY DAMAGES MAY BE AWARDED IF A NAME-CLEARING HEARING IS DENIED OR IS INADEQUATE.

In the Tenth Circuit, a plaintiff may recover monetary damages if he or she is denied a name-clearing hearing or if the name-clearing hearing is inadequate.  The Tenth Circuit has repeatedly stated that the required remedy for a stigma-plus violation is to provide the plaintiff with a name-clearing hearing.  See, e.g., Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1558 (noting that, when a stigma-plus violation occurs, "a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name."). As the Supreme Court has noted, the "purpose of such notice and hearing is to provide the person an opportunity to clear his name."  Bd. of Regents of State Colleges v. Roth, 408 U.S. at 573 n.12.  The Supreme Court has additionally noted that, after "a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons."  Bd. of Regents of State Colleges v. Roth, 408 U.S. at 573 n.12.  A stigma-plus claim arises from a violation of a person's procedural due process and not substantive due process.  See Brown v. Montoya, 662 F.3d at 1172 n.16 (noting that the plaintiff "confuses substantive due

---

Outside the Amended Complaint, however, there is not sufficient evidence in the record to support this conclusion, and the Court may not rely on the pleadings at the summary judgment stage.  See Vitkus v. Beatrice Co., 11 F.3d at 1539.  There is not sufficient evidence on the record to support a conclusion that there is a genuine issue of material fact regarding whether Salazar has suffered a constitutional violation, and the Defendants do not dispute the above facts in the MSJ or the MSJ Memo.  See MSJ at ¶¶ 1-10, at 1-3; MSJ Memo. at 1-29.  In any case, because the Defendants have provided Salazar with a sufficient due process -- a name-clearing hearing -- even if Salazar had adequately responded to the MSJ with competent evidence to support his stigma-plus claim, the Court would still grant the MSJ.  If a plaintiff is granted an adequate name-clearing hearing, his stigma-plus claim must fail, because he has been provided sufficient procedural due process.  See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526.

process with procedural due process," by asserting "a substantive due process violation based on [the defendant] placing him in the sex offender probation unit . . . without a hearing" (alterations omitted)); Doe v. Mich. Dept. of State Police, 490 F.3d at 502 ("Our review of the caselaw has failed to identify any case that applies the stigma-plus test to a substantive due process claim."); In re Selcraig, 215 F.3d 396, 796 (5th Cir. 1983).  Because a stigma-plus claim arises out of the lack of procedural due process, the proper remedy is to provide the person with adequate "'procedural due process in the form of a hearing to clear his name.'"  Gwinn v. Awmiller, 354 F.3d at 1216 (quoting Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1558).

Outside the Tenth Circuit, at least two Courts of Appeals have held that monetary damages may be available for a stigma-plus violation.  The Second Circuit has held that, if a name-clearing hearing would not "reverse any ill effects suffered by plaintiff," a plaintiff may recover compensatory damages for "the injuries plaintiff . . . suffered as a result of the deprivation of his liberty interest[, which] would not have occurred if [the defendant] had provided plaintiff with a sufficient name-clearing hearing."  Patterson v. City of Utica, 370 F.3d at 337-38.  The United States Court of Appeals for the Third Circuit has similarly noted that "a name-clearing hearing might be insufficient to cure all the harm caused by stigmatizing government comments," such as when the "injury to a plaintiff's reputation might be irreversible."  Ersek v. Twp. of Springfield, 102 F.3d 79, 84 n.6 (3d Cir. 1996).  The Third Circuit refused, however, to decide whether any remedies -- other than a name-clearing hearing -- may be obtained under a stigma-plus claim.  See Hill v. Borough of Kutztown, 455 F.3d 225, 236 n.15 (3d Cir. 2006)("We have not in the past decided[ -- ]and do not have occasion to decide here[ -- ]whether a plaintiff who prevails on a 'stigma-plus' claim may be entitled to remedies other than a name-clearing hearing.").

The Tenth Circuit, however, has held that monetary damages are available under a stigma-plus claim.  In McGhee v. Draper, the Tenth Circuit, in an opinion that Judge McKay wrote, and Chief Judge Seth and Judge Seymour joined, held that compensatory damages may be recovered for a stigma-plus violation and that a terminated employee may be required to be reinstated if the employee can prove the stigma-plus violation.  See 639 F.2d at 644-46.  There, in determining what remedies should be available to a plaintiff for a liberty interest due process violation,[15] the Tenth Circuit held:

---

[15]The Tenth Circuit in McGhee v. Draper did not use the term "stigma-plus," but instead described the violation as "complained of conduct," which "stigmatized or otherwise damaged" the plaintiff's reputation, and required that this stigmatization be "entangled with some other 'tangible interests such as employment.'"  639 F.2d at 642-43 (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)).   The Tenth Circuit has interpreted McGhee v. Draper as involving a stigma-plus claim.  See Gwinn v. Awmiller, 354 F.3d at 1216.  In discussing the appropriate remedies for a liberty interest due process violation, however, McGhee v. Draper suggests that it was concerned with a different cause-of-action other than a stigma-plus claim.  To establish a stigma-plus violation, a plaintiff must show that the statement was false.  See Evers v. Regents of Univ. of Colo., 509 F.3d at 1308.  In McGhee v. Draper, however, the Tenth Circuit held that:

> The truth or falsity of any charges made or legitimized by the school board's action is not relevant to determining the existence of a procedural due process violation; it is relevant only in fashioning the appropriate remedy.  The jury's determination whether plaintiff was deprived of a liberty interest because of the charges against her depends on the character of the charges, not on their truthfulness.  The "truth or falsity may determine whether or not the decision to discharge plaintiff was prudent, but neither enhances nor diminishes plaintiff's claim that her constitutionally protected interest in liberty has been impaired."  Bishop v. Wood, 426 U.S. 341, 349 . . . (1976).  Just as we provide criminal trials to the guilty as well as to the innocent, we provide opportunities to rebut serious charges to those who will fail as well as to those who will prevail.

639 F.2d at 643 (alterations omitted).  The Tenth Circuit noted that:

> Codd v. Velger, 429 U.S. 624 . . . (1977), includes a passage which superficially contradicts this position: "Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required."  Id. at 628 . . . .  Read in context, the sentence clearly means only that absent a challenge to the truthfulness of the charges no hearing is necessary.  The purpose of a hearing is "to provide the person an opportunity to

At a minimum, nominal damages would be available, even if the charges prove to be truthful.  See Carey v. Piphus, 435 U.S. 247 . . . (1978).  A post-termination hearing, if requested, might also be awarded.  In addition, compensatory and equitable relief might be appropriate if the damaging, publicly-disseminated charges made by the school board in connection with the non-renewal are determined to be improper or false in any significant way.  If, in response to special interrogatories, the jury determines that the charges were false and that plaintiff could have potentially vindicated herself if an appropriate hearing had been given, compensatory and equitable relief would be appropriate.

McGhee v. Draper, 639 F.2d at 644.  The Tenth Circuit held that a plaintiff may recover

compensatory damages for a liberty-interest due-process violation by noting:

By permitting the recovery of damages resulting from procedural violations, we do not remove from plaintiff the task of proving causal connections.  Damages are not to be presumed.  See Carey v. Piphus, 435 U.S. 247 . . . (1978).  In a case such as this one, the fact-finder must carefully separate the consequences of the inadequate procedures per se from the consequences of any board actions that are justified or allegations that are true.

---

clear his name," Board of Regents v. Roth, 408 U.S. at 573 n.12, . . . and obviously no hearing is required if the aggrieved person does not seek that result.

McGhee v. Draper, 639 F.2d at 643.  If the Tenth Circuit in McGhee v. Draper was dealing with a stigma-plus claim, then the truth or falsity of the statements is essential in determining if there is a violation, considering that proof of falsity is a required element, see Evers v. Regents of Univ. of Colo., 509 F.3d at 1308, and not just a consideration to the appropriate remedy, cf. McGhee v. Draper, 639 F.2d at 643.  Indeed, three years after the Tenth Circuit decided McGhee v. Draper, in Asbill v. Housing Authority of Choctaw Nation of Oklahoma, 726 F.2d 1499 (10th Cir. 1984)("Asbill"), held that a plaintiff must prove that a statement was false to succeed on a liberty interest due process violation, see 726 F.2d at 1503.  In Asbill, the Tenth Circuit relied on the 1977 Supreme Court case, Codd v. Velger, to hold that a plaintiff must prove that the statement is false.  See Asbill, 726 F.2d at 1503 n.5.  In Codd v. Velger, the Supreme Court held that, if a plaintiff did not "challenge the substantial truth of the material in question, no hearing would afford a promise of achieving" the result of clearing the plaintiff's name.  429 U.S. at 627.  Asbill, thus appears to abrogate McGhee v. Draper, at least to the falsity requirement.  The Tenth Circuit in Asbill, however, did not cite to or attempt to distinguish McGhee v. Draper.  See Asbill, 726 F.2d at 1499.  While the Tenth Circuit has partially, without explicitly saying so, abrogated McGhee v. Draper's holding, there is no indication that the rest of the holding in McGhee v. Draper has been abrogated or undermined.  Even after Asbill, the Tenth Circuit has continued to cite to McGhee v. Draper in the stigma-plus context.  See Workman v. Jordan, 32 F.3d at 480; Gwinn v. Awmiller, 354 F.3d at 1216.  Thus, while the holding in McGhee v. Draper appears to be partially abrogated, the rest of the decision remains good law.

> As explained previously, the truthfulness of the charges does not affect the right to procedural due process protections. However, truthfulness is clearly important in tracing the consequences at trial of a denial of procedural rights. "Where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." Carey v. Piphus, 435 U.S. at 263 . . . . The burden remains on the plaintiff to prove the link between the due process violation and any particular consequence that would support an award of damages.

McGhee v. Draper, 639 F.2d at 644-45 (alterations omitted). The Tenth Circuit also held that a district court could order that the plaintiff be given a name-clearing hearing. See McGhee v. Draper, 639 F.2d at 645.

> In the exercise of its equitable powers, the district court could order a post-termination hearing to provide plaintiff with an opportunity to attempt to clear her name. Board of Regents v. Roth, 408 U.S. at 573 n.12 . . . . In some circumstances, such a hearing might be the only relief warranted, other than nominal damages. In this case, plaintiff has not requested a hearing. Her desire to forgo this avenue of relief should not prejudice her other legitimate claims.

McGhee v. Draper, 639 F.2d at 645 (alterations omitted)(internal quotation marks omitted). Finally, the Tenth Circuit held that a plaintiff could seek an additional remedy of reinstatement into her old position. See McGhee v. Draper, 639 F.3d at 645. The Tenth Circuit noted that, "absent a property interest in continued employment, reinstatement is not ordinarily an appropriate remedy for deprivation of a liberty interest," because the "purpose of the due process hearing to which plaintiff was entitled was not to afford an opportunity to recapture her previous employment but simply to clear her name," and thus "failure to provide plaintiff with the chance to clear her name is not enough, standing alone, to justify reinstatement." 639 F.3d at 645. The Tenth Circuit went onto hold that, "[i]f the plaintiff can prove that she would in fact have been retained had full procedural due process been provided, she may be reinstated." 639 F.3d at 646.

> This theory of recovery requires a purely factual determination of the consequences of the due process violation. Given the problems of proof, the probability of success on such a theory may be remote, but we cannot say it is infinitesimal. In similar circumstances the Supreme Court has "assume(d) that the

> (trier of fact) can determine what the outcome would have been if (plaintiff) had
> received (a) hearing . . . .  (T)his determination will include consideration of the
> likelihood that any mitigating circumstance to which (plaintiff) can point would
> have swayed the initial decision-makers."  Carey v. Piphus, 435 U.S. at 261 n.16.

McGhee v. Draper, 639 F.2d at 646 (alterations in source but not in original).  Finally, the Tenth

Circuit held that back pay is also an appropriate remedy if a "plaintiff is able to prove a direct

causal link between her denial of procedural due process and her termination."  639 F.2d at 646.

　　　Since McGhee v. Draper, the Tenth Circuit has affirmed jury verdicts awarding monetary

damages for stigma-plus violations.  See Bell v. Bd. of Cnty. Comm'rs, 451 F.3d 1097, 1100

(10th Cir. 2006); Miller v. City of Mission, 705 F.2d 368 (10th Cir. 1983).  In Miller v. City of

Mission, the Tenth Circuit, in an opinion that Judge Seymour wrote, and Chief Judge Seth and

Judge McWilliams joined, affirmed a jury verdict awarding a plaintiff $20,000.00 in

compensatory damages for a liberty-interest due-process violation.  See 705 F.2d at 373-74.  The

Tenth Circuit did not use the term "stigma-plus," but instead defined the plaintiff's liberty

interest as an interest in (i) "'the protection of his good name, reputation, honor and integrity'";

and (ii) "'his freedom to take advantage of other employment opportunities.'"  705 F.2d at 373

(quoting Weathers v. W. Yuma Cnty. Sch. Dist. R-J-1, 530 F.2d 1335, 1338 (10th Cir. 1976)).

The Tenth Circuit noted that this liberty interest may be violated when a public employee is

terminated, and "the termination is accompanied by public dissemination of the reasons for

dismissal, and those reasons would stigmatize the employee's reputation or foreclose future

employment opportunities."  Miller v. City of Mission, 705 F.2d at 373.  The Tenth Circuit also

noted that, if this violation occurs, "due process requires that the employee be provided a hearing

at which he may test the validity of the proffered grounds for dismissal," and that the hearing

provided to the plaintiff was inadequate in that case.  705 F.2d at 372-73.  Again, in Melton v.

Oklahoma City, 879 F.2d 706 (10th Cir. 1989), the Tenth Circuit, in an opinion that Judge

McKay wrote, and Judge Baldock and the Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation, joined, affirmed a jury verdict awarding $1,272,000.00 in damages for a First Amendment violation and a due-process liberty-interest violation.   See 879 F.2d at 712, 734.   The Tenth Circuit, again, did not use the term "stigma-plus," but described the sufficiency of the evidence by analyzing the stigma-plus elements: dissemination, falsity, stigmatization, and course of termination.   See 879 F.2d at 720-22.   The Tenth Circuit held that the plaintiff was "entitled to a name-clearing hearing" and that, because he was not provided an adequate hearing, he was entitled to "the award of damages on the liberty interest claim."  879 F.2d at 731-32.

The Tenth Circuit has further indicated that monetary damages are available for stigma-plus claims, by applying the qualified immunity doctrine to stigma-plus violations.  See Guttman v. Khalsa, 669 F.3d at 1125.  Qualified immunity shields government officials "'from liability for civil damages.'"  Wilson v. Layne, 526 U.S. 603, 609 (1999)(quoting Harlow v. Fitzgerald, 457 U.S. at 818).  Qualified immunity is unavailable when a claimant is seeking injunctive relief rather than monetary damages.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)(noting that qualified immunity is unavailable "in a suit to enjoin future conduct").  In Hill v. Borough of Kutztown, the Third Circuit held: "[The defendant] is not entitled to qualified immunity on [the plaintiff's] "stigma-plus" due process claim to the extent that the claim requests a name-clearing hearing, because the defense of qualified immunity is available only for damages claims -- not for claims requesting prospective injunctive relief." 455 F.3d at 244.

The Tenth Circuit has, however, applied the qualified immunity doctrine to stigma-plus claims.  See Guttman v. Khalsa, 669 F.3d at 1125; Bjorklund v. Miller, 467 F. App'x at 768.  In

Guttman v. Khalsa, the Tenth Circuit, in an opinion that Judge Tymkovich wrote, and Chief Judge Briscoe and Judge Ebel joined, applied the qualified immunity doctrine to a stigma-plus claim.  See 669 F.3d at 1125-26.  The Tenth Circuit noted that the district court dismissed the plaintiff's claim, because the district court concluded that the defendants were entitled to qualified immunity.  See 669 F.3d at 1125.  The Tenth Circuit recited the qualified immunity standards before holding that the defendants' statements did not occur in the course of the plaintiff's termination, and, thus, the defendants' "conduct did not violate a clearly established right."  Guttman v. Khalsa, 669 F.3d at 1125-26.  In Bjorklund v. Miller, the Tenth Circuit held, in an opinion that Judge Porfilio wrote, and Judges Kelly and Matheson joined, that it was clearly established at the time that statements providing the reasons for why an employee was terminated constitute statements made in the course of termination.  See 467 F. App'x at 770. The Tenth Circuit held that, because the right was clearly established at the time, the defendant was not entitled to qualified immunity.  See Bjorklund v. Miller, 467 F. App'x at 770.  Because qualified immunity applies only to claims for damages and not to prospective injunctive relief, see Cnty. of Sacramento v. Lewis, 523 U.S. at 841 n.5, by applying the qualified immunity doctrine to stigma-plus claims, the Tenth Circuit has further indicated that damages are available under a stigma-plus claim, see Guttman v. Khalsa, 669 F.3d at 1125-26.

Even though the Tenth Circuit in McGhee v. Draper held that monetary damages are available for stigma-plus violations, even though the Tenth Circuit has affirmed jury verdicts awarding monetary damages for stigma-plus violations, and even though the Tenth Circuit has applied the qualified-immunity doctrine to stigma-plus claims, the Tenth Circuit has repeatedly stated -- without mentioning whether a plaintiff may pursue money damages -- that the remedy for a stigma-plus claim is to provide the plaintiff with a name-clearing hearing.  See Gwinn v.

Awmiller, 354 F.3d at 1216; Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 579-80 (10th Cir. 1996); Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1558; Asbil, 726 F.2d at 1504; Miller v. City of Mission, 705 F.2d 368, 373 (10th Cir. 1983). The Tenth Circuit has even held that a plaintiff may "be entitled to a [name-clearing] hearing if he can prove at trial that his liberty interest was indeed violated." Eames v. City of Logan, 762 F.2d 83, 86 (10th Cir. 1985)(emphasis added). See Bjorklund v. Miller, 467 F. App'x at 767. A name-clearing hearing is, thus, an appropriate remedy for a stigma-plus violation, even if a trial is required to prove the violation. See Eames v. City of Logan, 762 F.2d at 86. The Tenth Circuit, however, has also held that monetary damages are an appropriate remedy at times. See McGhee v. Draper, 639 F.2d at 644. It is not entirely clear when a name-clearing hearing is the appropriate remedy and when monetary damages are the appropriate remedy.

The Second Circuit has held, and the Third Circuit has indicated, that monetary damages may be available if a name-clearing hearing would not adequately remove the stigma to a plaintiff's reputation. See Patterson v. City of Utica, 370 F.3d at 337-38; Ersek v. Twp. of Springfield, 102 F.3d at 84 n.6. This rule would reconcile these Tenth Circuit cases which state that a name-clearing hearing is the appropriate remedy and these cases which affirm a damages award for stigma-plus violations. In both Melton v. Oklahoma City and Miller City of Mission, the plaintiffs were provided with inadequate name-clearing hearings. See Melton v. Oklahoma City, 879 F.2d at 722 (noting that lack of right to cross-examine witnesses and inability to address perjury charges at hearing caused the hearing to be inadequate); Miller v. City of Mission, 705 F.2d at 373 (noting that hearing was inadequate, because charges were presented to the plaintiff at that hearing, and because the same official who terminated the plaintiff was the decision maker at the hearing). These cases would be consistent with a rule that damages are

appropriate if a name-clearing hearing would not clear the stigmatization, because, after a plaintiff is provided an inadequate name-clearing hearing, it is unlikely that another hearing would clear the plaintiff's name after years of litigation.  If the charges were adjudicated true once, it is unlikely that a second adjudication, years later, would remedy the stigmatization, which has been compounded by the finding of truth in the first, inadequate hearing.  This rule -- while logical and consistent with the holdings of other Courts of Appeals -- is contrary to the holding of McGhee v. Draper.

In McGhee v. Draper, the Tenth Circuit held that compensatory relief is appropriate if "the jury determines that the charges were false and that plaintiff could have potentially vindicated herself if an appropriate hearing had been given."  639 F.2d at 644.  The Tenth Circuit, thus, held that, if a plaintiff can prove that the statements were false and that a hearing would have shown that they were false, the plaintiff is entitled to monetary damages.  See 639 F.2d at 644.  Because a plaintiff must prove that the statements were false even to establish a stigma-plus claim, see Evers v. Regents of Univ. of Colo., 509 F.3d at 1308, under McGhee v. Draper's holding, a plaintiff -- in addition to the elements of a stigma-plus claim -- need prove only that an adequate name-clearing hearing would have shown the falsity of the statements to recover monetary damages, see McGhee v. Draper, 639 F.2d at 644.  This distinguishing factor, however, seems meaningless.   A plaintiff must establish proof of an injury to pursue a stigma-plus claim.  See Phelps v. The Wichita Eagle-Beacon, 886 F.2d at 1268-69.  If a name-clearing hearing would not have shown the statements to be false, then a plaintiff would not have suffered an injury by being denied such a hearing.  Indeed, requiring a plaintiff to prove the falsity of the statements seems to go towards requiring the plaintiff to show that he or she suffered an injury.  If the statements were true, then a name-clearing hearing would not remove

the stigmatization from the plaintiff's reputation, and, accordingly, the plaintiff would not have suffered an injury from being denied a hearing.  Requiring proof of falsity, essentially, requires a plaintiff to prove that the stigma from the false statements would have been cleared if an adequate name-clearing hearing had been provided, because the hearing would have shown the statements to be false.  McGhee v. Draper's requirement of proving that a name-clearing hearing would have shown the falsity of the statements, thus, applies in every successful stigma-plus claim.  Accordingly, McGhee v. Draper seems to stand for the proposition that, in the Tenth Circuit, monetary damages are available in every successful stigma-plus claim.

### B.   SALAZAR WAS PROVIDED AN ADEQUATE NAME-CLEARING HEARING.

Salazar was provided an adequate name-calling hearing.  When a plaintiff is provided an adequate name-clearing hearing, he cannot maintain a stigma-plus claim.  See Gwinn v. Awmiller, 354 F.3d at 1221; Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 526 (10th Cir. 1998); McCarty v. City of Bartlesville, 8 F. App'x at 875; Harjo v. Varnum Pub. Sch., No. 98-7023, at *3.  That several Courts of Appeals require, as elements for a stigma-plus claim, a plaintiff to prove that he or she requested a name-clearing hearing and that the request was denied, underscores that a name-clearing hearing precludes a stigma-plus violation.  See Bellard v. Gautreaux, 675 F.3d 454, 461-62 (5th Cir. 2012); Winskowski v. City of Stephen, 442 F.3d 1107, 1110-11 (8th Cir. 2006); Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 103 (1st Cir. 2002); Quinn v. Shirey, 293 F.3d 315, 321 (6th Cir. 2002).  The Tenth Circuit does not require a plaintiff to make such a request.  See Eames v. City of Logan, 762 F.2d at 86 ("Plaintiff's failure to earlier request a name-clearing hearing does not defeat his claim.  He may still be entitled to a hearing if he can prove at trial that his liberty interest was indeed violated." (citing McGhee v. Draper, 639 F.2d at 643)).  While the Tenth Circuit does not require a plaintiff

to request and be denied a name-clearing hearing, it has held that, when a plaintiff was afforded all necessary process, in the form of a name-clearing hearing, the plaintiff's stigma-plus claim fails.  See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526 (noting that, because the University of Kansas provided a professor, who was accused of rape, "with an adequate name-clearing hearing . . . there is perhaps a tort claim, but there is no constitutional violation."); McCarty v. City of Bartlesville, 8 F. App'x at 875 (holding that there was no stigma-plus violation, because the plaintiffs "received an adequate name-clearing pre-termination hearing" and because the plaintiffs did "not contend that they were entitled to further name-clearing proceedings"); Harjo v. Varnum Pub. Sch., No. 98-7023, at *3 ("Further, because we have held that plaintiff received all of the process to which he was due, including a full-blown hearing at which he had the opportunity to clear his name, his claim that he was deprived of a liberty interest without due process must fail.").  Once a plaintiff is provided an adequate name-clearing hearing, he or she has not been deprived of procedural due process, see Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526, and it is a violation of procedural due process -- rather than substantive due process -- that gives rise to a stigma-plus claim, see Brown v. Montoya, 662 F.3d at 1172 n.16; Doe v. Mich. Dept. of State Police, 490 F.3d at 502.   If Salazar was, thus, provided an adequate name-clearing hearing, he has received the necessary due process for his stigma-plus claim, and his claim must fail.

Courts determine the appropriate level of process that a person is due "'through an analysis of the risk of an erroneous deprivation of the private interest if the process were reduced and the probable value, if any, of additional or substitute procedural safeguards.'"  Brown v. Montoya, 662 F.3d at 1168 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)(plurality))(internal quotation marks omitted).  This analysis requires a consideration of

the three factors from Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 518; Patterson v. City of Utica, 370 F.3d at 336-37; Dee v. Borough of Dunmore, 549 F.3d 225, 235 (3d Cir. 2008); Gunasekera v. Irwin, 551 F.3d 461, 470 (6th Cir. 2009); Kvech v. N.M. Dep't of Pub. Safety, 987 F. Supp. 2d at 1196-97.  These factors are: "(i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (iii) the government's interest and the burdens that additional procedures might impose."  Kvech v. N.M. Dep't of Pub. Safety, 987 F. Supp. 2d at 1196-97 (citing Mathews v. Eldridge, 424 U.S. at 335).

The Tenth Circuit has held that a name-clearing hearing is adequate if the plaintiff had the opportunity to produce evidence and cross-examine witnesses.  See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526.  In Tonkovich v. Kansas Board of Regents, the Tenth Circuit held, in an opinion that Judge Henry wrote, and Judges McWilliams and Lucero joined, that a University of Kansas law professor, who was accused of rape, had been given a sufficient name-clearing hearing.  See 159 F.3d at 526.  The professor was accused of engaging in a sexual act with one of his students and was placed on a one-year paid teaching suspension.  See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 511-12.  After the suspension, the professor requested a hearing, which was granted.  See 159 F.3d at 512.  Before the hearing was held, a number of additional complaints and accusations were made against the professor, and the university requested that the professor resign.  See 159 F.3d at 512-14.  The professor refused to resign, and hearings were held during once-a-week sessions from August 27, 1992, until May 12, 1993.  See 159 F.3d at 514.  At the hearings, the professor was able to present his own witnesses and cross-examine other witnesses, who testified against him, and the hearings were subject to a few limitations,

including a limitation prohibiting the professor from asking questions about the complainant's prior sexual history.  See 159 F.3d at 514-16.  At the end of the hearing, the hearing committee voted three to two to dismiss the professor, and the chancellor of the university adopted this recommendation and dismissed the professor.  See 159 F.3d at 515-16.  The professor filed suit with a number of claims, including a liberty-interest due-process claim.  See 159 F.3d at 526. The Tenth Circuit held that the professor did not suffer a constitutional violation, because the "University provided him with an adequate name-clearing hearing."  159 F.3d at 526.

A name-clearing hearing may be inadequate if the plaintiff is not given notice of the charges against him and if the hearing is before a biased adjudicator.  See Miller v. City of Mission, 705 F.2d at 373.  In Miller v. City of Mission, the Tenth Circuit held that a district court did not err in concluding that a hearing was inadequate as a matter of law.  See 705 F.2d at 372. There, the mayor fired the plaintiff, an assistant police chief; the plaintiff was accused of creating the low morale and high turnover rate at the city's police department.  See 705 F.2d at 370-71. The defendant requested a hearing, which was provided.  See 705 F.2d at 371.  At the beginning of the hearing, the plaintiff was provided a list of additional charges that were made against him. See 705 F.2d at 371.  At the conclusion of the hearing, the mayor refused to reinstate the plaintiff.  See 705 F.2d at 371.  The district court found that, as a matter of law, the hearing was defective.  See 705 F.2d at 372.  The Tenth Circuit affirmed this finding, and held that an "impartial tribunal is an essential element of a due process hearing" and that due process "requires that one be given notice of the charges against him a reasonable time before the hearing is to take place."  705 F.2d at 372.  The Tenth Circuit held that, because the mayor, who fired the plaintiff, oversaw the hearing, and because the plaintiff was provided a list of additional charges

against him at the hearing, the district court did not err in concluding that the hearing was inadequate.  See 705 F.2d at 372.

A name-clearing hearing may also be inadequate if a plaintiff is not permitted to address the false statements levied against him or her.  See Melton v. Okla. City, 879 F.2d at 722.  In Melton v. Oklahoma City, the plaintiff, a police lieutenant, was accused of violating the "Police Code of Ethics" by disclosing, to an attorney, details of a confidential discussion between himself and a federal prosecutor, and of perjuring himself both in an affidavit and while testifying at trial.  879 F.2d at 711.  These charges were widely circulated among the media, in part because of a statement that one of the defendants made to the press.  See 879 F.2d at 721.  The plaintiff was provided a hearing before the department's Disciplinary Review Board, but on the morning of the hearing, the plaintiff was informed that he could not discuss the perjury charge.  See 879 F.2d at 722.  The Tenth Circuit held that the Disciplinary Review Board's refusal to consider the perjury charge "precluded [the plaintiff] from receiving the necessary name-clearing hearing."  879 F.2d at 722.  The Tenth Circuit was further concerned that the plaintiff was not able "to confront and cross-examine those who charged him with dishonesty," and held that these two facts prevented the plaintiff from receiving an adequate name-clearing hearing.  879 F.2d at 722.

Here, Salazar was provided an adequate name-clearing hearing -- two in fact.  On July 6, 2007, Salazar was informed of the charges that were made against him: that he "was a convicted sex offender and/or under the supervision of the Probation-Parole Division for a sexual offense," and that he had "been adjudicated guilty of . . . Attempted Sexual Contact of a Minor." Paez Memo. at 1.  On July 17, 2007, Salazar appealed his termination, which was based on these charges.  See Yermal Aff. ¶¶ 7-8, at 2.  The Personnel Hearing Officer heard this appeal on

February 15, March 17, and April 1, 2008.  See First Board Decision at 1.  Counsel represented

Salazar at these hearings before the hearing officer.   See First Board Decision at 1.   At the

conclusion of these hearings, the Personnel Hearing Officer concluded that Salazar "is neither 'a

convicted sex offender nor is it clear that he has ever been 'adjudicated guilty of any crime.'"

First Board Decision at 8.   The hearing officer further concluded that Salazar "never once

'admitted guilt.'"  First Board Decision at 9.  As a result, the hearing officer recommended that

Salazar be reinstated to "his former position . . . with back pay, benefits, seniority and

expurgation of the disciplinary action from his employment file," and the Personnel Board

adopted this recommendation.   First Board Decision at 10-11.   It is not entirely clear what

process was provided during these hearings, but the hearing officer stated that he made the

recommendation after he "heard argument, considered the credibility of witnesses, and weighed

the evidence presented at the hearing."  First Board decision at 10.

The City of Albuquerque appealed this decision to State District Court, and Judge Huling

remanded the case to the Personnel Board to determine whether the City of Albuquerque had just

cause to terminate Salazar's employment.  See Yermal Aff. ¶ 10, at 2.  On July 2, 2009, the

Personnel Hearing Officer, once again, concluded that Salazar was not a convicted sex offender,

that he "has never been 'adjudicated guilty of any crime,' that he was not a registered sex

offender," and that "his name does not appear on the New Mexico state website of sex

offenders."   Hearing Officer's Second Recommendations at 10.   On August 12, 2009, the

Personnel Board upheld these recommendations.   See Yermal Aff. ¶ 13, at 3.   Despite the

Personnel Board's decision, the Defendants refused to reinstate Salazar into his previous position

as a bus driver, but instead reinstated him and transferred him to Solid Waste.  See Yermal Aff.

¶¶ 15-17, at 3.  The Defendants initially argued that, by reinstating Salazar to Solid Waste, his

stigma-plus claim must fail, because Salazar could no longer show that the stigmatizing statements foreclosed other employment.  See Salazar v. City of Albuquerque, 776 F. Supp. 2d at 1240.  The Court rejected this argument by concluding that reinstatement "to a different position . . . does not necessarily defeat a liberty-interest claim," because "an employers' statement that forecloses employment in a plaintiff's chosen field may" be sufficient to establish a stigma-plus claim.  Salazar v. City of Albuquerque, 776 F. Supp. 2d at 1240-41.

When Salazar refused to show up for work at Solid Waste, the City of Albuquerque, again, terminated him on September 27, 2010.  See Yermal Aff. ¶¶ 18-23, at 3-4.  Salazar appealed this termination.  See Yermal Aff. ¶ 24, at 4.  The Personnel Hearing Officer held hearings on December 13 and 16, 2010, and on August 19, 2011.  See Hearing Officer's Third Recommendations at 1.  Counsel again represented Salazar.  See Hearing Officer's Third Recommendations at 1.  On October 8, 2011, the hearing officer, once again, concluded that Salazar was wrongly accused of being a sex offender, and that he should be reinstated to his bus driver position "with no loss of seniority, benefits, or reference to the disciplinary action in his employment file."  Hearing Officer's Third Recommendations at 8-9.  The Personnel Board adopted the hearing officer's recommendations with some modifications on December 16, 2011. See Third Board Decision at 2.  Before the hearing officer issued his recommendations, the City of Albuquerque finally reinstated Salazar to his position as a bus driver on April 12, 2011.  See Yermal Aff. ¶ 26, at 4.  Salazar, however, failed to appear for work on April 23, 2011, and failed to appear for a required CDL physical and drug screening.  See Yermal Aff. ¶¶ 27, 30-31, at 4-5. Salazar was terminated for a third time, and, this time, he did not appeal his termination.  See Yermal Aff. ¶¶ 33-34, at 5.  Salazar's personnel record with the City of Albuquerque "has been

purged of the disciplinary actions resulting from his initial termination, his transfer to [Solid Waste]," and his termination from Solid Waste.  Yermal Aff. ¶ 39.

Viewing these facts in a light most favorable to Salazar, Salazar was not denied an adequate name-clearing hearing.  After each termination, Salazar was provided a name-clearing hearing before a Personnel Hearing Officer, whose recommendations the Personnel Board adopted.  Counsel represented Salazar at each hearing.  While the exact process of each hearing is unclear, at least during the first hearing, witnesses testified, arguments were made, and evidence was presented.  See First Board Decision at 10.  Salazar was notified of the charges against him over seven months before the first hearing.  See Paez Memo. at 1 (notifying Salazar of charges on July 6, 2007); First Board Decision at 1 (noting that first hearing was held on February 15, 2008).  Cf. Miller v. City of Mission, 705 F.2d at 373 (holding hearing to be inadequate when the plaintiff was presented with charges at the hearing).  There is no indication that the Personnel Hearing Officer or that the Personnel Board was biased against Salazar.  Cf. Miller v. City of Mission, 705 F.2d at 373 (holding hearing to be inadequate when adjudicator was biased).  Indeed, he fared well before the Personnel Hearing Officer and the Personnel Board.  Salazar was not only able to address the charges made against him, he refuted them.  See First Board Decision at 8-9 (finding charges to be false); Hearing Officer's Third Recommendations at 8-9 (finding that Salazar was wrongfully accused of being sex offender). Cf. Melton v. Okla. City, 879 F.2d at 722 (holding hearing to be inadequate when the plaintiff could not address charges against him).  Finally -- the strongest evidence that the name-clearing hearings were adequate -- the Personnel Hearing Officer concluded, and the Personnel Board adopted the conclusion, that Salazar was wrongfully accused, was not a sex offender, and had not been adjudicated guilty.  See First Board Decision at 8-9; Hearing Officer's Third

Recommendations at 8-9; Third Board Decision at 1-2.   After each of these hearings, the Personnel Board ordered for Salazar to be reinstated and paid back pay.   See First Board Decision at 10; Third Board Decision at 2.   Additionally, the City of Albuquerque has removed from Salazar's personnel file all references to the disciplinary actions resulting from the initial termination and his transfer to Solid Waste, which resulted in his second termination.   See Yermal Aff. ¶ 39, at 6.   As the Second Circuit has noted, "when and if the allegations are shown to be false, their removal from the employee's file restores her freedom to seek future employment."   Donato v. Plainview-Old Bethpage Ctr. Sch. Dist., 96 F.3d 623, 633 (2d Cir. 1996).   Moreover, Salazar does not contend that the name-clearing hearings were inadequate. See Amended Complaint ¶¶ 68-75, at 17-18; Response at 1-12.

Tenth Circuit cases have noted the presence or absence of the right to cross-examine witnesses and accusers in determining the adequacy of name-clearing hearings.   See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526; Melton v. Okla. City, 879 F.2d at 722.   It is not clear whether Salazar was given this right.   Salazar was at least afforded the right to make arguments, present witnesses, and present evidence, see First Board Decision at 10, but the record is not clear on whether he could also cross-examine the City of Albuquerque's witnesses.   In viewing the record in a light most favorable to Salazar, and making all inferences in his favor, see Hunt v. Cromartie, 526 U.S. at 550-55, the Court must conclude that Salazar was not afforded this right. The lack of cross-examination, however, is not fatal to the adequacy of the hearings.   Salazar was successful at each hearing and the charges were found to be false.   See First Board Decision at 8-9; Hearing Officer's Second Recommendations at 10; Hearing Officer's Third Recommendations at 8-9; Third Board Decision at 1-2.   The Tenth Circuit has held that "procedural due process often requires confrontation and cross-examination of those whose word

deprives a person of his or her livelihood," but that it is "not necessary in every case." Nard v. City of Okla. City, 153 F. App'x at 534 (quoting Willner v. Comm. on Character, 373 U.S. 96 (1963))(alterations omitted). It is hard to imagine how additional procedural protections would have assisted Salazar, when the conclusion of each hearing was that the charges made against him were false and that he should be made whole. See Workman v. Jordan, 32 F.3d at 480 ("Again, we find it difficult to evaluate any grievance procedure as inadequate when the employee was reinstated and given full back pay."); Potts v. Davis Cnty., No. CV 1:12-0004, 2007 WL 1519061 DB, at *8 (May 21, 2007)(Benson, J.), aff'd, 551 F.3d 1188 (10th Cir. 2009)("Once again, the procedural protections of the post-termination hearing, combined with the ultimate fact of Potts' reinstatement, demonstrate that Potts received an adequate name-clearing hearing."). In light of Salazar's success at the hearings and the Personnel Board's findings that the charges were false, Salazar cannot maintain a claim that he was denied adequate due process. While Salazar was eventually terminated for failing to show up for work after being reinstated to the Transit Department, see Yermal Aff. ¶¶ 27, 30-31, at 4-5, this termination does not affect his stigma-plus claim. As the Supreme Court held in Board of Regents of State Colleges v. Roth, once "a person has cleared his name at a hearing, his employer, of course may remain free to deny him future employment for other reasons." 408 U.S. at 573 n.12. Salazar was provided an adequate hearing to clear his name; his eventual termination was for failing to show for work after being reinstated and not because of the statements that the Defendants made. See Yermal Aff. ¶¶ 27, 30-31. Because Salazar was provided adequate procedural due process, his stigma-plus claim fails. See Gwinn v. Awmiller, 354 F.3d at 1221; Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526.

C.   **SALAZAR HAS FAILED TO PRESENT EVIDENCE THAT THE DEFENDANTS' STATEMENTS HAVE FORECLOSED OTHER EMPLOYMENT OPPORTUNITIES AND WERE MADE IN THE COURSE OF TERMINATING HIS EMPLOYMENT.**

Salazar has failed to present evidence to show that the Defendants' statements have foreclosed other employment opportunities and that the statements were made in the course of terminating his employment.  The third element of a stigma-plus claim requires Salazar to prove that the Defendants' statements occurred in the course of his termination or foreclosed other employment opportunities.  See Evers v. Regents of Univ. of Colo., 509 F.3d at 1308.  The Tenth Circuit has interpreted this element as requiring plaintiffs to prove that the statements occurred in the course of termination and that the statements foreclosed other employment opportunities.  See Guttman v. Khalsa, 669 F.3d at 1126; Renaud v. Wyo. Dep't of Family Servs., 203 F.3d at 728 n.1.  Salazar has failed to present evidence showing that he has been foreclosed from other employment opportunities and that the statements were made in the course of his termination.

The Tenth Circuit has held that the reinstatement of a terminated employee may defeat a stigma-plus claim.  See Potts v. Davis Cnty., 551 F.3d 1188, 1196 (10th Cir. 2009).  In Potts v. Davis County, the Tenth Circuit held, in an opinion that Judge Seymour wrote, and Judges McConnell and Gorsuch joined, that, because the plaintiff had been reinstated into his previous position, his liberty-interest due-process violation claim failed.  See 551 F.3d at 1195-96.  In reaching this conclusion, the Tenth Circuit noted that reinstatement can clear the stigmatization on a person's name, stating that, "if the public looked at the facts of the instant case, they would correctly assume that [the plaintiff] was reinstated because he had cleared his name on all charges."  Potts v. Davis Cnty., 551 F.3d at 1196 (internal quotation marks omitted).  Reinstatement may defeat the third element of a stigma-plus claim, because it results in the employee not being terminated, which means that the statements did not occur in the course of

termination.  See Watson v. Univ. of Utah Med. Ctr., 75 F.3d at 579 (noting that, because defendants did not reinstate plaintiff, a jury could find that the alleged defamation occurred in the course of termination).  A stigma-plus violation requires a deprivation of some tangible interest in conjunction with a defamatory of stigmatizing statements.  See Gwinn v. Awmiller, 354 F.3d at 1216 (noting that plaintiffs must prove that he or she "experienced some governmentally imposed burden that 'significantly altered [his or] her status as a matter of state law'" (quoting Paul v. Davis, 424 U.S. at 710-11)).  If a plaintiff is initially terminated, but then reinstated with back-pay, the plaintiff has not suffered the loss of a tangible interest outside, specifically his or her employment.  See Dobosz v. Walsh, 892 F.2d 1135, 1140 (2d Cir. 1989)("[The plaintiff] suffered no such alteration. He was reinstated with back pay and seniority credit, and his due process claim thus fails the Paul reputation plus test." (internal quotation marks omitted).  Reinstatement and back pay, thus, cause the statements to be made outside the course of termination, because the plaintiff was not ultimately terminated.  See Livingston v. Borough of Edgewood, No. CIV 08-812, 2008 WL 5101478, at *5 (W.D. Pa. Nov. 26, 2008)(Lenihan, M.J.)("Although a public employee defamed in connection with his termination or constructive discharge may establish a liberty interest depravation, Plaintiff resumed his position after acquittal." (citing Edwards v. Cali. Univ. of Pa., 156 F.3d 488, 492 (3d Cir. 1988)).

Reinstatement also defeats a plaintiff's claim that he has been foreclosed from employment opportunities.  See McCarty v. City of Bartlesville, 8 F. App'x at 857.  In McCarty v. City of Bartlesville, the Tenth Circuit held, in an opinion that Judge Henry wrote, and Judge Kelly and the Honorable Milton I. Shadur, United States District Judge for the District of Illinois, sitting by designation, joined, that

> the [plaintiffs] are unable to establish that an actual deprivation occurred.  The
> [plaintiffs] were discharged but subsequently rehired with full backpay and

> benefits. We acknowledge that their rehire does not mean that they will be welcomed without reservation by their colleagues and superiors, but the loss of prospective job opportunities is too speculative to support a deprivation of a liberty interest claim under § 1983. See Phelps v. Wichita-Eagle Beacon, 886 F.2d 1262, 1269 (10th Cir. 1989)("Damage to 'prospective employment opportunities' is too intangible to constitute a deprivation of a liberty or property interest."); see also Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1559 (10th Cir. 1993)(noting the same). The [plaintiff's] liberty interest claim necessarily fails.

8 F. App'x at 875. If an employee is reinstated into his prior position, then any loss of employment opportunities is merely conjectural and too intangible to constitute a deprivation of a liberty interest. See McCarty v. City of Bartlesville, 8 F. App'x at 857. See also Phelps v. Wichita-Eagle Beacon, 886 F.2d at 1269. Reinstatement, thus, defeats a stigma-plus claim, because it prevents the statements from being made in the course of termination and because the plaintiff's employment opportunities have not been foreclosed. See Castillo v. Hobbs Mun. Sch. Bd., 315 F. App'x at 697 (holding that the plaintiff, a teacher, failed to prove that statements occurred in the course of termination and that they foreclose other employment opportunities, because he was offered a teaching position in the school district).

Here, Salazar was reinstated to his previous position as a bus driver and was awarded back pay. After the Personnel Board first ordered that Salazar be reinstated, the City of Albuquerque reinstated Salazar, but then transferred him to Solid Waste. See Yermal Aff. ¶¶ 15-17, at 3. Relying on Watson v. University of Utah Medical Center, the Court concluded that, by not reinstating Salazar to his original position, the reinstatement to Solid Waste, rather than to a bus driving position, did not defeat Salazar's stigma-plus claim, because Salazar may still show that he has been foreclosed from employment opportunities in his chosen field -- bus driving. See Salazar v. City of Albuquerque, 776 F. Supp. at 1240-41. Since then, the City of Albuquerque reinstated Salazar to his bus driving position. See Yermal Aff. ¶ 26, at 4. Salazar

was also reinstated to his seniority status and awarded back pay. See Yermal Aff. ¶ 29, at 7; Paez Aff. ¶ 8, at 2. Salazar received back pay only through August, 2010, because he has not submitted a statement of outside earnings; however, he will receive back pay from August, 2010, until April 23, 2011 -- when he was terminated for not showing up to work at the Transit Department -- when he submits a statement of outside earnings. See Yermal Aff. ¶ 30, at 7-8.

The Defendants' statements were not made in the course of Salazar's termination, because Salazar was terminated on April 23, 2011, for not showing up for work, and was not terminated as a result of the charges made against him, because he was reinstated and awarded back pay. See Watson v. Univ. of Utah Med. Ctr., 75 F.3d at 579; Livingston v. Borough of Edgewood, 2008 WL 5101478, at *5. Additionally, Salazar has not shown that the Defendants' statements foreclosed employment opportunities. Salazar was reinstated into his bus driving position, and, thus, the City of Albuquerque was willing to offer Salazar an employment opportunity as a bus driver. See Yermal Aff. ¶ 26, at 4. There is no evidence before the Court to suggest that Salazar has been foreclosed from any other employment opportunities. Any foreclosure is, thus, conjectural and too intangible to constitute a deprivation of a liberty interest. See McCarty v. City of Bartlesville, 8 F. App'x at 857. Salazar has, accordingly, not presented sufficient evidence to support the third element of his stigma-plus claim.

Because Salazar has not presented evidence to support the third element of his stigma-plus claim -- and the Defendants have presented evidence which defeats this element -- and because Salazar was provided an adequate name-clearing hearing, the Court will grant summary judgment in the Defendants' favor on the stigma-plus violation.

## III.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).   Once a defendant raises the qualified immunity defense, the plaintiff must demonstrate on the facts alleged that: (i) the defendants' actions violated his constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged unlawful activity. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).   Here, the Defendants have not violated any of Salazar's constitutional or statutory rights.

Because Salazar was provided a name-clearing hearing and was reinstated into his prior position, he has not suffered a procedural due-process right violation.   See Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526.   Salazar's remaining claims are based on state law causes-of-action.[16]   Accordingly, Salazar has not suffered a constitutional or federal statutory violation. See Riggins v. Goodman, 572 F.3d at 1107.   Because the Defendants have not "violate[d a] clearly established statutory or constitutional right[]," the individual defendants are entitled to qualified immunity.   Pearson v. Callahan, 555 U.S. at 231.

## IV.   THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER SALAZAR'S REMAINING CLAIMS.

The Court declines to exercise supplemental jurisdiction over Salazar's remaining claims. Salazar's remaining claims are all state law claims.   In the Amended Complaint, Salazar brought

---

[16]At the August 20, 2013, hearing, Salazar argued that his defamation claim was a "constitutional defamation claim" based on a violation of his constitutional right to privacy. Tr. at 52:4-10 (Livingston).  There is not, however, a constitutional defamation claim.  See Bartel v. FAA, 725 F.2d at 1405 n.2 (noting that "there is no federal cause of action for defamation"). Estate of Ricci v. Salt Lake City Corp., 180 F. App'x at 813 (noting that there is "no § 1983 cause of action for defamation.").

claims for a Violation of Right to Procedural Due Process (property interest), Violation of Right to Substantive Due Process (stigma-plus), Defamation Per Se, Breach of Employment Contract and Duty of Good Faith and Fair Dealing, Intentional Infliction of Emotional Distress, and Civil Conspiracy.  See Amended Complaint ¶¶ 62-101, at 16-22.  The Court previously dismissed Salazar's property-interest procedural due-process claim, his intentional infliction of emotional distress claim, and his civil conspiracy claim.  See Salazar v. City of Albuquerque, 2013 WL 5554185 at *50.  The Court additionally dismissed Salazar's defamation claim, except as it pertains to statements that Payne made after Payne's employment, and Salazar's breach-of-contract and breach-of-duty-of-good faith claim as to all of the Defendants, except for the City of Albuquerque.   See Salazar v. City of Albuquerque, 2013 WL 5554185 at *50.   In this Memorandum Opinion and Order, the Court grants summary judgment to the Defendants on Salazar's stigma-plus claim.  Salazar's remaining claims -- defamation and breach-of-contract and breach-of-duty-of-good-faith -- are state law claims, and, thus, the Court will refuse to exercise supplemental jurisdiction over these claims and will dismiss them without prejudice.

## A.    THERE IS NO CONSTITUTIONAL DEFAMATION CAUSE-OF-ACTION.

Salazar's defamation claim is a state law cause-of-action, as there is no constitutional defamation cause-of-action.   At the August 20, 2013, hearing, Salazar contended that his defamation claim was a "constitutional defamation claim" based on a violation of his constitutional right to privacy.  Tr. at 52:4-10 (Livingston).  There is not, however, such a thing.  As the District of Columbia Circuit has noted, "there is no federal cause of action for defamation."  Bartel v. FAA, 725 F.2d at 1405 n.2.  The Tenth Circuit has similarly held that there is "no § 1983 cause of action for defamation."  Estate of Ricci v. Salt Lake City Corp., 180 F. App'x at 813 (citing Siegert v. Gilley, 500 U.S. 226, 234 (1991)(noting that there is no

"constitutional protection for the interest in reputation")).  See McGhee v. Draper, 639 F.2d at

643 ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient

to support a § 1983 cause of action."); Fisher v. Lynch, 531 F. Supp. 2d 1253, 1262 n.3 (D. Kan.

2008)(Vratil, J.)(noting that "controlling case law clearly rejects any attempt to transform a basic

state law defamation claim into one arising under the Constitution").  While a defamatory or

stigmatizing statement may lead to a stigma-plus claim, when the defamatory statement is

coupled with some other tangible interest, a defamatory statement, by itself, does not create an

actionable federal cause-of-action.  See Gwinn v. Awmiller, 354 F.3d at 1216.  Salazar, thus, has

no federal or constitutional defamation claim, and his defamation cause-of-action must be based

on New Mexico state law.  "Thus, there is perhaps a tort claim, but there is no constitutional

violation." Tonkovich v. Kan. Bd. of Regents, 159 F.3d at 526.

### B. BECAUSE THERE IS NO REMAINING FEDERAL CLAIMS, THE COURT WILL DISMISS SALAZAR'S REMAINING STATE LAW CLAIMS WITHOUT PREJUDICE.

The Court will dismiss Salazar's remaining state law claims without prejudice.  Congress

has provided district courts with discretion to exercise supplemental jurisdiction over a state law

claims in four situations:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which
        the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original
        jurisdiction, or

(4)      in exceptional circumstances, there are other compelling reasons for
        declining jurisdiction.

28 U.S.C. § 1367(c).  Here, the Court has dismissed all of Salazar's federal claims, that is, all

claims over which the Court has original jurisdiction.  See 28 U.S.C. § 1367(c)(3).  The Tenth

Circuit has noted: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. Del City, 660 F.3d at 1248 (quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d at 1156). See Brooks v. Gaenzle, 614 F.3d 1213, 1229 (10th Cir. 2010)("[The Tenth Circuit has] generally held that 'if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (quoting Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir. 1997)(alterations omitted)(internal quotation marks omitted)). The Supreme Court has recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. at 726. Exercising jurisdiction over Salazar's remaining claims would require the Court to make unnecessary decisions of state law. See United Mine Workers of Am., 383 U.S. at 726.

Additionally, the Defendants have raised the defense that Payne's post-employment statements are absolutely privileged, because he made the statements in the course of the hearings before the Personnel Hearing Officer. See MSJ Memo. at 26. The Supreme Court of New Mexico has addressed the absolute privilege defense only once, and it did so in a different context. See Helena Chem. Co. v. Uribe, 281 P.3d 237, 241 (2012)(noting that the Supreme Court of New Mexico had not previously addressed the absolute privilege doctrine in the context of commenting on litigation and applying the doctrine to pre-litigation statements concerning mass-tort litigation). In exercising supplemental jurisdiction over Salazar's defamation claim, the Court would need to interpret New Mexico state law to determine the contours of the

absolute privilege doctrine and to determine whether it applies in a novel situation that the Supreme Court of New Mexico has not yet addressed.  In exercising supplemental jurisdiction over Salazar's claims, the Court would, thus, need to resolve "a novel . . . issue of State law." 28 U.S.C. § 1367(c)(1).

Accordingly, there are two congressionally created factors counseling the Court to decline jurisdiction.  See 28 U.S.C. § 1367(c).  Retaining jurisdiction would require the Court to retain state law claims after it has dismissed all federal claims and would require the Court resolve a novel issue of New Mexico state law.  See 28 U.S.C. § 1367(c).  Based on the guidance from Congress, the Tenth Circuit, and the Supreme Court, the Court declines to exercise supplemental jurisdiction over Salazar's remaining state law claims, and will dismiss Salazar's remaining claims without prejudice.[17]

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment, filed October 31, 2012 (Doc. 77)("MSJ"), is granted in part and denied in part.  The MSJ is granted as to Plaintiff Paul Salazar's Count 2, his stigma-plus claim.   The Court declines to exercise supplemental jurisdiction over Salazar's remaining claims, and Salazar's remaining claims are dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

---

[17]The Court entered a number of Orders in this case, noting that it would at a later date issue Memorandum Opinions more fully detailing its rationale for the decisions.  See Order at 1 n.1, filed September 23, 2013 (Doc. 112); Order at 2, n.1, filed September 23, 2013 (Doc. 113); Order at 1 n.1, filed March 31, 2014 (Doc. 125); Order at 1 n.1, filed September 17, 2014 (Doc. 130).  Because the Court is dismissing all of Salazar's claims, the Court will enter final judgment and will not issue Memorandum Opinions on these other Orders.

*Counsel:*

Paul Livingston
Placitas, New Mexico

> *Attorney for the Plaintiff*

Stephen G. French
Paula Forney
French & Associates, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants City of Albuquerque, Richard J. Berry, Robert Perry, Vincent Yermal, Martin Chavez, Greg Payne, and Bruce Rizzieri*

Rebecca E. Wardlaw
City Attorney's Office
Albuquerque, New Mexico

> *Attorneys for Defendants City of Albuquerque, Richard J. Berry, and Martin Chavez*